**FILED**
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAY **1 6** 2019

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

KATHLEEN TORRENCE,

      Plaintiff,

    v.

AUTOMOBILE CLUB INTER-INSURANCE
EXCHANGE,

      Defendant.

Civil Action No. 4:19-cv- 354 -DPM

_____

This case assigned to District Judge Marshall
and to Magistrate Judge Volpe

## NOTICE OF REMOVAL
## [CAFA DIVERSITY JURISDICTION]

PLEASE TAKE NOTICE that, pursuant to the Class Action Fairness Act ("CAFA"), Pub. L. 109-2, 119 Stat. 4, codified in pertinent part at 28 U.S.C. sections 1332(d) and 1453, and pursuant to 28 U.S.C. sections 1441 and 1446, defendant Automobile Club Inter-Insurance Exchange (the "Exchange" or "Defendant"), hereby removes the above-captioned putative class action from the Circuit Court of Pulaski County, Arkansas, to the United States District Court for the Eastern District of Arkansas, Western Division. Because plaintiff Kathleen Torrence ("Plaintiff") brings this action on behalf of a putative class, this Court has original jurisdiction over this action pursuant to 28 U.S.C. section 1332(d). As grounds for removal, the Exchange asserts and alleges the following:

## I.    BACKGROUND AND PROCEDURAL HISTORY

1.    On March 1, 2019, Plaintiff filed her Class Action Complaint (the "Complaint") against AAA Arkansas Insurance Agency, Inc. (the "Agency") only, in the matter titled *Kathleen Torrence v. AAA Arkansas Insurance Agency, Inc.*, Pulaski County Circuit Court Case No. 60CV-19-1251 (the "State Action"). Plaintiff served the Agency with the Complaint on or about

-1-

March 5, 2019.  A true and correct copy of the Summons and Complaint is attached hereto as **Exhibit 1**.

2.     In the Complaint, Plaintiff asserted four claims for relief against the Agency for: (1) Violation of the Arkansas Deceptive Trade Practices Act; (2) Fraud; (3) Bad Faith; and (4) Breach of Contract.  Plaintiff based those claims on allegations that the Agency failed to adequately pay insurance benefits under an automobile policy issued to Plaintiff for the total loss of her 2001 Mercedes Benz following a car accident.  Because the Agency did not issue the automobile policy to Plaintiff, it moved to dismiss the Complaint and all causes of action asserted against it.  True and correct copies of the Agency's Notice of Motion and Motion to Dismiss are collectively attached hereto as **Exhibit 2**.

3.     On April 17, 2019, Plaintiff voluntarily dismissed the Agency and filed a Response to the Agency's Motion to Dismiss explaining that she "has voluntarily dismissed her claims against [the Agency] without prejudice."  True and correct copies of Plaintiff's voluntary dismissal and response to the Agency's Motion to Dismiss are collectively attached hereto as **Exhibit 3.**

4.     On April 17, 2019, Plaintiff filed an Amended Class Action Complaint (the "Amended Complaint") in the State Action against the Exchange only.  On April 24, 2019, Plaintiff served the Summons and Amended Complaint on the Exchange by and through its agent for service of process.  True and correct copies of the Summons and Amended Complaint are collectively attached hereto as **Exhibit 4**.

5.     In the Amended Complaint, Plaintiff asserts four causes of action against the Exchange for: (1) Violation of the Arkansas Deceptive Trade Practices Act; (2) Fraud; (3) Bad Faith; and (4) Breach of Contract.  According to Plaintiff, the Exchange issued an Arkansas

-2-

Personal Auto Policy (the "Policy") to her covering her 2001 Mercedes Benz, which suffered damage in a November 2015 car accident. (Amended Complaint, ¶¶ 1, 3, 7-10, 48.) Plaintiff made a first-party claim under the Policy for the collision damage to her Mercedes, and alleges that the Exchange deemed the Mercedes a total loss. (Amended Complaint, ¶¶ 1, 3.)

6.      Plaintiff next claims that the Exchange "made a cash settlement of $3,438" based on its estimate of the Mercedes's actual cash value. (Amended Complaint, ¶¶ 1, 8-10.) She alleges that, in determining the Mercedes's actual cash value, the Exchange relied on "a report from a third-party corporation known as a CCC One Report." (Amended Complaint, ¶ 9.) She contends that the "CCC One Report systematically undervalues the insured's vehicles," and that "use of the CCC One Report to value total loss claims violates its contracts with its insureds and Arkansas law." (Amended Complaint, ¶¶ 1-2, 11.) She also claims that "[t]he CCC Report automatically discounts 7% from the list value of vehicles listed for private sale and 9% from the value of cars sold by a dealership," which "serves to immediately lower the cash price paid to covered parties." (Amended Complaint, ¶ 12.)

7.      As a predicate basis to all of her individual and class claims against the Exchange, Plaintiff alleges that the CCC One Report violates Ark. Admin. Code § 054.00.43-10 because it does not determine the actual cash value of covered autos on either "a specific replacement vehicle if one is available in the local market area, or use [of] one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified dealers or appraisal services located within the local market area when a comparable automobile is [not] located in the local market area." (Amended Complaint, ¶ 14 (internal quotes omitted); *see also* ¶¶ 29-30, 36-37, 43, 48-49.)

8.      Plaintiff seeks declaratory and injunctive relief, as well as "compensatory damages in an amount equal to the difference between the actual cash value of her vehicle and the amount [the Exchange] paid," punitive damages and attorneys' fees. (Amended Complaint, ¶¶ 2, 55(d)-(h). She seeks those damages on behalf of herself and the putative class and alleges that, because "[t]he CCC One Report systematically undervalues the insured's vehicles, resulting in a payment of less than the actual cash value for all total loss claims," the Exchange saves "millions of dollars each year at the expense of its insureds." (Amended Complaint, ¶¶ 1, 17.)

9.      In the Amended Complaint, Plaintiff defines the putative class as:

All individuals insured by [the Exchange] under a policy issued or effective in Arkansas who: (a) had a total loss claim with [the Exchange]; (b) that received a settlement calculated using CCC One Report; (c) during the period from February 28, 2014 to the present.

(Amended Complaint, ¶ 55(a).)

## II.   **GROUNDS FOR REMOVAL**

10.     Under CAFA, this Court has diversity jurisdiction over any asserted class action that: (1) includes at least one class member whose citizenship is diverse from that of the defendant; (2) has at least 100 putative class members; and (3) involves an aggregate amount in controversy that exceeds the sum or value of $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2), (d)(5)-(6).

11.     Courts give strong preference to the resolution of interstate class actions in federal court. *Westerfield v. Independent Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010).  Courts also apply the same liberal rules to a Notice of Removal applicable to other pleading matters.

*Dart Cherokee Basin Operating, Co. v. Owens,* 135 S.Ct. 547, 553 (2014); 28 U.S.C. § 1446(a) (notice of removal need only contain "a short and plain statement of the grounds for removal").

12. Additionally, a defendant's Notice of Removal need only include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee,* 135 S.Ct. at 554. The removing defendant is not required to prove the legal conclusion that the statutory amount is, in fact, in controversy, or that the plaintiff will in fact recover that amount. *McPhail v. Deere,* 529 F.3d 947, 955-56 (10th Cir. 2008). "The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation." *Id.* at 956; *see also Hartis v. Chicago Title Ins. Co.,* 694 F.3d 935, 944-945 (8th Cir. 2012) and *Alexander v. Pipeline Productions, Inc.,* 2018 WL 3045179, *2 (E.D. Ark. 2018) ("[T]he removing party's burden of describing how the controversy exceeds $5 million constitutes a pleading requirement, not a demand for proof.").

13. A removing defendant can meet its burden by showing that the "facially apparent" allegations in the complaint demonstrate the amount in controversy. *Luckett v. Delta Airlines, Inc.,* 171 F.3d 295, 298 (5th Cir. 1999); *Gilmer v. Walt Disney Co.,* 915 F.Supp. 1001, 1007 (W.D. Ark. 1996). Moreover, "when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee,* 135 S.Ct. at 553. Once the removing party has met its burden, a plaintiff challenging CAFA jurisdiction must establish to a legal certainty that the amount in controversy is less than the required statutory amount. *Bell v. Hershey Co.,* 557 F.3d 953, 956 (8th Cir. 2009).

14. As set forth below, this action is removable under CAFA because the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs, is a purported class

action with over 100 putative class members, and Plaintiff and putative class members, on the one hand, and the Exchange, on the other hand, are citizens of different states.

A.      **The Exchange Has Timely Removed the Action.**

15.     Pursuant to 28 U.S.C. sections 1441 and 1453, the United States District Court for the Eastern District of Arkansas, Western Division, is the appropriate Court for filing this Notice of Removal from the Pulaski County Circuit Court, where Plaintiff filed the State Action.

16.     On April 24, 2019, Plaintiff served the Exchange with the Summons and Amended Complaint, through the Exchange's agent for service of process.

17.     The Exchange has not yet filed an answer or other response to the Amended Complaint.

18.     The Exchange's Notice of Removal is timely filed within the limits set forth in 28 U.S.C. section 1446, which requires that removal be made within thirty (30) days of receipt of service of process.   This case is properly removed to this Court, because all procedural requirements related to the removal of this action have been satisfied, and because this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. section 1332(d).

B.      **CAFA's Minimal Diversity Is Satisfied.**

19.     "Plaintiff . . . is a resident and citizen of Pulaski County, Arkansas."  (Amended Complaint, ¶ 3.)

20.     Plaintiff seeks to represent a class consisting of individuals whose motor vehicles were insured by the Exchange under a policy of insurance issued or effective in Arkansas. (Amended Complaint, ¶ 55(a).)

21.     At the time Plaintiff filed her Complaint and Amended Complaint and at the time of this removal, the Exchange was and is a reciprocal or interinsurance exchange, which is an

unincorporated association, organized under the laws of the State of Missouri with its principal place of business located in St. Louis, Missouri. *See e.g. Lewis v. United Servs. Auto. Assn.*, 45 F.3d 433 (8th Cir. 1994) *& True v. Robles*, 571 F.3d 412, 422 n. 2 (5th Cir. 2009) (describing reciprocal insurance exchange as an unincorporated association). In a "minimal diversity" class action under CAFA, an unincorporated association is deemed a citizen only of the state under whose laws it was organized or where it has its principal place of business. 28 U.S.C. § 1332(d)(10).

22.     Because Plaintiff and the putative class are citizens of a State different than the Exchange, minimal diversity is satisfied to support this Court's original jurisdiction under CAFA. 28 U.S.C. § 1332(d)(2).

## C.     **CAFA's Class Size Is Satisfied.**

23.     Plaintiff alleges in her Amended Complaint that "[m]embers of the putative class are so numerous that joinder of all such members is impracticable," and further, that "[t]he exact size of the putative class is unknown but may be easily determined from records maintained by [the Exchange]." (Amended Complaint, ¶ 20.)

24.     A preliminary review of the Exchange's available claims data and records identifies approximately 4,215 insureds who made first party automobile total loss claims that were adjusted and/or paid, in whole or in part, based on CCC One Market Valuation Reports for the class period between 2014 and the present.

25.     Because the putative class implicates more than four thousand insurance claims by the Exchange's insureds in Arkansas, the requisite class size is satisfied to support this Court's jurisdiction under CAFA.

## D.     **CAFA's Amount In Controversy Is Satisfied.**

-7-

26.     Under CAFA, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6).

27.     The claims alleged by Plaintiff and the putative class exceed $5 million, exclusive of interest and costs, which is facially apparent from the allegations of Plaintiff's Amended Complaint.

28.     First, Plaintiff alleges that the Exchange saves "millions of dollars each year at the expense of its insureds" when it purports to "undervalue the insured's vehicles" by adjusting and paying first party automobile total loss claims using CCC One reports. (Amended Complaint, ¶¶ 1, 17.) Thus, across the putative class and five year class period, Plaintiff alleges compensatory damages in controversy of no less than approximately $10 million ($2 million x 5 years).

29.     Second, Plaintiff alleges that the Exchange "made a cash settlement of $3,438 using a CCC One Report" in relation to Plaintiff's total loss claim, but that similar vehicles were for sale at prices up to $5,995 – a difference of $2,557 or approximately 42.65% of the 2001 Mercedes's alleged actual cash or market value. (Amended Complaint, ¶¶ 1, 10.) According to Plaintiff, she and the "putative class members suffered damages in an amount equal to the difference between the amount paid to them to settle their total loss claims and the actual cash value of their vehicle computed as required by Arkansas law." (Amended Complaint, ¶ 40.) Plaintiff also alleges that her "claims are typical of the putative class." (Amended Complaint, ¶ 22.) Thus, based on Plaintiff's allegations and assuming for purposes of this Notice of Removal only that Plaintiff could establish similar damages for the putative class, the amount of compensatory damages in controversy totals $10,777,755 ($2,557 x approximately 4,215 claims/insureds).

-8-

30.     Based on the Exchange's preliminary review of available claims data and records, it has paid approximately $40 million in first party automobile total loss claims in Arkansas from 2014 to the present.  Assuming for purposes of this Notice of Removal only that those payments undervalued the actual cash or market value of insured vehicles by approximately 42%, the amount of compensatory damages in controversy totals approximately $29.4 million (i.e., payments of $40 million is 58% of approximately $70 million, and 42% of $70 million totals approximately $29.4 million – the alleged underpayment across the putative class according to Plaintiff).

31.     In addition to compensatory damages, Plaintiff seeks to recover punitive damages (Amended Complaint, ¶¶ 2, 41, 46, 55(g)), which may be considered in determining the amount in controversy.  *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 348 (8th Cir. 2007).  In calculating possible punitive damages for purposes of CAFA jurisdiction, courts routinely apply a multiplier of 1 or more times compensatory damages.  *See e.g. Goodner v. Clayton Holmes, Inc.*, 2014 WL 4722748, **3-4 (W.D. Ark. 2014) ("utilizing multipliers of four to six times the total amount of compensatory damages is acceptable in determining what punitive damages award might be legally permissible"); *Alexander*, *supra*, 2018 WL 3045179 at *3.

32.     Plaintiff also seeks to recover attorneys' fees damages, including under her cause of action for alleged violation of the Arkansas Deceptive Trade Practices Act.  (Amended Complaint, ¶¶ 2, 34, 55(h).)  "Because statutory attorneys' fees are available to Plaintiffs the fees may be included in calculating the amount in controversy."  *Goodner*, *supra*, 2014 WL 4722748 at *4.  While courts analyze a number of factors when considering an award of reasonable attorneys' fees, here, the Exchange need only show what attorneys' fees might legally be possible.  *Id.* at *5.  "Other courts considering attorneys' fees in the amount-in-controversy

-9-

context have held that a fee of 40% is a reasonable estimate at this stage of the pleadings." *Id.*; *see also Alexander, supra*, 2018 WL 3045179 at *3.

33.     The Exchange denies all liability and damages, denies Plaintiff's allegations, and denies that Plaintiff may certify a class pursuant to Rule 23 of the Federal Rules of Civil Procedure.  However, based on Plaintiff's allegations, claims and damages asserted against the Exchange, on behalf of herself and the putative class, and the Exchange's identification of the approximate number of insureds/claims and the amounts paid in total loss auto benefits, it is both facially apparent from the Amended Complaint and alleged in good faith by the Exchange that the amount in controversy supports this Court's jurisdiction under CAFA.

### E.     CAFA Removal is Appropriate.

34.     Because diversity of citizenship exists, the amount in controversy exceeds $5 million, exclusive of interest and costs, and the number of class members exceeds 100, this Court has original jurisdiction of the action, pursuant to 28 U.S.C. section 1332(d).

35.     Pursuant to 28 U.S.C. section 1446(a), copies of all pleadings, process, and orders in the State Action of which the Exchange is aware will be filed contemporaneously with this Notice.  There are no pending motions or hearings set in the State Action.

36.     Pursuant to 28 U.S.C. section 1446(d), a copy of this Notice of Removal will be filed with the Circuit Court Clerk for the Circuit Court of Pulaski County, and a copy has been served on Plaintiff as reflected in the attached Certificate of Service.

WHEREFORE, the Exchange prays that this Court will consider this Notice of Removal as provided by law governing the removal of cases to this Court; that this Court will make the proper orders to achieve the removal of the State Action to this Court; and that this Court will

make such other orders as may be appropriate to effect the preparation and filing of a true record in this cause of all proceedings that may have been had in the State Action.

Dated this 16th day of May, 2019.

Respectfully submitted,

By: _____
KEVIN A. CRASS (84029)
FRIDAY, ELDREDGE & CLARK, LLP
400 West Capitol Avenue, Suite 2000
Little Rock, Arkansas 72201-3522
Telephone:  (501) 376-2011
crass@fridayfirm.com

*Attorneys for Defendant Automobile Club*
*Inter-Insurance Exchange*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of May, 2019, I filed the foregoing document with the Clerk of the Court via hand delivery. I also certify that the foregoing document is being served this day on all counsel of record identified below:

John Holleman
jholleman@johnholleman.net
Timothy A. Steadman
tim@johnholleman.net
Jerry Garner
jerry@johnholleman.net
Holleman & Associates, P.A.
1008 West Second Street
Little Rock, Arkansas 72201

Lloyd "Tre" Kitchens
tkitchens@bradhendricks.com
The Brad Hendricks Law Firm
500 C Pleasant Valley Drive
Little Rock, Arkansas 72227

_____
KEVIN A. CRASS

FEC\45089\0001\7034372.v1-5/15/19

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## HON. CHRIS PIAZZA - 2ND DIVISION 6TH CIRCUIT

### KATHLEEN TORRENCE V AAA ARK INS AGENCY, INC

60CV-19-1251

### SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

AAA ARKANSAS INSURANCE AGENCY, INC.
300 Spring Street, Suite 900
Little Rock, AR  72201

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

John Holleman
1008 West 2nd Street
Little Rock, AR  72201

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:
•Notice of Right to Consent to Disposition of Case by a State District Court Judge

Plaintiffs' First Set of Interrogatories and Requests for Production of Documents are being served with the summons and complaint

EXHIBIT
1

PENGAD 800-631-6989

CLERK OF COURT

Address of Clerks Office

TERRI HOLLINGSWORTH, CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W. MARKHAM
LITTLE ROCK, AR 72201

CLERK Christy Renee McDaniel, DC

Date: 03/04/2019

## NOTICE OF RIGHT TO CONSENT
## TO DISPOSITION OF CASE BY A STATE DISTRICT COURT JUDGE

In accordance with Administrative Order Number 18, you are hereby notified that upon the consent of all the parties in a case, a State District Court Judge may be authorized to conduct all proceedings, including trial of the case and entry of a final judgment. Copies of appropriate consent forms are available from the Circuit Clerk.

You should be aware that your decision to consent or not to consent to the disposition of your case before a State District Court Judge is entirely voluntary, and by consenting to the reference of this matter to a State District Court Judge, the parties waive their right to a jury trial, and any appeal in the case shall be taken directly to the Arkansas Supreme Court or Court of Appeals as authorized by law.

You should communicate your consent by completing the Form -- CONSENT TO PROCEED BEFORE A STATE DISTRICT COURT JUDGE -- and return to the Circuit Clerk.

Christy R McDaniel

Circuit Clerk
Date: 03/04/2019

No. 60CV-19-1251 This summons is for AAA ARKANSAS INSURANCE AGENCY, INC. (name of Defendant).

## PROOF OF SERVICE

☐ On _____ [date] I personally delivered the summons and complaint to the individual at _____ [place]; or

☐ After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

☐ On _____ [date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

☐ On _____ [date] I delivered the summons and complaint to _See other_ _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

☐ On _____ [date] at _____ [address], where the defendant maintains and office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with _____

[name and job description]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☑ Other [specify]:
Plaintiffs First Set of Interrogatories and Request for Production of Documents to Defendant AAA Arkansas Insurance Agency, Inc.

☐ I was unable to execute service because:
_____
_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____          SHERIFF OF _____ COUNTY, ARKANSAS

                               By: _____
                               [Signature of server]


                               _____
                               [Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____          By: _____
                               [Signature of server]


                               _____
                               [Printed name]

Address: _____

_____

Phone: _____

Subscribed and sworn to before me this date: _____


                               _____
                               Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2019-Mar-01 15:28:46
60CV-19-1251
C06D02 : 19 Pages

# IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

**KATHLEEN TORRENCE**                                        **PLAINTIFF**

v.                          **CASE NO. _____**

**AAA ARKANSAS INSURANCE AGENCY, INC.**          **DEFENDANT**

## CLASS ACTION COMPLAINT

### I. INTRODUCTION

1.     Kathleen Torrence was driving a 2001 Mercedes-Benz E-Class sedan that was involved in an accident. Torrence insured the vehicle with AAA Arkansas Insurance Agency, Inc. ("AAA"), who declared the vehicle a total loss. After the vehicle was declared a total loss, AAA made a cash settlement of $3,438 using a CCC One Report. No similar cars were for sale within 250 miles of Torrence's home, but similar vehicles were for sale at prices ranging from $4,800 to $5,995 within a 500 mile radius. AAA uses the CCC One Report in adjusting its total loss claims. The CCC One Report systematically undervalues the insured's vehicles, resulting in a payment of

loss claims, saving AAA millions of dollars each year at the expense of its insureds.

2.     AAA's use of the CCC One Report to value total loss claims violates its contracts with its insureds and Arkansas law. AAA is required to calculate actual cash value through either: (a) the cost of a specific, comparable replacement automobile, or (b) using one of two or more quotations obtained from two or more qualified dealers or appraisal services located within the local market area. Instead of following Arkansas law AAA uses the CCC One Report to cheat their policyholders and increase their profits. Torrence brings this suit on behalf of herself and others similarly situated to recover the difference between the actual cash value of her vehicle and what she was paid, punitive damages, costs, and attorneys' fees. Plaintiff also asks the Court to declare that the use of the CCC One Report to adjust first-party insurance claims violates Arkansas law and to permanently enjoin its use.

## II. Parties, Jurisdiction, and Venue

3.     Plaintiff Kathleen Torrence is a resident and citizen of Pulaski County, Arkansas. At all times relevant to this Complaint, she had a motor vehicle insurance policy with AAA and had a total-loss claim.

4.     Defendant AAA Insurance Agency, Inc. is incorporated in Arkansas and has its principal place of business in Little Rock, AR. It's registered agent for service is the Corporation Service Company, located at 300 Spring St., Suite 900, Little Rock, AR 72201. Further, because this is a direct action against AAA, it is also a citizen of each state of which Plaintiff and all putative class members are Citizens. 28 U.S.C. § 1332(c)(1). Thus, AAA is also citizen of Arkansas because the Plaintiff and putative class members are citizens of Arkansas.

5.     This Court has subject matter jurisdiction pursuant to Ark. Const. amend. 80, § 6 and Ark. Code Ann. § 16-13-201.

6.     Venue is proper in this Court because Plaintiff resided in Pulaski County at the time of the events which gave rise to this cause of action, and the accident occurred in the same. Ark. Code Ann. § 16-60-101.

### III. FACTUAL ALLEGATIONS

7.     In November of 2015, Torrence was driving a 2001 Mercedes - Benz E-Class Sedan, and was involved in a motor vehicle accident which resulted in substantial damage to her vehicle. Torrence had an insurance policy with AAA and submitted a claim to her insurer, and received an estimate on or about November 30, 2015.

8.      Torrence's insurance policy with AAA contained a clause providing for the adjustment and settlement of total loss claims based on "actual cash value or replacement with another of like kind or quality." Upon information and belief, this is AAA's standard automobile insurance policy issued to insureds in the state of Arkansas.

9.      AAA used a report from a third-party corporation known as a CCC One Report to adjust Torrence's claim. Solera, Inc. sells automobile valuation information primarily to insurance companies for settling total loss vehicle claims. The CCC One Report is sold almost solely to insurance companies, and it is marketed as reducing the costs of total value settlements. Upon information and belief, AAA uses the CCC One Report to calculate its offers of all total loss claims.

10.     AAA presented the CCC One report to Torrence as representing the "actual cash value" of the vehicle, and, based on the CCC One Report, AAA paid $3,438 to settle the claim. *See* CCC One Report, attached as Exhibit 1. Plaintiff's vehicle, however, was worth more than shown on the CCC One Report. A search for identical vehicles for sale in the immediate area did not show any vehicles of a similar make, model, mileage, or condition within 250 miles of Torrence's home. However, if the search area was expanded to

500 miles, there were similar vehicles listed for prices between $4,800 and $5,995. *See* used cars for sale at nearby dealerships, obtained on February 28, 2019 attached as Exhibit 2.

11.     The CCC One Report systematically undervalues vehicles by making a series of arbitrary and unexplained adjustments to the vehicles contained in the report. For instance, the CCC One Report bases its estimate on vehicles listed for sale, but not "in the local area." The first purportedly "comparable" vehicle was located in Memphis, Tennessee, some 138 miles away, while the other vehicle was listed in Paducah, Kentucky, which is over 320 miles away. These are not "in the local market area."

12.     The CCC Report automatically discounts 7% from the list value of vehicles listed for private sale and 9% from the value of cars sold by a dealership. This serves to immediately lower the cash price paid to covered parties.

13.     AAA knows that the CCC One Report undervalues vehicles. Despite knowing that the CCC One Report undervalues vehicles, AAA continues to use it to determine the amount to pay claimants.

14.     Arkansas law requires that AAA, when adjusting or settling first party automobile total losses, either provide a replacement vehicle, provide

a cash settlement based on a specific replacement vehicle if one is available in the local market area, or use "one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified dealers or appraisal services located within the local market area when a comparable automobile is located in the local market area." Ark. Ins. Regulation 43, § 10(a)(2). If the insurer deviates from one of those methods, the deviation must be supported by documentation giving particulars of the automobiles condition, and "[a]ny deductions from such cost, including deduction for salvage, must be measurable, discernable, itemized, and specified as to dollar amount and shall be appropriate in amount." Ark. Ins. R. 43, § 10(a)(3). Further, "[t]he basis for such settlement shall be fully explained to the first party claimant." Ark. Ins. R. 43, § 10(a)(3).

15.    CCC One Information Services, Inc. is not a qualified dealer or appraisal service located in Pulaski County, Arkansas. CCC One Information Services, Inc. is not registered with the Arkansas Secretary of State to do business in Arkansas, and does not maintain any offices in the state of Arkansas.

16.    AAA did not provide documentation about why it needed to deviate from one of the two approved methods for Torrence's vehicle, and

there was nothing unique about Torrence's vehicle that would justify deviating from the methods approved under Arkansas law.

17.     AAA knows or should know that using the CCC One Report to determine actual cash value violates Arkansas law. Despite knowing that the practice is unlawful, AAA uses the practices because it saves AAA millions of dollars. AAA can achieve this savings because the cost of obtaining an appraisal and litigating the value of a property damage claim exceeds the difference in value between the CCC One Report and the actual cash value of the vehicle.

## IV. CLASS ACTION ALLEGATIONS

18.     Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

19.     Plaintiff brings this as a class action under Rule 23 of the *Arkansas Rules of Civil Procedure*.

20.     Members of the putative class are so numerous that joinder of all such members is impracticable. The exact size of the putative class is unknown, but may be easily determined from records maintained by AAA.

21.     There are common questions of law and fact applicable to the putative class with respect to liability, relief, and anticipated affirmative defenses. Common questions of law and fact include:

a.     Whether AAA has a practice of using the CCC One Report to determine actual cash value;

b.     Whether Regulation § 43, § 10 is incorporated into the terms of AAA's automobile insurance policies;

c.     Whether AAA's practices violated Regulation 43, § 10;

d.     Whether CCC One Information Services, Inc. is a qualified dealer or appraiser in the local market area; and

e.     By what percentage does CCC One systematically undervalue cars vis a vis their actual cash value;

22.     Plaintiff's claims are typical of the putative class. Like all other putative class members, Plaintiff had a total loss automobile claim that was settled and adjusted using the CCC One Report.

23.     Plaintiff will fairly and adequately protect the interest of the putative class. He has no conflicts with putative class members and has suffered the same injury as members of the putative class.

24.    Plaintiff's counsel possesses the requisite resources and experience in class action litigation to adequately represent Plaintiffs in prosecuting the claims here.

25.    The questions of law and fact common to Plaintiff and members of the putative class predominate over any question affecting only individual class members. These common questions concerning AAA's wrongdoing must be resolved for all class members.

26.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. AAA engages in a common business practice of using the CCC One Report to settle total loss claims, which is alleged to violate Arkansas law, and it is not unfair to require AAA to litigate its business practice on a class-wide basis. Moreover, Class members' individual damage claims are too small to make individual litigation an economically viable alternative. But despite the small size of any one individual's claims standing along, the aggregate value of the practice is substantial.

27.    Plaintiff's class claims are appropriate to proceed under the Arkansas Deceptive Trade Practices Act. Act 986 of 2017 – which purports to prohibit most private class actions under the Act – is an unconstitutional

intrusion into the Arkansas Supreme Court's exclusive authority to "prescribe the rules of pleading, practice and procedure for all courts." Ark. Const. Amend. 80, § 3; *see also Johnson v. Rockwell Automation*, 2009 Ark. 241, 308 S.W.3d 135 (holding two provisions of Arkansas Civil Justice Reform Act were unconstitutional); *Summerville v. Thrower*, 369 Ark. 231, 253 S.W.3d 415 (2007) (holding statute requiring reasonable cause affidavit was unconstitutional); *Weidrick v. Arnold*, 310 Ark. 138, 835 S.W.2d 843 (1992) (holding statute requiring 60-day notice before filing medical malpractice claim was unconstitutional).

## V. CAUSES OF ACTION
### COUNT I: ARKANSAS DECEPTIVE TRADE PRACTICES ACT

28.     Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

29.     Arkansas law requires that an insurer settle total loss automobile claims by providing the insured with enough money to purchase a specific comparable replacement vehicle in the local market area, or, if no comparable vehicle is available, using one of two or more quotations from a local dealer or appraiser. Ark. Ins. R. 43, § 10.

30.     AAA settles total loss automobile claims by relying on the CCC One Report, even though CCC One Information Services, Inc. is not a local

dealer or appraiser and even though the report does not provide the insured with sufficient funds to purchase a comparable replacement automobile.

31.     AAA engaged in an unconscionable, false, or deceptive act or practice in business, commerce, or trade when it used the CCC One Report to settle Plaintiff's total loss claim. AAA also used the same unconscionable, false, or deceptive act or practice in using the CCC One Report to settle all of its total loss claims in Arkansas.

32.     Defendant's conduct proximately caused damage to Plaintiff and putative class members. Plaintiff and putative class members seek compensatory damages in an amount equal to the difference between the amount paid to them to settle total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

33.     AAA knew or ought to have known that their conduct would result in injury to Plaintiff and putative class members and it continued in such conduct in reckless disregard of the consequences. As a result, Plaintiff and putative class members are entitled to punitive damages.

34.     Plaintiff and the putative class members are entitled to an award of attorneys' fees, costs, and expenses in bringing their Deceptive Trade Practices Act claim.

## COUNT II: FRAUD IN THE INDUCEMENT

35.    Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

36.    AAA falsely represented that the amount in the CCC One Report represented the actual cash value of Torrence's automobile. AAA made the same false representation to every other putative class member.

37.    AAA knew that its representation was false. First, AAA knew that Arkansas law requires that an insurer use one of the methods identified in Regulation 43 to determine actual cash value and that the CCC One Report was not a permissible method. Further, AAA knew that the CCC One Report systematically generated valuations that were lower than the "actual cash value" that would have resulted had it obtained a valuation from a qualified local dealer or appraiser as required by Arkansas law.

38.    AAA intended to induce and coerce Plaintiff and putative class members into settling their total loss claims for less than they would have if AAA had complied with Arkansas law and obtained a quotation from a qualified dealer or appraiser located in the local market area.

39.    Plaintiff and putative class members justifiably relied on AAA's representation about the actual cash value. Indeed, because the

misrepresentation goes to a material matter, reliance is presumed. *Manhattan Credit Co. v. Burns*, 230 Ark. 418, 323 S.W.2d 206 (1959) ("[R]eliance is to be presumed when, as here, the misrepresentation goes to a material matter."); *Pickering v. Garrison*, 2009 Ark. App. 107, at *13 ("Reliance is presumed when the misrepresentation goes to a material matter.").

40.    AAA's conduct proximately caused damages. Plaintiff and putative class members suffered damages in an amount equal to the difference between the amount paid to them to settle their total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

41.    Defendant knew or ought to have known that its conduct would result in injury to Plaintiff and putative class members and it continued in such conduct in reckless disregard of the consequences. As a result, Plaintiff and putative class members are entitled to punitive damages.

## COUNT III: BAD FAITH

42.    Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

43.    AAA acted in bad faith to avoid liability under its policy issued to Torrence. AAA knew that its method of settling total loss claims violated

Arkansas law and would result in a lower payment to Torrence than if AAA would have obtained a quotation from a qualified local dealer or appraiser. Despite this knowledge, AAA fraudulently presented the CCC One Report to Torrence as representing the "actual cash value" of her vehicle.

44.    AAA did more than merely refuse to pay a claim. AAA intentionally violated Arkansas law to save itself money at the expense of its insured. AAA's conduct was dishonest and oppressive, and was carried out with a state of mind characterized by contempt for its insureds.

45.    AAA's conduct proximately caused damages. Plaintiff and putative class members suffered damages in an amount equal to the difference between the amount paid to them to settle total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

46.    Defendants knew or ought to have known that their conduct would result in injury to Plaintiff and putative class members and it continued in such conduct in reckless disregard of the consequences. As a result, Plaintiff and putative class members are entitled to punitive damages.

## COUNT IV: BREACH OF CONTRACT

47.    Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

48.    Torrence and AAA entered into a contract. Among other things, the policy provides for the adjustment and settlement of total losses based on "actual cash value or replacement with another of like kind or quality."

49.    Arkansas law requires that AAA either provide a replacement vehicle, provide a cash settlement based on a specific replacement vehicle if one is available in the local market area, or use "one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified dealers or appraisal services located within the local market area when a comparable automobile is located in the local market area." Ark. Ins. Regulation 43, § 10(a)(2). If the insurer deviates from this method, it must provide documentation for the deviation, including giving particulars of the automobiles condition, and "[a]ny deductions from such cost, including deduction for salvage, must be measurable, discernable, itemized, and specified as to dollar amount and shall be appropriate in amount." Ark. Ins. R. 43, § 10(a)(3). Further, "[t]he basis for such settlement shall be fully explained to the first party claimant." Ark. Ins. R. 43, § 10(a)(3). The provisions of Ark. Ins. R. 43 are incorporated into the insurance contract as a matter of law. *See First Sec. Bank v. John Doe 1, 2, & 3*, 297 Ark. 254, 257, 760 S.W.2d 863, 865 (1988).

50.    Torrence and putative class members did what the contract required of them.

51.    AAA breached the contracts by using the CCC One Report instead of using the methods required by Arkansas law.

52.    As a result of AAA's breach of contract, Plaintiff and putative class members suffered damages in an amount equal to the difference between the amount paid to them to settle total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

## VI. JURY DEMAND & PRAYER FOR RELIEF

53.    Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

54.    Article 2, § 7 of the Arkansas Constitution provides that "The right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy[.]" Further, Article 2, § 13 also guarantees every person a "remedy in the laws for all injuries or wrongs . . . ." Plaintiff demands a remedy in the laws for all injuries and wrongs alleged, and a trial by jury on all issues so triable.

55.   WHEREFORE, Plaintiff respectfully requests this Court:

a.      Certify a class defined as:

> All individuals insured by AAA under a policy issued or effective in Arkansas who: (a) had a total loss claim with AAA; (b) that received a settlement calculated using CCC One Report; (c) during the period from February 28, 2014 to the present.

b.      Appoint Kathleen Torrence as class representative;

c.      Appoint Holleman & Associates, P.A. as class counsel;

d.      Declare that AAA's practice of using the CCC One Report to settle total loss claims violates Arkansas law;

e.      Enjoin AAA from using the CCC One Report to settle future total loss claims in the state of Arkansas;

f.      Award her compensatory damages in an amount equal to the difference between the actual cash value of her vehicle and the amount AAA paid;

g.      Award her punitive damages in an amount sufficient to punish AAA for its wrongdoing and to deter others from engaging in similar wrongdoing;

h.       Award Plaintiff all recoverable costs, expenses, and

attorneys' fees incurred in prosecuting this action, together with all

applicable interest; and

i.       Grant Plaintiff all such further relief deemed just and

appropriate.

Respectfully Submitted,

**HOLLEMAN & ASSOCIATES, P.A.**
1008 West Second Street
Little Rock, Arkansas 72201
Tel. 501.975.5040
Fax 501.975.5043

By: _____

John Holleman, ABN 91056
*jholleman@johnholleman.net*
Timothy A. Steadman, ABN 2009113
*tim@johnholleman.net*
Jerry Garner, ABN 2014134
*jerry@johnholleman.net*

&

Lloyd "Tre" Kitchens, ABN 99075
*tkitchens@bradhendricks.com*
**THE BRAD HENDRICKS LAW FIRM**
500 C Pleasant Valley Drive
Little Rock, AR 72227
Telephone (501) 221-0444

# CCC ⬛ ONE   MARKET VALUATION REPORT

*Prepared for AUTO CLUB ENTERPRISES*

 REPORT SUMMARY

## CLAIM INFORMATION

| | |
|---|---|
| Owner | Torrence, Kathleen |
| | 5716 Meadowlark Dr |
| | Little Rock, AR 72209 |
| Loss Vehicle | 2001 Mercedes-Benz E-Class 4dr Sdn 4.3L |
| Loss Incident Date | 11/17/2015 |
| Claim Reported | 11/30/2015 |

 ## INSURANCE INFORMATION

| | |
|---|---|
| Report Reference Number | 80088252 |
| Claim Reference | PA0001349458-11809649 |
| Adjuster | Moore, Gabriall |
| Odometer | 172,264 |
| Last Updated | 12/22/2015 09:47 AM |

 ## VALUATION SUMMARY

| | |
|---|---|
| Base Vehicle Value | $ 3,408.00 |
| Condition Adjustment | + $ 30.00 |
| Adjusted Vehicle Value | $ 3,438.00 |
| **Total** | **$ 3,438.00** |

The total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account.

The CCC ONE® Market Valuation Report reflects CCC Information Services Inc.'s opinion as to the value of the loss vehicle, based on information provided to CCC by AUTO CLUB ENTERPRISES.

### BASE VEHICLE VALUE

This is derived from comparable vehicle(s) available or recently available in the marketplace at the time of valuation, per our valuation methodology described on the next page.

### ADJUSTED VEHICLE VALUE

This is determined by adjusting the Base Vehicle Value to account for the actual condition of the loss vehicle and certain other reported attributes, if any, such as refurbishments and after factory equipment.

### Inside the Report

Valuation Methodology ................. 3
Vehicle Information ..................... 4
Vehicle Condition ...................... 7
Comparable Vehicles .................. 8
Valuation Notes ...................... 10



 **MARKET VALUATION REPORT**

Owner: Torrence, Kathleen
Claim: PA0001349458-11809649

## REPORT SUMMARY

Supplemental Information...................11

# CCC ONE  MARKET VALUATION REPORT

Owner: Torrence, Kathleen
Claim: PA0001349458-11809649

# VALUATION METHODOLOGY

## How was the valuation determined?



### CLAIM INSPECTION

AUTO CLUB ENTERPRISES has provided CCC with the zip code where the loss vehicle is garaged, loss vehicle VIN, mileage, equipment, as well as loss vehicle condition, which is used to assist in determining the value of the loss vehicle.



### DATABASE REVIEW

CCC maintains an extensive database of vehicles that currently are or recently were available for sale in the U.S. This database includes vehicles that CCC employees have physically inspected, as well as vehicles advertised for sale by dealerships or private parties. All of these sources are updated regularly.

### SEARCH FOR COMPARABLES

When a valuation is created the database is searched and comparable vehicles in the area are selected. The zip code where the loss vehicle is garaged determines the starting point for the search. Comparable vehicles are similar to the loss vehicle based on relevant factors.



### CALCULATE BASE VEHICLE VALUE

Adjustments to the price of the selected comparable vehicles are made to reflect differences in vehicle attributes, including mileage and options. Dollar adjustments are based upon market research.

Finally, the Base Vehicle Value is the straight average of the adjusted values of the comparable vehicles.



© Copyright 2015 CCC Information Services Inc. All Rights Reserved

# CCC ONE. MARKET VALUATION REPORT

Owner: Torrence, Kathleen
Claim: PA0001349458-11809649

 VEHICLE INFORMATION

## VEHICLE DETAILS

| | |
|---|---|
| Location | LITTLE ROCK, AR 72209 |
| VIN | WDBJF70J91B383025 |
| Year | 2001 |
| Make | Mercedes-Benz |
| Model | E-Class |
| Body Style | 4dr Sdn 4.3L |
| Body Type | Sedan |
| Engine - | |
| Cylinders | 8 |
| Displacement | 4.3L |
| Fuel Type | Gasoline |
| Carburation | SMPI |
| Transmission | Automatic Transmission Overdrive |

Vehicles sold in the United States are required to have a manufacturer assigned Vehicle Identification Number(VIN). This number provides certain specifications of the vehicle.

Please review the information in the Vehicle Information Section to confirm the reported mileage and condition, and to verify that the information accurately reflects the options, additional equipment, refurbishments or other aspects of the loss vehicle that may impact the value.

## VEHICLE HISTORY SUMMARY

Experian AutoCheck     No Title Problem Found

## CCC ONE. MARKET VALUATION REPORT

Owner: Torrence, Kathleen
Claim: PA0001349458-11809649

 VEHICLE INFORMATION

### VEHICLE EQUIPMENT

| | | |
|---|---|---|
| Package 1: | Sport | |
| Odometer | 172,264 | |
| Transmission | Automatic Transmission | ✔ |
| | Overdrive | ✔ |
| Power | Power Steering | ✔ |
| | Power Brakes | ✔ |
| | Power Windows | ✔ |
| | Power Locks | ✔ |
| | Power Mirrors | ✔ |
| | Power Driver Seat | ✔ |
| | Power Passenger Seat | ✔ |
| | Power Trunk/Gate Release | ✔ |
| Decor/Convenience | Air Conditioning | ✔ |
| | Climate Control | ✔ |
| | Tilt Wheel | ✔ |
| | Cruise Control | ✔ |
| | Rear Defogger | ✔ |
| | Intermittent Wipers | ✔ |
| | Console/Storage | ✔ |
| | Memory Package | ✔ |
| | Keyless Entry | ✔ |
| | Telescopic Wheel | ✔ |
| | Home Link | ✔ |
| | Wood Interior Trim | ✔ |
| Seating | Bucket Seats | ✔ |
| | Leather Seats | ✔ |
| Radio | AM Radio | ✔ |
| | FM Radio | ✔ |
| | Stereo | ✔ |
| | Search/Seek | ✔ |
| | Cassette | ✔ |
| | Steering Wheel Touch Controls | ✔ |

To the left is the equipment of the loss vehicle that AUTO CLUB ENTERPRISES provided to CCC.

✔ Standard This equipment is included in the base configuration of the vehicle at time of purchase.

☐ Additional Equipment that is not Standard but was noted to be on the loss vehicle.

 CCC&ONE **MARKET VALUATION REPORT** | Owner: Torrence, Kathleen
Claim: PA0001349458-11809649

# VEHICLE INFORMATION

### VEHICLE EQUIPMENT



| | | |
|---|---|---|
| | Premium Radio | ✔ |
| **Wheels** | Aluminum/Alloy Wheels | ✔ |
| **Safety/Brakes** | Air Bag (Driver Only) | ✔ |
| | Passenger Air Bag | ✔ |
| | Anti-lock Brakes (4) | ✔ |
| | 4-wheel Disc Brakes | ✔ |
| | Front Side Impact Air Bags | ✔ |
| | Alarm | ✔ |
| | Traction Control | ✔ |
| | Stability Control | ✔ |
| **Exterior/Paint/Glass** | Dual Mirrors | ✔ |
| | Heated Mirrors | ✔ |
| | Tinted Glass | 🔲 |
| | Fog Lamps | ✔ |
| | Clearcoat Paint | 🔲 |

# CCC⬛ONE. MARKET VALUATION REPORT

Owner: Torrence, Kathleen
Claim: PA0001349458-11809649

 VEHICLE CONDITION

## COMPONENT CONDITION

| | Condition | Inspection Notes | Value Impact |
|---|---|---|---|
| **INTERIOR** | | | |
| Seats | PRIVATE OWNER | | $ 0 |
| Carpets | PRIVATE OWNER | | $ 0 |
| Dashboard | PRIVATE OWNER | | $ 0 |
| Headliner | PRIVATE OWNER | | $ 0 |
| **EXTERIOR** | | | |
| Body | PRIVATE OWNER | | $ 0 |
| Glass | PRIVATE OWNER | | $ 0 |
| Paint | PRIVATE OWNER | | $ 0 |
| **MECHANICAL** | | | |
| Engine | PRIVATE OWNER | | $ 0 |
| Transmission | PRIVATE OWNER | | $ 0 |
| **TIRES** | | | |
| Front Tires | DEALER | LF 6/32 RF 7/32 | $ 15 |
| Rear Tires | DEALER | LR 7/32 RR 6/32 | $ 15 |
| **Total Condition Adjustments** | | | **$ 30** |

AUTO CLUB ENTERPRISES uses condition inspection guidelines to determine the condition of key components of the loss vehicle prior to the loss. The guidelines describe physical characteristics for these key components, for the condition selected based upon age. Inspection Notes reflect observations from the appraiser regarding the loss vehicle's condition.

CCC makes dollar adjustments that reflect the impact the reported condition has on the value of the loss vehicle as compared to Private Owner Private Owner condition. These dollar adjustments are based upon interviews with dealerships across the United States.

# CCC ONE. MARKET VALUATION REPORT

Owner: Torrence, Kathleen
Claim: PA0001349458-11809649

 COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 |
|---|---|---|---|
| Sport | ✓ | x | x |
| Odometer | 172,264 | 67,486 | 172,154 |
| Automatic Transmission | ✓ | ✓ | ✓ |
| Overdrive | ✓ | ✓ | ✓ |
| Power Steering | ✓ | ✓ | ✓ |
| Power Brakes | ✓ | ✓ | ✓ |
| Power Windows | ✓ | ✓ | ✓ |
| Power Locks | ✓ | ✓ | ✓ |
| Power Mirrors | ✓ | ✓ | ✓ |
| Power Driver Seat | ✓ | ✓ | ✓ |
| Power Passenger Seat | ✓ | ✓ | ✓ |
| Power Trunk/Gate Release | ✓ | ✓ | ✓ |
| Air Conditioning | ✓ | ✓ | ✓ |
| Climate Control | ✓ | ✓ | ✓ |
| Tilt Wheel | ✓ | ✓ | ✓ |
| Cruise Control | ✓ | ✓ | ✓ |
| Rear Defogger | ✓ | ✓ | ✓ |
| Intermittent Wipers | ✓ | ✓ | ✓ |
| Console/Storage | ✓ | ✓ | ✓ |
| Memory Package | ✓ | ✓ | ✓ |
| Keyless Entry | ✓ | ✓ | ✓ |
| Telescopic Wheel | ✓ | ✓ | ✓ |
| Message Center | x | x | ✓ |
| Home Link | ✓ | ✓ | ✓ |
| Wood Interior Trim | ✓ | ✓ | ✓ |
| Bucket Seats | ✓ | ✓ | ✓ |
| Leather Seats | ✓ | ✓ | ✓ |
| AM Radio | ✓ | ✓ | ✓ |
| FM Radio | ✓ | ✓ | ✓ |
| Stereo | ✓ | ✓ | ✓ |
| Search/Seek | ✓ | ✓ | ✓ |
| Cassette | ✓ | ✓ | ✓ |
| Steering Wheel Touch Controls | ✓ | ✓ | ✓ |
| Premium Radio | ✓ | ✓ | ✓ |
| Aluminum/Alloy Wheels | ✓ | ✓ | ✓ |
| Drivers Side Air Bag | ✓ | ✓ | ✓ |
| Passenger Air Bag | ✓ | ✓ | ✓ |
| Anti-lock Brakes (4) | ✓ | ✓ | ✓ |
| 4-wheel Disc Brakes | ✓ | ✓ | ✓ |
| Front Side Impact Air Bags | ✓ | ✓ | ✓ |

Comp 1        Updated Date: 10/29/2015
2001 Mercedes-benz E-class 4dr Sdn
4.3l 8 4.3l Gasoline Smpi
VIN WDBJF70J91B231326
Dealership Autonation Ford Lincoln W
Telephone (877) 880-8966
Source Autotrader
Stock # 1B231326
Distance from Little Rock, AR
148 Miles - Memphis, TN

Comp 2        Updated Date: 10/10/2015
2002 Mercedes-benz E-class 4dr Sdn
4.3l 8 4.3l Gasoline Smpi
VIN WDBJF70J92B420513
Dealership Paducah Ford Lincoln Merc
Telephone (270) 444-0011
Source Autotrader
Stock # P9216A
Distance from Little Rock, AR
263 Miles - Paducah, KY

Comparable vehicles used in the
determination of the Base Vehicle Value
are not intended to be replacement
vehicles but are reflective of the market
value, and may no longer be available
for sale.

List Price is the sticker price of an
inspected dealer vehicle and the
advertised price for the advertised
vehicle.

Distance is based upon a straight line
between loss and comparable vehicle
locations.

¹The Condition Adjustment sets
that comparable vehicle to Private
OwnerPrivate Owner condition, which
the loss vehicle is also compared to in
the Vehicle Condition section.

 **CCC ONE** MARKET VALUATION REPORT | Owner: Torrence, Kathleen
Claim: PA0001349458-11809649

## COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 |
|---|---|---|---|
| Head/Curtain Air Bags | ✗ | ✗ | ✓ |
| Rear Side Impact Air Bags | ✗ | ✗ | ✓ |
| Communications System | ✗ | ✗ | ✓ |
| Alarm | ✓ | ✓ | ✓ |
| Traction Control | ✓ | ✓ | ✓ |
| Stability Control | ✓ | ✓ | ✓ |
| Dual Mirrors | ✓ | ✓ | ✓ |
| Heated Mirrors | ✓ | ✓ | ✓ |
| Tinted Glass | ✓ | ✗ | ✗ |
| Fog Lamps | ✓ | ✓ | ✓ |
| Clearcoat Paint | ✓ | ✗ | ✗ |

| | | | |
|---|---|---|---|
| **List Price** | | $ 6,486 | $ 4,995 |
| **Adjustments:** | | | |
| | Package | + $ 100 | + $ 100 |
| | Make/Model/Trim | | - $ 800 |
| | Mileage | - $ 2,584 | + $ 80 |
| | Condition¹ | - $ 781 | - $ 781 |
| **Adjusted Comparable Value** | | **$ 3,221** | **$ 3,594** |



 **MARKET VALUATION REPORT** | Owner: Torrence, Kathleen
Claim: PA0001349458-11809649

# 📑 VALUATION NOTES

12/22/2015 09:47 - Pre/Post Tax data modified after Valuation

12/22/2015 09:47 - Packages added : SPORT

12/22/2015 09:47 - Post Valuation Adjustment entered for:

12/22/2015 09:47 - Condition Ratings changed after Valuation

12/22/2015 09:47 - AppraiserId changed, Old : 71168 with New :

12/22/2015 09:47 - AppraiserLastName changed, Old : Branson with New :

12/22/2015 09:47 - AppraiserFirstName changed, Old : Christopher with New :

12/22/2015 09:47 - User has changed one or more of the below mentioned items:
Appraiser, Insured, Owner, Loss Type, Coverage, Third Party

This Market Valuation Report has been prepared exclusively for use by AUTO CLUB ENTERPRISES, and no other person or entity is entitled to or should rely upon this Market Valuation Report and/or any of its contents. CCC is one source of vehicle valuations, and there are other valuation sources available.

Regulations concerning vehicle value include Arkansas Insurance Department Rule 43.

# CCC≡ONE  MARKET VALUATION REPORT

Owner: Torrence, Kathleen
Claim: PA0001349458-11809649

## SUPPLEMENTAL INFORMATION

 **EXPERIAN® AUTOCHECK® VEHICLE HISTORY REPORT**

| TITLE CHECK | | RESULTS FOUND |
|---|---|---|
| Abandoned | ✔ | No Abandoned Record Found |
| Damaged | ✔ | No Damaged Record Found |
| Fire Damage | ✔ | No Fire Damage Record Found |
| Grey Market | ✔ | No Grey Market Record Found |
| Hail Damage | ✔ | No Hail Damage Record Found |
| Insurance Loss | ✔ | No Insurance Loss Record Found |
| Junk | ✔ | No Junk Record Found |
| Rebuilt | ✔ | No Rebuilt Record Found |
| Salvage | ✔ | No Salvage Record Found |

| EVENT CHECK | | RESULTS FOUND |
|---|---|---|
| NHTSA Crash Test Vehicle | ✔ | No NHTSA Crash Test Vehicle Record Found |
| Frame Damage | ✔ | No Frame Damage Record Found |
| Major Damage Incident | ✔ | No Major Damage Incident Record Found |
| Manufacturer Buyback/Lemon | ✔ | No Manufacturer Buyback/Lemon Record Found |
| Odometer Problem | ✔ | No Odometer Problem Record Found |
| Recycled | ✔ | No Recycled Record Found |
| Water Damage | ✔ | No Water Damage Record Found |
| Salvage Auction | ✔ | No Salvage Auction Record Found |

| VEHICLE INFORMATION | | RESULTS FOUND |
|---|---|---|
| Accident | ✔ | No Accident Record Found |
| Corrected Title | ▣ | Corrected Title Record Found |
| Driver Education | ✔ | No Driver Education Record Found |
| Fire Damage Incident | ✔ | No Fire Damage Incident Record Found |
| Lease | ▣ | Lease Record Found |
| Lien | ✔ | No Lien Record Found |
| Livery Use | ✔ | No Livery Use Record Found |
| Government Use | ✔ | No Government Use Record Found |
| Police Use | ✔ | No Police Use Record Found |
| Fleet | ✔ | No Fleet Record Found |
| Rental | ✔ | No Rental Record Found |
| Fleet and/or Rental | ✔ | No Fleet and/or Rental Record Found |
| Repossessed | ✔ | No Repossessed Record Found |
| Taxi use | ✔ | No Taxi use Record Found |
| Theft | ✔ | No Theft Record Found |
| Fleet and/or Lease | ▣ | Fleet and/or Lease Record Found |
| Emissions Safety Inspection | ✔ | No Emissions Safety Inspection Record Found |
| Duplicate Title | ✔ | No Duplicate Title Record Found |

CCC provides AUTO CLUB ENTERPRISES information reported by Experian regarding the **2001 Mercedes-Benz E-Class 4dr Sdn 4.3L (WDBJF70J91B383025)**. This data is provided for informational purposes. Unless otherwise noted in this Valuation Detail, CCC does not adjust the value of the loss vehicle based upon this information.

**LEGEND**
✔ No Event Found
◉ Event Found
▣ Information Needed

**TITLE CHECK**
THIS VEHICLE CHECKS OUT
AutoCheck's result for this loss vehicle show no significant title events. When found, events often indicate automotive damage or warnings associated with the vehicle.

**EVENT CHECK**
THIS VEHICLE CHECKS OUT
AutoCheck's result for this loss vehicle show no historical events that indicate a significant automotive problem. These problems can indicate past previous car damage, theft, or other significant problems.

**VEHICLE INFORMATION**
INFORMATION FOUND
AutoCheck found additional information on this vehicle. These records will provide more history for this loss vehicle

**ODOMETER CHECK**
THIS VEHICLE CHECKS OUT
AutoCheck's result for this loss vehicle show no indication of odometer rollback or tampering was found. AutoCheck determines odometer rollbacks by searching for records that indicate odometer readings less than a previously reported value. Other odometer events can report events of tampering, or possible odometer breakage.

# CCC ONE. MARKET VALUATION REPORT

Owner: Torrence, Kathleen
Claim: PA0001349458-11809649

# SUPPLEMENTAL INFORMATION

## FULL HISTORY REPORT RUN DATE: 12/22/2015

Below are the historical events for this vehicle listed in chronological order.

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 07/06/2001 | BOSSIER CITY, LA | 10 | Motor Vehicle Dept. | TITLE |
| 07/06/2001 | BOSSIER CITY, LA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 06/04/2003 | SOUTHEASTERN REGION, | 21538 | Auto Auction | REPORTED AT AUTO AUCTION |
| 06/04/2003 | SOUTHEASTERN REGION, | 21538 | Auto Auction | AUCTION ANNOUNCED AS FLEET/LEASE |
| 06/10/2003 | CA | 21545 | State Agency | PASSED EMISSION INSPECTION |
| 09/02/2003 | CA | 21734 | State Agency | PASSED EMISSION INSPECTION |
| 09/07/2003 | CA | 21740 | Motor Vehicle Dept. | ODOMETER READING FROM DMV |
| 12/16/2003 | SANTA ROSA, CA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 12/23/2003 | SANTA ROSA, CA | | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 11/18/2005 | SANTA ROSA, CA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 04/22/2006 | SANTA ROSA, CA | | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 09/20/2006 | SANTA ROSA, CA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 10/01/2006 | SANTA ROSA, CA | | Motor Vehicle Dept. | TITLE |
| 09/26/2007 | SANTA ROSA, CA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 09/26/2007 | CA | 67234 | State Agency | PASSED EMISSION INSPECTION |
| 10/07/2007 | SANTA ROSA, CA | | Motor Vehicle Dept. | TITLE |
| 10/07/2007 | SANTA ROSA, CA | | Motor Vehicle Dept. | CORRECTED TITLE |
| 08/18/2009 | CA | 74245 | State Agency | PASSED EMISSION INSPECTION |
| 07/21/2011 | CA | 93994 | State Agency | PASSED EMISSION INSPECTION |
| 12/06/2012 | CA | 109700 | State Agency | PASSED EMISSION INSPECTION |
| 12/15/2012 | SAN RAFAEL, CA | | Motor Vehicle Dept. | TITLE |
| 12/15/2012 | SAN RAFAEL, CA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 04/05/2013 | CA | 110004 | Motor Vehicle Dept. | ODOMETER READING FROM DMV |

# CCC ONE. MARKET VALUATION REPORT

Owner: Torrence, Kathleen
Claim: PA0001349458-11809649

## SUPPLEMENTAL INFORMATION

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 05/22/2013 | FAIRFIELD, CA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 05/31/2013 | FAIRFIELD, CA | | Motor Vehicle Dept. | TITLE |
| 06/21/2013 | CA | 114508 | State Agency | PASSED EMISSION INSPECTION |
| 08/26/2013 | PACIFIC SW REGION, | 117579 | Auto Auction | REPORTED AT AUTO AUCTION AS DEALER VEHICLE |
| 08/30/2013 | CA | 117714 | State Agency | PASSED EMISSION INSPECTION |
| 11/18/2013 | OAKLAND, CA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 11/27/2013 | OAKLAND, CA | | Motor Vehicle Dept. | TITLE |
| 06/11/2014 | OAKLAND, CA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 07/23/2015 | CA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 09/14/2015 | STRONG, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 09/14/2015 | STRONG, AR | | Motor Vehicle Dept. | EXCLUDED/EXEMPT |
| 10/01/2015 | STRONG, AR | | Motor Vehicle Dept. | TITLE |
| 10/01/2015 | STRONG, AR | | Motor Vehicle Dept. | EXCLUDED/EXEMPT |

**AUTOCHECK TERMS AND CONDITIONS:**

Experian's Reports are compiled from multiple sources. It is not always possible for Experian to obtain complete discrepancy information on all vehicles; therefore, there may be other title brands, odometer readings or discrepancies that apply to a vehicle that are not reflected on that vehicle's Report. Experian searches data from additional sources where possible, but all discrepancies may not be reflected on the Report.

These Reports are based on information supplied to Experian by external sources believed to be reliable, BUT NO RESPONSIBILITY IS ASSUMED BY EXPERIAN OR ITS AGENTS FOR ERRORS, INACCURACIES OR OMISSIONS. THE REPORTS ARE PROVIDED STRICTLY ON AN "AS IS WHERE IS" BASIS, AND EXPERIAN FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE REGARDING THIS REPORT.

YOU AGREE TO INDEMNIFY EXPERIAN FOR ANY CLAIMS OR LOSSES, INCLUDING COSTS, EXPENSES AND ATTORNEYS FEES, INCURRED BY EXPERIAN ARISING DIRECTLY OR INDIRECTLY FROM YOUR IMPROPER OR UNAUTHORIZED USE OF AUTOCHECK VEHICLE HISTORY REPORTS.

Experian shall not be liable for any delay or failure to provide an accurate report if and to the extent which such delay or failure is caused by events beyond the reasonable control of Experian, including, without limitation, "acts of God", terrorism, or public enemies, labor disputes, equipment malfunctions, material or component shortages, supplier failures, embargoes, rationing, acts of local, state or national governments, or public agencies, utility or communication failures or delays, fire, earthquakes, flood, epidemics, riots and strikes.

These terms and the relationship between you and Experian shall be governed by the laws of the State of Illinois (USA) without regard to its conflict of law provisions. You and Experian agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Cook, Illinois.



### THE BRAD HENDRICKS
### LAW FIRM
A Professional Association

Brad Hendricks ††
Lamar Porter †
Christopher R. Heil
David Rawls †
George R. Wise, Jr.

All Licensed in Arkansas
† Also Licensed in Texas
†† Also Licensed in Texas & Missouri

500 C Pleasant Valley Drive
Little Rock, Arkansas 72227
Telephone: (501) 221-0444
Fax: (501) 661-0196

**www.bradhendricks.com**

Matthew E. Hartness †
Caroline C. Lewis
Lloyd W. "Tré" Kitchens
Sheldon D. Smith
Gary Davis *

* Of Counsel

August 28, 2018

Wendy Kight
AAA Insurance
Claims Department
P.O. Box 66502
St. Louis, MO 63166

RE:   Our Client:        Kathleen Torrence
       Your Insured:      Kathleen Torrence
       Claim #:           PA1349458
       Date of Incident:  11/17/2015

Dear Ms. Kight:

Our firm represents Kathleen Torrence. We need to know how your company valued the total loss claim our client made on their insurance policy. We also need any supporting documentation on how you arrived at that value.

Please produce the above referenced information as quickly as possible. Thank you in advance for your cooperation. Please feel free to contact me with any questions.

Sincerely,

Lloyd W. "Tre" Kitchens
*tkitchens@bradhendricks.com*

/alm

 **cars.com**

| Cars for Sale | Sell Your Car | Service & Repair | Research | Videos & Reviews | Sign Up |

# Used Mercedes-Benz E-Class for Sale

Sort by: Relevance: Best Match

## Filter Results          New Search

Get the latest listings by email          Email          Sign Up

**6 matches**          Save Search

Clear All     ✕ Mercedes-Benz

✕ E-Class     ✕ 2001     ✕ Used

### Location

Search within

| 500 miles | 72209 |

☐ **Show me cars available for home delivery**

Include vehicles outside of my search radius that can be delivered to my home.

### New/Used

○ All     ○ New     ● Used

○ Certified Pre-Owned

### Year

FEATURED



**GREAT** DEAL   rcedes-Benz of Little Rock

★ ★ ★ ★ ★ (4.7) 566 reviews

4062 Mercedes-Benz in stock

Dealer Website

Currently in stock:
152 New   18 CPO   64 Used

2016 Mer…   2018 Mer…
$29,990   $43,995


PLAINTIFF'S EXHIBIT

| 2001 | to | 2001 |

## Make

Mercedes-Benz

- [ ] Acura
- [ ] BMW
- [ ] Chevrolet
- [ ] Ford
- [ ] Honda

Show all Makes in A-Z

## Model

E-Class

- [ ] C-Class
- [ ] CL-Class
- [ ] CLK-Class
- [ ] M-Class
- [ ] S-Class

## Trim

---

USED   ♡ Save   ☐ Compare

**$4,800**  | 117,466 mi.

**2001 Mercedes-Benz 4dr Sdn 3.2L**

**GREAT** DEAL

**Selective Motors**
- (317) 548-4835
★ 4.9 (112 reviews)  |
492 mi. from 72209

**Ext. Color:** Gold
**Int. Color:** Beige
**Transmission:** Automatic
**Drivetrain:** RWD

📄 Free CARFAX Report

Check Availability

---

USED   ♡ Save   ☐ Compare

**$4,991**  | 148,572 mi.

**2001 Mercedes-Benz E320**

**GOOD** DEAL

**Advantage BMW Midtown**
- (866) 413-3488
★ 4.4 (97 reviews)  |
382 mi. from 72209

**Ext. Color:** Other
**Int. Color:** Other
**Transmission:** Automatic
**Drivetrain:** RWD

📄 Free CARFAX Report

Check Availability

☐ Base or Unknown

☐ E320

☐ E320 4MATIC

## Price

| Min Price | | Max Price |

## Mileage

◯ 90,000 or less (1)

◯ 100,000 or less (1)

◯ 150,000 or less (4)

◯ 200,000 or less (5)

◯ 250,000 or less (5)

## Deal Rating

☐ **GREAT** DEAL   (2)

☐ **GOOD** DEAL   (2)

## Features

☐ Alloy Wheels (5)

☐ Brake Assist (6)

USED   ♡ Save   ☐ Compare

**$5,995**   89,102 mi.

**2001 Mercedes-Benz 4dr Sdn 3.2L**

**GOOD** DEAL

**Port City Auto Sales**
- (225) 442-3875
300 mi. from 72209

**Ext. Color:** White
**Int. Color:** Beige
**Transmission:** Automatic
**Drivetrain:** RWD

CARFAX Report

Check Availability

USED   ♡ Save   ☐ Compare

**$4,999**   132,935 mi.

**2001 Mercedes-Benz 4dr Wgn 3.2L**

**GREAT** DEAL

**Sundance Auto Sales L.L.C.**
- (214) 960-5246
★ 3.4 (5 reviews) |
283 mi. from 72209

**Ext. Color:** Green
**Int. Color:** Gray
**Transmission:** Automatic
**Drivetrain:** RWD

CARFAX Report

Check Availability

☐ HomeLink (5)

☐ Leather Seats (6)

☐ Memory Seat (6)

☐ Premium Sound System (1)

☐ Stability Control (6)

☐ Sunroof/Moonroof (1)

☐ Third Row Seating (1)

**Body Style**  〉

**Exterior Color**  〉

**Interior Color**  〉

**Drivetrain**  〉

**Transmission**  〉

**Cylinders**  〉

**Photos**  〉

**Fuel**  〉

**Door Count**  〉

**Dealer Ratings**  〉

**Listing Date**  〉

**Seller Type**  〉

**Keywords**  〉

---

USED   ♡ Save   ☐ Compare

# Not Priced

171,051 mi.

**2001 Mercedes-Benz E320 4MATIC**

**Jack Ingram Motors**
- (334) 472-0122
★ 4.8 (581 reviews) |
386 mi. from 72209

**Ext. Color:** Silver
**Int. Color:** Other
**Transmission:** Automatic
**Drivetrain:** AWD

▤ Free CARFAX 1-Owner Report

Check Availability

---

USED   ♡ Save   ☐ Compare

# Not Priced

294,567 mi.

**2001 Mercedes-Benz E320 4MATIC**

**Lujack's Northpark Autoplaza**
- (888) 472-0402
★ 2.2 (9 reviews) |
483 mi. from 72209

**Ext. Color:** Beige
**Int. Color:** Other
**Transmission:** Automatic
**Drivetrain:** AWD

▤ Free AutoCheck Report

Check Availability

| Prev | Next |
|------|------|

1

20 Per Page

\* Title, other fees, and incentives are not included in this calculation, which is an estimate only. Monthly payment estimates are for illustrative purposes only and do not represent a financing offer from the seller. Other taxes may apply. The information on vehicles provided in this service is supplied by the seller or other third parties; Cars.com is not responsible for the accuracy of such information. Cars.com provides this service and materials without representations or warranties of any kind, either expressed or implied. See our terms of service for more details.

## Our Company

About Cars.com

Investor Relations

Contact Cars.com

Mobile Apps

Site Map

Careers

Fraud Awareness

Licensing & Reprints

## Buying & Selling

Find a Car

Certified Pre-Owned

Sell Your Car

Car Book Values

Car Dealers

Compare Car Prices

Listings by City

## Our Partners

Auto.com

NewCars.com

RepairPal.com

Terms of Service    Privacy Statement    Ad Choices

 

# IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

**KATHLEEN TORRENCE**                               **PLAINTIFF**

**v.**             **CASE NO.** *60CV-19-1251*

**AAA ARKANSAS INSURANCE AGENCY, INC.**       **DEFENDANT**

---

## PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT AAA ARKANSAS INSURANCE AGENCY, INC.

---

Comes now Plaintiff, and for her First Set of Interrogatories and Requests for Production of Documents to Defendant AAA Arkansas Insurance Agency, Inc., states:

### INTERROGATORIES

**Interrogatory No. 1.** Identify each person who answers any of the following interrogatories, and for each person, state: (a) their name, address, and telephone number; (b) by whom employed and job title; (c) basis of the authority to answer; and (d) specific interrogatory by number and subject that person answered.

**Interrogatory No. 2.** State the name and, if known, the address and telephone number of each individual likely to have discoverable

information—along with the subjects of that information—that you may use to support your claims or defenses.

**Interrogatory No. 3.** State the number of total loss claims that you settled in Arkansas between March 1, 2014 and the present using the CCC One Report.

**Interrogatory No. 4.** Describe your policies and practices for adjusting total loss automobile claims.

**Interrogatory No. 5.** State the reason that you use the CCC One Report to determine the value of total loss vehicles.

**Interrogatory No. 6.** State the name, address, and telephone number of each person you expect to call as an expert witness at trial, and for each expert witness, separately state: (a) the subject matter on which the expert is expected to testify; (b) the substance of the facts and opinions to which the expert is expected to testify; and (c) a summary of the grounds for each opinion.

**Interrogatory No. 7.** Does Defendant, or any of its agents or attorneys, have statements from any witnesses, including any plaintiff or putative class member, regarding the issues that are subjects of this lawsuit? If so, state the

name, address, and telephone number of each such witness, the date of said statement, and whether said statement is written or oral.

**Interrogatory No. 8.** If you have withheld information or documents that would be responsive to any of these interrogatories or requests for production of documents, describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable us to assess the claim.

### REQUESTS FOR PRODUCTION

**Request for Production No. 1.** A copy of your complete claim file.

**Request for Production No. 2.** A copy of all written contracts with CCC One Information Services, Inc., or its affiliates or subsidiaries.

**Request for Production No. 3.** A copy of any marketing materials provided to you by CCC One, or its affiliates or subsidiaries.

**Request for Production No. 4.** Any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action, to indemnify or reimburse for payments made to satisfy the judgment, or to defend, indemnify, or reimburse you for the costs spent defending this action.

**Request for Production No. 5.** Any training materials provided to adjusters regarding the use of the CCC One Report, products to settle total loss claims.

**Request for Production No. 6.** Any document, electronically stored information, or other tangible thing that Defendant intends to use at a deposition of this case.

**Request for Production No. 7.** Any document, electronically stored information, or other tangible thing that Defendant intends to use at any hearing in this case.

**Request for Production No. 8.** Any document, electronically stored information, or other tangible thing that Defendant intends to use to support any motion filed in this case.

**Request for Production No. 9.** Any document, electronically stored information, or other tangible thing that Defendant intends to use at the trial of this case.

**Request for Production No. 10.** Any statements from Plaintiffs that Defendant or its attorneys have regarding this action or its subject matter.

**Request for Production No. 11.** Any statements that Defendant or its attorneys have regarding the issues that are the subject of this lawsuit.

Respectfully Submitted,

**HOLLEMAN & ASSOCIATES, P.A.**
1008 West Second Street
Little Rock, Arkansas 72201
Tel. 501.975.5040
Fax 501.975.5043

By: _____

John Holleman, ABN 91056
*jholleman@johnholleman.net*
Timothy A. Steadman, ABN 2009113
*tim@johnholleman.net*
Jerry Garner, ABN 2014134
*jerry@johnholleman.net*

&

Lloyd "Tre" Kitchens, ABN 99075
*tkitchens@bradhendricks.com*
**THE BRAD HENDRICKS LAW FIRM**
500 C Pleasant Valley Drive
Little Rock, AR 72227
Telephone (501) 221-0444

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2019-Apr-03  11:03:09
60CV-19-1251
C06D02 : 4 Pages

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## 2ND DIVISION 6TH CIRCUIT

KATHLEEN TORRENCE                                                    PLAINTIFF

v.                                    CASE NO. 60CV-19-1251

AAA ARKANSAS INSURANCE AGENCY, INC.                        DEFENDANT

### **MOTION TO DISMISS**

Comes now defendant AAA Arkansas Insurance Agency, Inc. ("Defendant"), and for its Motion to Dismiss the Class Action Complaint of plaintiff Kathleen Torrence ("Plaintiff"), states:

1.      Plaintiff filed a Class Action Complaint against Defendant alleging causes of action for: (a) Violation of the Arkansas Deceptive Trade Practices Act; (b) Fraud; (c) Bad Faith; and (d) Breach of Contract. According to Plaintiff, Defendant issued a motor vehicle insurance policy (the "Policy") covering her 2001 Mercedes-Benz E-Class sedan (the "Vehicle"). (Complaint, ¶¶ 1, 3, 7-10.) Plaintiff alleges that Defendant declared her Vehicle a total loss following a November 2015 accident, and paid first-party insurance benefits totaling $3,438 as the actual cash value of the Vehicle based on a valuation report "from a third-party corporation known as a CCC One Report." (Complaint, ¶ 9.) As a predicate basis to all of her claims against Defendant, Plaintiff alleges that the CCC One Report violates Ark. Admin. Code § 054.00.43-10 because it does not determine the actual cash value of covered autos on either "a specific replacement vehicle if one is available in the local market area, or use one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified dealers or appraisal services

EXHIBIT
2

located within the local market area when a comparable automobile is [not] located in the local market area."  (Complaint, ¶ 14 (internal quotes omitted).).  Thus, Plaintiff claims, "the CCC One Report undervalues vehicles" and "AAA continues to use it to determine the amount to pay claimants." (Complain, ¶ 13.)

2.      Among other things, Plaintiff prays for "compensatory damages in an amount equal to the difference between the actual cash value of her vehicle and the amount AAA paid. (Complaint, ¶ 55.)

3.      To support all of her claims, Plaintiff refers and relies extensively on the Policy but does not attach it to her Complaint as required by Arkansas Rule of Civil Procedure 10(d). Defendant cures Plaintiff's deficiency by attaching the Policy as Exhibit 1 to the Brief in support of Defendant's Motion to Dismiss.  This Court may consider materials that are necessarily embraced by the Complaint without converting the Motion to Dismiss into one for summary judgment.  *See e.g. DePriest v. AstraZeneca Pharmaceuticals, L.P.*, 351 S.W.3d 168, 171 fn. 3 (Ark. 2009) (original complaint incorporated essentially the same information and language of drug label attached to motion to dismiss); *accord*, *Powers v. City of Ferguson*, 229 F.Supp.3d 894, 898 (E.D. Mo. 2017) (citing *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 691 fn. 4 (8th Cir. 2003)); *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (the "incorporation by reference" doctrine allows a court to consider exhibits to a motion to dismiss where contents are alleged in the complaint but not physically attached).

4.      The Policy demonstrates that Defendant did ***not*** issue it and is not a contracting party.  As a result, Plaintiff's Complaint fails to state facts upon which relief can be granted

against Defendant, and therefore should be dismissed pursuant to Arkansas Rule of Civil Procedure 12(b)(6).

     5.     Defendant submits herewith a Brief in support of the Motion to Dismiss.

     WHEREFORE, Defendant AAA Arkansas Insurance Agency, Inc., prays that the Court grants its Motion to Dismiss and dismiss Plaintiff's Class Action Complaint against it.

<div style="margin-left:40%">

Respectfully submitted,

KEVIN A. CRASS (84029)
FRIDAY, ELDREDGE & CLARK, LLP
400 West Capitol Avenue, Suite 2000
Little Rock, Arkansas 72201-3522
Telephone:  (501) 376-2011
crass@fridayfirm.com

*Attorneys for Defendant AAA Arkansas
Insurance Agency, Inc.*

BY:   */s/ Kevin A. Crass*
       KEVIN A. CRASS

</div>

FEC\45089\0001\6965981.v1-4/3/19

## CERTIFICATE OF SERVICE

I, Kevin A. Crass, hereby certify that on April 3, 2019, the foregoing was filed with the Court via the electronic filing system, and that a copy of same was sent to the following counsel of record via the Court's Electronic Mailing system (E-Mail):

John Holleman
Timothy A. Steadman
Jerry Garner
Holleman & Associates, P.A.
1008 West Second Street
Little Rock, Arkansas 72201

Lloyd "Tre" Kitchens
The Brad Hendricks Law Firm
500 C Pleasant Valley Drive
Little Rock, Arkansas 72227

<div style="text-align: right">

*/s/ Kevin A. Crass*
KEVIN A. CRASS

</div>

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2019-Apr-03  11:03:09
60CV-19-1251
C06D02 : 5 Pages

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## 2ND DIVISION 6TH CIRCUIT

KATHLEEN TORRENCE                                          PLAINTIFF

v.                          CASE NO. 60CV-19-1251

AAA ARKANSAS INSURANCE AGENCY, INC.                       DEFENDANT

### BRIEF IN SUPPORT OF MOTION TO DISMISS

### SUMMARY

Plaintiff Kathleen Torrence ("Plaintiff") cannot state a cause of action against defendant AAA Arkansas Insurance Agency, Inc. ("Defendant") arising from her first-party insurance claim for collision damage to her 2001 Mercedes-Benz E-Class sedan, because Defendant did not issue and is not a contracting party to her Arkansas Personal Auto Policy (the "Policy"). Both the Policy and its Declarations identify Automobile Club Inter-Insurance Exchange as the issuing entity and nowhere list or describe Defendant as a party to that contract. Plaintiff should know that, but failed to attach the Policy to her Class Action Complaint as required under Arkansas Rule of Civil Procedure 10(d).

Under Arkansas law, Plaintiff's contract and statutory-based claims cannot extend to non-contracting parties, like Defendant here. Because Plaintiff has no contractual or legal basis to sue Defendant, the Court should grant this Motion and dismiss Plaintiff's Complaint.

### FACTS

On March 1, 2019, Plaintiff filed her Class Action Complaint against Defendant alleging causes of action for: (1) Violation of the Arkansas Deceptive Trade Practices Act; (2) Fraud;

(3) Bad Faith; and (4) Breach of Contract.  According to Plaintiff, Defendant issued the Policy covering her Mercedes (the "Vehicle"), which suffered damage in a November 2015 car accident.  (Complaint, ¶¶ 1, 3, 7-10; *see also* ¶ 48 ("Torrence and [Defendant] entered into a contract.").)  Plaintiff made a first-party claim under the Policy for the collision damage to her Vehicle, and alleges that Defendant deemed the Vehicle a total loss.  (Complaint, ¶¶ 1, 3.)

Plaintiff next claims that Defendant "made a cash settlement of $3,438" based on its estimate of the Vehicle's actual cash value immediately prior to the accident.  (Complaint, ¶¶ 1, 8-10.)  She alleges that, in determining the Vehicle's actual cash value, Defendant relied on "a report from a third-party corporation known as a CCC One Report."  (Complaint, ¶ 9.)  She contends that the "CCC One Report systematically undervalues the insured's vehicles," and that "use of the CCC One Report to value total loss claims violates its contract with its insureds and Arkansas law."  (Complaint, ¶¶ 1-2, 11.)

As a predicate basis to all of her individual and class claims against Defendant, Plaintiff alleges that the CCC One Report violates Ark. Admin. Code § 054.00.43-10 because it does not determine the actual cash value of covered autos on either "a specific replacement vehicle if one is available in the local market area, or use [of] one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified dealers or appraisal services located within the local market area when a comparable automobile is [not] located in the local market area." (Complaint, ¶ 14 (internal quotes omitted); *see also* ¶¶ 29-30, 36-37, 43, 48-49.)

## ARGUMENT

In her Complaint, Plaintiff expressly refers and relies on the Policy to support all of her claims against Defendant.  To support those claims, Arkansas Rule of Civil Procedure 10(d)

requires that she attach the Policy to her Complaint, which she failed to do. *LVNV Funding, LLC v. Nardi*, 2012 Ark. 460 (2012) ("Compliance with Rule 10(d) is mandatory.") Thus, Defendant cures Plaintiff's deficiency by attaching the Policy as Exhibit 1 to this Brief in support of the Motion to Dismiss. This Court may consider materials that are necessarily embraced by the Complaint without converting the Motion to Dismiss into one for summary judgment. *See e.g. DePriest v. AstraZeneca Pharmaceuticals, L.P.*, 351 S.W.3d 168, 171 fn. 3 (Ark. 2009) (original complaint incorporated essentially the same information and language of drug label attached to motion to dismiss); *accord*, *Powers v. City of Ferguson*, 229 F.Supp.3d 894, 898 (E.D. Mo. 2017) (citing *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 691 fn. 4 (8th Cir. 2003)); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (the "incorporation by reference" doctrine allows a district court to consider exhibits to a motion to dismiss where the contents are alleged in a complaint but not physically attached).

The Policy demonstrates that Defendant did ***not*** issue it and is not a contracting party, which negates all of Plaintiff's claims as a matter of law. The *sine qua non* of Plaintiff's contract and statutory-based claims is the existence of a contract between Plaintiff and Defendant. Such claims require privity of contract – that is, a connection or relationship which exists between two or more contracting parties. *Giles v. Harrington, Miller, Neihouse & Krug*, 362 Ark. 338 (2015). Thus, in the absence of privity of contract, Arkansas courts dismiss breach of contract claims as a matter of law. *See Swink v. Ernst & Young*, 322 Ark. 417 (1995); *Elsner v. Farmers Ins. Group, Inc.*, 364 Ark. 393 (2005) (appellant had no standing to bring breach of contract claim against insurer, because he was not a party to the insurance contract).

For this reason, Plaintiff's breach of contract claim fails against Defendant.  Because she bases her bad faith, fraud and statutory claims on Defendant's alleged breach of contract, those derivative claims fail too.  *See e.g. Selmon v. Metropolitan Life Ins. Co.,* 372 Ark. 420 (2008) (bad faith claim requires "dishonest, malicious, or oppressive conduct in in order to avoid a just obligation to its insured"); *Parker v. Southern Farm Bureau Cas. Ins. Co.*, 326 Ark. 1073 (1996) (same).

As such, Plaintiff's Class Action Complaint fails to state facts upon which relief can be granted against Defendant, and therefore should be dismissed pursuant to Arkansas Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

KEVIN A. CRASS (84029)
FRIDAY, ELDREDGE & CLARK, LLP
400 West Capitol Avenue, Suite 2000
Little Rock, Arkansas 72201-3522
Telephone:  (501) 376-2011
crass@fridayfirm.com

*Attorneys for Defendant AAA Arkansas q Insurance Agency, Inc.*

BY:   */s/ Kevin A. Crass*
        KEVIN A. CRASS

## CERTIFICATE OF SERVICE

I, Kevin A. Crass, hereby certify that on April 3, 2019, the foregoing was filed with the Court via the electronic filing system, and that a copy of same was sent to the following counsel of record via the Court's Electronic Mailing system (E-Mail):

John Holleman
Timothy A. Steadman
Jerry Garner
Holleman & Associates, P.A.
1008 West Second Street
Little Rock, Arkansas 72201

Lloyd "Tre" Kitchens
The Brad Hendricks Law Firm
500 C Pleasant Valley Drive
Little Rock, Arkansas 72227

/s/ Kevin A. Crass
KEVIN A. CRASS

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2019-Apr-03 11:03:09
60CV-19-1251
C06D02 : 42 Pages

CARL D. KRAFT, being duly sworn, deposes and states that he is Assistant Secretary of CLUB EXCHANGE CORPORATION, Attorney-in-Fact for the AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE, and that the attached is a true and exact copy of the Declarations Certificate and the Arkansas Personal Auto Policy of **KATHLEEN TORRENCE AND TERRY B. TORRENCE** for the policy period from **September 21, 2015** to **March 21, 2016,** subject to the definitions, exclusions, conditions, requirements, and limits of liability of the policy, and that said document is part of their insurance policy with the AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE, Claim #PA0001349458.

_____
**CARL D. KRAFT**
**Assistant Secretary**

STATE OF MISSOURI   )
                    ) SS.
COUNTY OF ST. LOUIS )

Subscribed and sworn to before me this 14th. day of <u>March</u>, 2019, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

_____
Notary Public

ELIZABETH L. UMBACH
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Charles County
My Commission Expires: January 31, 2021
Commission Number: 13485984

**EXHIBIT 1**



# AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE

12901 North Forty Drive, St. Louis, MO 63141

## AUTOMOBILE DECLARATIONS

**NEW**

**THIS DECLARATIONS CERTIFICATE IS PART OF YOUR POLICY. PLEASE KEEP IT WITH YOUR POLICY.**

| | | |
|---|---|---|
| **YOUR AGENT INFORMATION:** | **TO REPORT A CLAIM:** | **POLICY NUMBER:** A4-020803-6 |
| Policy Services | **1-866-222-2378** | **POLICY PERIOD:** |
| 12901 N Forty Dr | | |
| St Louis, MO 63141-8634 | | 09/21/2015 TO 03/21/2016 |
| (877) 736-3922 | | (12:01 A.M. Standard Time) |

**NAMED INSURED AND ADDRESS:**

Kathleen Torrence
Terry B Torrence
5716 Meadowlark Dr
Little Rock, AR 72209-2733

**DATE PREPARED:** 09/29/2015

**Household Address:**
5716 Meadowlark Dr
Little Rock, AR 72209-2733

| VEHICLE | DRIVER | DATE OF BIRTH | PREMIUM |
|---|---|---|---|
| 2001 MRCD E430W SED | Kathleen Torrence (Primary) | REDACTED | REDACT |
| WDBJF70J91B383025 | Terry B Torrence | | |
| | | **TOTAL POLICY PREMIUM** | REDAC |

Any loss under coverage for damage to your auto, collision or comprehensive, is payable, as interest may appear, subject to the provisions of the Loss Payable Clause on the reverse side to the named insured and the lienholder.

| *2001 MRCD E430W SED* | Usage: Pleasure | Estimated Annual Miles: | Class: E6FMPP |
|---|---|---|---|
| WDBJF70J91B383025 | | 2,501 - 5,000 | |

| COVERAGE | LIMIT/DEDUCTIBLE | | PREMIUM |
|---|---|---|---|
| Bodily Injury Liability | $25,000 per person / $50,000 per accident | | REDAC |
| Property Damage Liability | $25,000 per accident | | TED |
| Personal Injury Protection - Medical | $1,000 per person | | |
| Personal Injury Protection-Work Loss | $140 per week / 52 weeks maximum | | |
| Personal Injury Protection-Accidental Death | $5,000 per person | | |
| Uninsured Motorists | $25,000 per person / $50,000 per accident | | |
| Underinsured Motorists | $25,000 per person / $50,000 per accident | | |
| Collision | Actual Cash Value / $1,000 deductible | | |
| Comprehensive | Actual Cash Value / $250 deductible | | |
| Rental Reimbursement | $40 per day / $1,000 maximum per accident | | |
| | | **VEHICLE PREMIUM** | |

The following discounts have been applied to this vehicle and are reflected in the above premium, resulting in a premium savings of **$178.00:**
*Air Bag, Anti-Theft Passive/Vin, Anti-Lock Braking System, AAA Membership Discount, Longevity, Verified Mileage*

**DECLARATIONS** (continued)  **POLICY #:** A4-020803-6  **EFFECTIVE:**  09/21/2015 **TO** 03/21/2016

| FORM | DATE | DESCRIPTION |
|------|------|-------------|
| **MANDATORY ENDORSEMENTS:** | | |
| *  136 | 05/2011 | Arkansas Personal Auto Policy |
| *  119 | 07/2006 | Power of Attorney |
| *  115AR | 07/2012 | Amendments of Policy Provisions - Arkansas |
| *  193 | 11/2012 | Your Auto Pet Insurance and Extended Rental Reimbursement |
| *  PVYPOL | 07/2001 | Notice of Privacy |
| **OPTIONAL ENDORSEMENTS:** | | |
| *  151AR | 05/2011 | Named Driver Exclusion Endorsement |

* Endorsement has been revised/added.

**EXCLUDED DRIVER(S)**                        **DATE OF BIRTH**

Katherine Waits                                    REDACT

---

### LOSS PAYABLE CLAUSE
#### INFORMATION FOR FINANCED VEHICLES

If a lienholder is shown in the Declarations, we may pay any comprehensive or collision loss to:
1.  you and, if unpaid, the repairer, or;
2.  you and such lienholder, as its interests may appear, when we find it is not practical to repair your insured auto; or
3.  the lienholder as to its interest, if your insured auto has been repossessed.

If we pay the lienholder for loss for which you are not covered, we are entitled to the lienholder's right of recovery against you to the extent of our payment.  Our right of recovery shall not impair the lienholder's right to recover the full amount of its claim.

The date of termination of the lienholder's interest will be at least 10 days after we mail the termination notice.

FORM 2413-2 (07/2012)

| DECLARATIONS (continued) | POLICY #: A4-020803-6 | EFFECTIVE: 09/21/2015 TO 03/21/2016 |

## IMPORTANT MESSAGES

### TO OUR ARKANSAS POLICYHOLDERS

The following address and telephone numbers are being furnished for your information in compliance with ACT 197 passed by the Arkansas Legislature effective January 1, 1989.

ARKANSAS INSURANCE DEPARTMENT
1200 WEST THIRD STREET
LITTLE ROCK, ARKANSAS 72201-1904
(501) 371 - 2640   (800) 852 - 5494

**Your Personal Injury Protection (PIP) Medical Payment benefit is different than the Required First Party Coverage law suggests OR you have rejected at least one of your PIP benefits - Medical Payment, Work Loss Coverage and Accidental Death.**
- **Automobile Medical Payment Coverage provides all reasonable and necessary expenses for medical up to limits shown on your declarations page.**
- **Work Loss Coverage provides coverage to you for loss of income from work that you would have performed had you not sustained bodily injury.**
- **Accidental Death Coverage provides a death benefit paid if bodily injury resulting from the accident causes death within one year from the date of the accident.**

**Please refer to your policy for a complete description of these coverages and any exclusions that apply. To make changes to your PIP Coverage limits or to add PIP Coverage to your policy, please contact your AAA agent.**

**Your policy currently has Uninsured Motorist Coverage (UM) and Underinsured Motorists Coverage (UIM) limits that are less than your Bodily Injury Liability Coverage limits OR you have rejected Uninsured Motorist Coverage (UM), Underinsured Motorist Coverage (UIM) and/or Uninsured Motorist Property Damage (UMPD):**
- **UM Coverage is available up to the limits of your Bodily Injury Liability Coverage limits and protects you, household members, and passengers if injured by a hit-and-run motorist or a driver who carries no liability insurance.**
- **UIM Coverage is available at the same limits as your UM Coverage and pays the difference when the at-fault driver's insurance is not enough to compensate you and household members for injuries suffered in an accident.**
- **UMPD Coverage is available to protect you in the event that your insured vehicle is damaged by an uninsured motorist.**

**Please refer to your policy for a complete description of these coverages and any exclusions that apply. To make changes to your UM and/or UIM Coverage limits or to add UM, UIM or UMPD Coverage to your policy, please contact your AAA agent.**

Your AAA Membership works hard for you. As a member, you enjoy an exclusive discount that provides annual savings of 10% on certain coverages on your auto insurance in addition to many discounts already offered. Insure your auto and home with AAA Insurance and save even more. Call your AAA Agent for details.

When you participate in our AAA OnBoard® Program through the use of the AAA OnBoard® in-vehicle device, you save with a discount on your auto insurance. The device helps locate your vehicle for roadside assistance and simplifies vehicle mileage collection which will be used to determine your annual mileage at renewal. It is available to AAA insured members. Contact your agent to sign up today.

FORM 2413-2 (07/2012)

**PAYMENT NOTICE** | **AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE**
12901 North Forty Drive, St. Louis, Missouri 63141



PLEASE MAKE CHECK PAYABLE TO A.C.I.I.E. - RETURN THIS NOTICE WITH PAYMENT - ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ - SEE REVERSE SIDE FOR ADDITIONAL INFORMATION

| POLICY NUMBER: | A4-020803-6 | #0699-E050 | **NEW** |
|---|---|---|---|
| POLICY PERIOD: | 09/21/2015  TO  03/21/2016 | Date Prepared: | 09/29/2015 |

THIS POLICY HAS BEEN
PAID IN FULL.

Kathleen Torrence
Terry B Torrence
5716 Meadowlark Dr
Little Rock, AR 72209-2733

140208036  0921150000000000000201518180514030511999999

------------------------------------------------------------------------------

^ TEAR OFF RECEIPT ABOVE AND SEND IN WITH PAYMENT ^
KEEP ID CARDS FOR YOUR RECORDS
**IMPORTANT NOTICE**

FAILURE TO MAINTAIN AUTOMOBILE LIABILITY COVERAGE IN THE MINIMUM LIMITS OF LIABILITY OF
$25,000 / $50,000 / $25,000 IS A VIOLATION OF ARKANSAS LAW.

You may be eligible for auto insurance through the Arkansas Automobile Insurance Plan and such notice is given
you pursuant to the provisions of the law of the State of Arkansas.

---

ARKANSAS
**INSURANCE IDENTIFICATION CARD**
AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE
12901 NORTH FORTY DRIVE   ST. LOUIS, MISSOURI 63141
INSURED:   Kathleen Torrence , Terry B Torrence
5716 Meadowlark Dr
Little Rock, AR 72209-2733

| POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|
| A4-020803-6 | 09/21/15 | 03/21/16 |
| YEAR   MAKE | VEHICLE IDENTIFICATION NUMBER | |
| 2001   MRCD | REDACTED | |

EXCLUDED DRIVER(S):
Katherine Waits

SEE IMPORTANT NOTICE ON REVERSE SIDE          NAIC #15512
THIS DOCUMENT HAS A COLORED BACKGROUND WITH A VOID FEATURE

---

ARKANSAS
**INSURANCE IDENTIFICATION CARD**
AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE
12901 NORTH FORTY DRIVE   ST. LOUIS, MISSOURI 63141
INSURED:   Kathleen Torrence , Terry B Torrence
5716 Meadowlark Dr
Little Rock, AR 72209-2733

| POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|
| A4-020803-6 | 09/21/15 | 03/21/16 |
| YEAR   MAKE | VEHICLE IDENTIFICATION NUMBER | |
| 2001   MRCD | REDACTED | |

EXCLUDED DRIVER(S):
Katherine Waits

SEE IMPORTANT NOTICE ON REVERSE SIDE          NAIC #15512
THIS DOCUMENT HAS A COLORED BACKGROUND WITH A VOID FEATURE

---

ARKANSAS
**INSURANCE IDENTIFICATION CARD**
AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE
12901 NORTH FORTY DRIVE   ST. LOUIS, MISSOURI 63141
INSURED:   Kathleen Torrence , Terry B Torrence
5716 Meadowlark Dr
Little Rock, AR 72209-2733

| POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|
| VOID | VOID | VOID |
| YEAR   MAKE | VEHICLE IDENTIFICATION NUMBER | |

EXCLUDED DRIVER(S):
Katherine Waits

SEE IMPORTANT NOTICE ON REVERSE SIDE          NAIC #15512
THIS DOCUMENT HAS A COLORED BACKGROUND WITH A VOID FEATURE

---

ARKANSAS
**INSURANCE IDENTIFICATION CARD**
AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE
12901 NORTH FORTY DRIVE   ST. LOUIS, MISSOURI 63141
INSURED:   Kathleen Torrence , Terry B Torrence
5716 Meadowlark Dr
Little Rock, AR 72209-2733

| POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|
| VOID | VOID | VOID |
| YEAR   MAKE | VEHICLE IDENTIFICATION NUMBER | |

EXCLUDED DRIVER(S):
Katherine Waits

SEE IMPORTANT NOTICE ON REVERSE SIDE          NAIC #15512
THIS DOCUMENT HAS A COLORED BACKGROUND WITH A VOID FEATURE

---

**Your Agent:** Policy Services                    **Agent Phone:** (877) 736-3922

FORM 2413-1AR (12/2009)

## ADDITIONAL INFORMATION

<u>Payment</u> - To continue insurance under this policy, your payment is due and payable on or before the date due.  Payment is considered as having been made upon receipt at company's home office and not at time of mailing.   Failure to make your payment by the date due shall constitute your request to terminate the insurance.  Please allow at least 5 days when mailing your payment.

<u>Service Charge</u> - The service charge is based on the minimum monthly premium or installment payment plan deposit, whichever is applicable.

<u>Changes to Your Policy</u> - Changes made to your policy will be reflected in your payment notice.   To assure continuous protection, always pay the minimum amount due, even if it does not reflect a recent policy change.  Proper premium credits or charges will be applied to future payment notices.

---

**THIS CARD MUST BE CARRIED IN THE INSURED
MOTOR VEHICLE FOR PRODUCTION UPON DEMAND.**

**IN CASE OF AN ACCIDENT**
Report any accident immediately to:
Claims
**1 – 866 – 222 – 2378**

INSURANCE AGENT:     Policy Services
12901 N Forty Dr
St Louis, MO  63141-8634
(877) 736-3922

**EXAMINE POLICY EXCLUSIONS CAREFULLY. THIS FORM DOES
NOT CONSTITUE ANY PART OF YOUR INSURANCE POLICY.**

**THIS CARD MUST BE CARRIED IN THE INSURED
MOTOR VEHICLE FOR PRODUCTION UPON DEMAND.**

**IN CASE OF AN ACCIDENT**
Report any accident immediately to:
Claims
**1 – 866 – 222 – 2378**

INSURANCE AGENT:     Policy Services
12901 N Forty Dr
St Louis, MO  63141-8634
(877) 736-3922

**EXAMINE POLICY EXCLUSIONS CAREFULLY. THIS FORM DOES
NOT CONSTITUE ANY PART OF YOUR INSURANCE POLICY.**

**THIS CARD MUST BE CARRIED IN THE INSURED
MOTOR VEHICLE FOR PRODUCTION UPON DEMAND.**

**IN CASE OF AN ACCIDENT**
Report any accident immediately to:
Claims
**1 – 866 – 222 – 2378**

INSURANCE AGENT:     Policy Services
12901 N Forty Dr
St Louis, MO  63141-8634
(877) 736-3922

**EXAMINE POLICY EXCLUSIONS CAREFULLY. THIS FORM DOES
NOT CONSTITUTE ANY PART OF YOUR INSURANCE POLICY.**

**THIS CARD MUST BE CARRIED IN THE INSURED
MOTOR VEHICLE FOR PRODUCTION UPON DEMAND.**

**IN CASE OF AN ACCIDENT**
Report any accident immediately to:
Claims
**1 – 866 – 222 – 2378**

INSURANCE AGENT:     Policy Services
12901 N Forty Dr
St Louis, MO  63141-8634
(877) 736-3922

**EXAMINE POLICY EXCLUSIONS CAREFULLY. THIS FORM DOES
NOT CONSTITUTE ANY PART OF YOUR INSURANCE POLICY.**



# *ARKANSAS PERSONAL AUTO POLICY*

**Automobile Club**
 **Inter-Insurance Exchange**
**12901 North Forty Drive**
**St. Louis, Missouri 63141**
**(314) 523-7350**

*A Reciprocal Insurance Exchange*

**Form 136 (05/2011)**

EXHIBIT 1

**ARKANSAS**

## TABLE OF CONTENTS

**TO OUR POLICYHOLDER**                                    1

**AGREEMENT**                                             1

**DEFINITIONS**                                           1

**PART I – LIABILITY
COVERAGE A – BODILY INJURY
COVERAGE B – PROPERTY DAMAGE**

Insuring Agreement                                        5
Supplementary Payments                                    6
Persons Insured                                           8
What is Not Covered – Exclusions                          8
Limits of Liability                                      11
Out of State Coverage                                    13
Financial Responsibility                                 13
Other Insurance                                          14

**PART II – PERSONAL INJURY PROTECTION
COVERAGE C – MEDICAL PAYMENTS
COVERAGE N – WORK LOSS
COVERAGE P – ACCIDENTAL DEATH**

Insuring Agreement                                       14
Persons Insured                                          16
Additional Definitions - Part II                         17
Additional Definitions - Coverage C                      17
Additional Definitions - Coverages N and P               18
What is Not Covered – Exclusions –
  Part II                                                18
What is Not Covered - Exclusions -
  Coverage C                                             19
What is Not Covered - Exclusions -
  Coverage N                                             20
What is Not Covered - Exclusions -
  Coverage P                                             21
Limits of Liability                                      22
Other Insurance                                          22
Payment of Benefits                                      24
Our Right to Recover Payment                             24

**READ *YOUR* POLICY CAREFULLY**

This policy is the legal contract between **you** and **us**. It is written in easy to read and understand language.

**PART III – UNINSURED MOTORIST COVERAGE**
**COVERAGE E – UNINSURED MOTORIST**
**COVERAGE – BODILY INJURY**
**COVERAGE F – UNDERINSURED MOTORIST**
**COVERAGE - BODILY INJURY**
**COVERAGE K - UNINSURED MOTORIST**
**COVERAGE - PROPERTY DAMAGE**

Insuring Agreement - Coverage E and
   Coverage K                                        25
Persons Insured - Coverage E and
   Coverage K                                        26
Additional Definitions - Coverage E and
   Coverage K                                        26
What is Not Covered – Exclusions -
   Coverage E and Coverage K                         27
Limits of Liability - Coverage E and
   Coverage K                                        28
Other Insurance - Coverage E and
   Coverage K                                        30
Insuring Agreement - Coverage F                      30
Persons Insured - Coverage F                         31
Additional Definitions - Coverage F                  31
What is Not Covered - Exclusions -
   Coverage F                                        32
Limits of Liability - Coverage F                     33
Other Insurance - Coverage F                         34
Legal Action Against Us                              34

**PART IV – PHYSICAL DAMAGE**
**COVERAGE G – COMPREHENSIVE**
**COVERAGE H – COLLISION**
**COVERAGE J – RENTAL REIMBURSEMENT**

Insuring Agreement – Coverages G and H             34
Additional Payments – Coverages G and H            35
Insuring Agreement – Coverage J                     36
What is Not Covered – Exclusions                    36
Limits of Liability – Coverages G and H             39
Limits of Liability – Coverage J                    40
No Benefit to Bailee                                41
Other Insurance                                     41
Appraisal – Coverages G and H                       41
Payment of Loss – Coverages G and H                 42

**PART V – YOUR DUTIES AFTER AN ACCIDENT**
**OR LOSS**

General Duties                                      43
Additional Duties                                   44

**PART VI – GENERAL PROVISIONS**

AAA Membership Requirement                          46
Authorization to Examine Driving Record             46
Bankruptcy                                          46
Changes and Liberalization                          46
Misrepresentation or Fraud                          46
No Double Recovery                                  47
Our Right to Recover Payment                        47
Policy Period and Territory                         47
Statements in the Application for Insurance         48
Subrogation                                         48
Suit Against Us                                     48
Termination                                         49
Terms of Policy Conformed to Statute                51
Transfer or Assignment                              51
Two or More Auto Policies                           52
Your Premium                                        52

## TO OUR POLICYHOLDER

This Automobile Club Inter-Insurance Exchange policy along with the Declarations, the Application for Insurance and other endorsements, if any, is *your* complete and valid *auto* insurance contract. This is a non-assessable policy issued only to and renewed for qualified members of the American Automobile Association (AAA) and its divisions or affiliates.

If *you* have an accident or loss, no matter how slight, always report it to the nearest Auto Club representative as soon as possible. For additional information, see Part V – *Your* Duties After an Accident or Loss in this policy.

Automobile Club Inter-Insurance Exchange

## AGREEMENT

*We* will provide the insurance *you* have selected in return for the premium due *us* and *your* compliance with all policy provisions. *Your* declarations page shows the policy period, *your insured autos*, the coverages and limits *you* have chosen and *your* premium. Insurance under this policy is provided only for the coverages for which a premium is shown in the declarations page. The declarations page is part of this policy.

## DEFINITIONS

Throughout this policy, certain words and phrases have a defined meaning when printed in *bold italic* type.

*We*, *us*, or *our* refers to the Automobile Club Inter-Insurance Exchange.

*You* or *your* refers to the named insured shown in the declarations page and the named insured's spouse, if domiciled in the same household.

*Auto* means a motor vehicle with four or more wheels:

1.  whether operable or not;

2.  designed and licensed for *use* mainly on public roads; and

3.  with the primary purpose of transporting *persons* or property.

*Auto accident* - means an accident arising out of the ownership or *use* of an *auto* or *trailer*.

*Auto business* – means to be employed or otherwise engaged in the *business* of selling, repairing, servicing, delivering, testing, road testing, parking or storing motor vehicles or *trailers*.

*Bodily injury* – means bodily harm, sickness or disease, including death that results.

*Business* – means commercial enterprise, trade, profession or occupation.

*Collision* – means:

1.  contact between an *auto* and another object; or

2.  upset of an *auto*.

*Comprehensive* – means direct and accidental loss to *your insured auto* or a *non-owned auto*, except loss caused by *collision*. Loss caused by, but not limited to, the following are considered *comprehensive* not *collision*:

1.  missiles or falling objects;

2.  fire;

3.  theft or larceny;

4.  explosion or earthquake;

5.  windstorm;

6.  hail, water or flood;

1

2

7.    malicious mischief or vandalism;

8.    riot or civil commotion;

9.    contact with bird or animal; or

10.   breakage of glass.
      If breakage of glass is caused by a **collision**, **you** may elect to have it considered a loss caused by **collision**.

**Electronic equipment** – means any equipment that is **permanently installed** to **your insured auto** which is designed to reproduce, transmit, or receive audio, video, or data signals. **Electronic equipment** includes, but is not limited to, radios; tape and CD players; speakers; global positioning systems (GPS); television and video monitors; DVD and video players or recorders; telephones and fax machines; CB and two-way mobile radios; and any parts or components of any of these.

**Household member** – means a **person** who is domiciled in **your** household.

**Non-owned auto** – means a **private passenger auto** or **trailer** not:

1.    owned by;

2.    registered or leased in the name of; or

3.    furnished or available for regular **use** to;

**you** or a **household member** or any other **person** domiciled in **your** household while in the care, custody, control or charge of **you** or a **household member** or any other **person** domiciled in **your** household.

A **temporary substitute auto** is not considered a **non-owned auto**.

**Occupying, occupied** or **occupancy** – means being in or upon, getting in, on, out, upon or off.

**Permanently installed** – means installed in such a way as to require the **use** of hand tools to remove.

**Person** – means a living human being.

**Private passenger auto** – means:

1.    an **auto** with 4 wheels of the private passenger type,

2.    a motor home with 4 or more wheels, or

3.    a pickup or van type **auto** with a rated load capacity of 2,000 pounds or less.

**Property damage** – means injury to or destruction of tangible property, and includes any resulting loss of **use**.

**Punitive damages** – means amounts of money awarded or imposed to punish or to make an example of a wrongdoer and includes, but is not limited to, exemplary damages and aggravated damages.

**Temporary substitute auto** – means an **auto** or **trailer** not owned by **you**, if it replaces **your insured auto** for a short time, not to exceed 90 days. Its **use** has to be with the permission of the owner. **Your insured auto** has to be out of **use** due to its breakdown, repair, servicing, damage or loss. A **temporary substitute auto** is not considered a **non-owned auto**.

**Trailer** – means a vehicle designed to be pulled by a **private passenger auto**.

**Use, used** or **using** – means operating, maintaining, loading or unloading.

**Your insured auto** – means:

1.    Any **auto** shown in the declarations page, while owned by **you**.

2.    Any **private passenger auto** which **you** newly acquire during the policy period and which is owned solely by **you**. Coverage applies only if at the time **you** take possession of the newly acquired **private passenger auto**:

3

4

a. it has replaced any *auto* shown in the declarations page and title and possession of the replaced *auto* have been transferred; or

b. it is in addition to any *auto* shown in the declarations page and *we* insure all *private passenger autos you* then own.

A replacement *auto* as defined in a. above has the same coverage as the *auto* it replaced. An additional *auto* as defined in b. above has the same coverage as the *auto* with the most broad coverage that is shown in the declarations page.

However, *you* must ask *us* for coverage within 30 days after *you* take possession of a newly acquired *auto* insured under this provision if *you* wish:
a. To add or continue physical damage coverage on a replacement *auto*.
b. To insure an additional *auto*. A premium will be charged from the date *you* took possession of the additional *auto*.
If *you* fail to notify *us*, no coverage will be provided after 30 days from the time *you* take possession.

3. Any *trailer you* own. (Physical Damage Coverage does not apply until *you* have notified *us* and a premium is paid for the coverage.)

4. Any *temporary substitute auto*.

5. Any *auto you* do not own while being driven temporarily as a demonstrator *auto* provided by a duly licensed automobile dealer.

---

## PART I - LIABILITY

**COVERAGE A – *BODILY INJURY***
**COVERAGE B – *PROPERTY DAMAGE***

### INSURING AGREEMENT – PART I

1. Subject to the Exclusions, *we* will pay damages for which any *insured* is legally

liable because of *bodily injury* or *property damage* caused by an *auto accident*.

Damages do not include criminal fines, restitution orders or *punitive damages*.

2. *We* will defend any suit claiming damages covered under PART I. *We* will defend any suit even if the allegations are groundless, false or fraudulent.

Defense lawyers will be provided by *us*. If any *insured* retains a lawyer for any claim, whether or not covered under PART I, *we* will not be liable for the fees and costs charged by that lawyer and *we* may pay outside counsel a flat fee to represent *you*.

3. *We* may settle any claim or suit as *we* find appropriate.

### SUPPLEMENTARY PAYMENTS – PART I

In addition to the limits of liability for PART I, *we* will pay:

1. All settlement and defense costs *we* incur on *your* behalf.

2. Any interest on damages covered under PART I on that part of a judgment that is within *our* limit of liability, except:
   a. if *we* offer to pay *our* limit of liability before judgment, *we* will not pay interest thereafter; or
   b. if a judgment is rendered, *we* will not pay interest after *our* limit of liability has been paid or deposited in court.

3. Any reasonable expenses that an *insured* actually incurs at *our* request.

4. Loss of net earnings, but not other income, because of attendance at hearings, trials or depositions at *our* request.

5. Expenses an *insured* incurs for first aid to others at the time of an *auto accident* involving an *auto* insured under PART I.

5

6

6. Premiums on:

a. Appeal bonds or attachment bonds required in any suit *we* defend. *We* will not pay for:

   (1) a bond in excess of the limits of liability; or

   (2) an appeal bond for that portion of a judgment that is not covered under PART I.

b. Bail bonds required:

   (1) because of an *auto accident* arising out of the *use* of an *auto* insured under PART I; or

   (2) for any traffic citation received in connection with such *auto accident*. The bail bond shall not exceed $250.

*We* will pay for, but not apply for or furnish, any such bail bonds.

7. **NAMED INSURED'S SPECIAL BENEFIT -** This coverage applies only to *you*, the named insured. If Liability Coverage is afforded by this policy, *we* will pay the principal sum of $5,000, if *you*, while *occupying your insured auto*, are killed instantly or are injured and die within thirty days from the date of such injury, as a direct result of *collision* or upset of such *auto*, provided that such death is caused solely through external, violent and accidental means.

The special benefit of $5,000 will be increased to $15,000 if, at the time of the accident, *you* were *using* the *auto's* complete restraint system.

If the deceased *insured* is survived by a spouse who was domiciled in the same household at the time of the *auto accident*, *we* will pay the death benefit to such spouse. If the deceased *insured* was an unmarried minor, *we* will pay the death benefit to either parent, who was domiciled in the same household at the time of the accident. Otherwise, *we* will pay the death benefit to the deceased *insured's* estate.

7

*We* have the right to request an autopsy where it is not forbidden by law.

## PERSONS INSURED – PART I

Under PART I, *insured* means:

1. *You* and a *household member*:

   a. in the *use* of *your insured auto*; and

   b. in the *use* of any other *auto* or *trailer*.

2. Any other *person using your insured auto* with *your* permission provided the *use* is within the scope of such permission.

## WHAT IS NOT COVERED – EXCLUSIONS - PART I

*We* do not cover liability of any *person* for:

1. The ownership, maintenance or *use* of:

   a. Any *auto*, other than *your insured auto* which is:

     (1) owned by *you*; or

     (2) furnished or available for *your* regular *use*.

   b. Any *auto*, other than *your insured auto*, which is:

     (1) owned by any *household member*; or

     (2) furnished or available for the regular *use* of any *household member*.

   However, this exclusion does not apply to *your* maintenance or *use* of any *auto* which is:

     (1) owned by a *household member*; or

     (2) furnished or available for the regular *use* of a *household member*.

2. *Bodily injury* or *property damage* arising from the *use* of any *auto* or *trailer* while carrying or delivering *persons*, property or food for a fee or compensation (including wages, salary, tip or separate payment). This exclusion does not apply:

   a. to any shared expense car pools or charitable delivery; or

   b. to *you* while a passenger in an *auto* other than *your insured auto*.

8

3. Any obligation assumed under a contract or agreement.

4. **Bodily injury** or **property damage** which is either expected or intended by an **insured** or which is the result of an **insured's** intentional or criminal acts. **You** are deemed to intend the natural and probable consequences of **your** actions.

5. **Bodily injury** to any employee of a **person** insured if the **bodily injury** arises out of and in the course of employment.

6. **Bodily injury** or **property damage** arising from the **use** of any **auto** in the **auto business**. This exclusion does not apply to the **use** of **your insured auto** by:
   a. **you**;
   b. a **household member**; or
   c. any employee or agent of **you** or a **household member**.

7. **Bodily injury** or **property damage** arising from the **use** of any **auto** in any other **business** of an **insured**. This exclusion does not apply to:
   a. **your insured auto**; or
   b. any other **auto** insured under PART I that is a **private passenger auto** or **trailer** **used** therewith, operated or **occupied** by **you** or **your** domestic employee.

8. Property damage to real or personal property owned or transported by, or in the care, custody, control or charge of or rented to any insured. This exclusion does not apply to:
   a. a rented dwelling house, rented private garage or rented carport damaged by an **auto** insured under PART I, or
   b. any **auto** operated by an **insured** if the **auto** is loaned to the **insured** for demonstration purposes or loaned as a replacement **auto** while **your insured auto** is out of **use** because of breakdown, repair, or servicing, and if the other **auto** is loaned by a **person**, firm or corporation engaged in the **business** of selling, repairing, or servicing **autos**.

9. owner or lessor of an **auto you** or a **household member** does not own.

10. **Bodily injury** or **property damage** to any covered **auto** while it is:
    a. being prepared for, **used** in practice for, or operated in any racing contest, speed contest, hill-climbing contest, jumping contest or other similar contest; or
    b. on a track primarily designed for racing or high-speed driving. This does not apply if the vehicle is being **used** in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

11. **Bodily injury** or **property damage** arising from the **use** of any **auto**, not owned by **you** or a **household member**, without the permission of the owner.

12. **Bodily injury** or **property damage** if insurance is or can be afforded under any nuclear energy policy.

13. **Bodily injury** arising from the loading or unloading of any **auto** insured under PART I. This exclusion does not apply to:
    a. **you**;
    b. a **household member**;
    c. a bailee;
    d. any employee of a., b., or c. above.

14. Any obligation for which any **insured** may be held liable under any workers' compensation law.

15. **Bodily injury** or **property damage** arising from the **use** of any **trailer** with any **auto** not covered under PART I.

16. **Punitive damages**.

17. **Bodily injury** to **you** or any **household member**.

9

10

18. **Bodily injury** or **property damage** arising from the **use** of any motorized vehicle with less than four wheels.

19. **Bodily injury** or **property damage** arising from the **use** of any all terrain vehicles or golf carts.

20. Any damages for which any government entity might be liable for that **person's use** of the **auto**.

21. **Bodily injury** or **property damage** caused by the dumping, discharge or escape of irritants, pollutants or contaminants; however, this exclusion does not apply if the discharge is sudden and accidental.

22. **Bodily injury** or **property damage** while committing a felony or while seeking to elude lawful apprehension or arrest for a felony by a law enforcement official.

23. **Bodily injury** or **property damage** sustained by any **person** while not in lawful possession of an **auto** or voluntarily **occupying** an **auto** knowing it is stolen.

24. **Bodily injury** to any fellow employee of the **insured** arising out of and in the course of such employee's employment.

Any exclusion which is invalid or unenforceable under Arkansas law shall apply to that portion of the damages which exceeds the minimum limits of liability required by such law.

**LIMITS OF LIABILITY – PART I**

1. The limit of liability shown in the declarations page for each **person** for **bodily injury** liability is **our** maximum limit of liability for all damages arising out of and due to **bodily injury** to any one **person**, in any one **auto accident**. The limit of liability shown for each **person** for **bodily injury** also includes all claims which are derivative of the **bodily injury** to that **person**, including but not limited

to damages for care, loss of consortium, loss of services and negligent entrustment, and including imputed negligence, agency, conspiracy, the family purpose doctrine, joint enterprise or venture, employment relationship, partnership, concert of action, or negligent hiring or supervision or retention. This is the most **we** will pay regardless of the number of:

a. covered **persons**;
b. claims made;
c. **autos** or premiums shown in the declarations page;
d. policies issued to **you** or **household members** by **us**: or
e. **autos** involved in the **auto accident**.

The limit of liability shown in the declarations page for each **auto accident** for **bodily injury** liability is **our** maximum limit of liability for all damages arising out of and due to **bodily injury** to any number of **persons**, resulting from any one **auto accident**. The limit of liability shown for each **auto accident** for **bodily injury** also includes all claims which are derivative of the **bodily injury** to any **person**, including but not limited to damages for care, loss of consortium, loss of services and negligent entrustment, and including imputed negligence, agency, conspiracy, the family purpose doctrine, joint enterprise or venture, employment relationship, partnership, concert of action, or negligent hiring or supervision or retention. This is the most **we** will pay regardless of the number of:

a. covered **persons**;
b. claims made;
c. **autos** or premiums shown in the declarations page;
d. policies issued to **you** or **household members** by **us**; or
e. **autos** involved in the **auto accident**.

11

12

2. The limit of liability shown in the declarations page for each accident for *property damage* liability is *our* maximum limit of liability for all damages to all property resulting from any one *auto accident*. This is the most *we* will pay regardless of the number of:

   a. covered *persons*;
   b. claims made;
   c. *autos* or premiums shown in the declarations page;
   d. policies issued to *you* or *household members* by *us*; or
   e. *autos* involved in the *auto accident*.

3. No one will be entitled to duplicate payments for the same elements of damages.

4. An *auto* and attached *trailer* are considered one *auto*. Therefore, the limits of liability will not be increased for an *auto accident* involving an *auto* which has an attached *trailer*.

## OUT OF STATE COVERAGE – PART I

If an *auto accident* involving *your insured auto* occurs outside the state in which *your insured auto* is principally garaged but within the territory where this policy applies, and:

1. the liability limits required by the financial responsibility or similar law of the jurisdiction in which the *auto accident* occurred are higher than the liability limits of this policy; or

2. a compulsory insurance or similar law requires a nonresident to maintain insurance whenever *using* an *auto* in that jurisdiction;

then this policy will provide at least the required coverages and limits.

### FINANCIAL RESPONSIBILITY – PART I

When this policy is certified as future proof of financial responsibility, it will comply with the law to the extent required.

13

## OTHER INSURANCE – PART I

If there is other applicable liability insurance, *we* will pay only *our* share of the loss. *Our* share is the proportion that *our* limit of liability bears to the total of all applicable limits.

However, any insurance *we* provide for an *auto you* do not own shall be excess over any other insurance, unless such *auto* is loaned to *you* by a *person*, firm or corporation engaged in the *auto business* and such *auto* is *used* by any covered *person*:

1. for demonstration purposes; or

2. as a temporary substitute for *your insured auto* which is out of normal *use* because of its breakdown, repair, servicing, or loss or destruction.

## PART II – PERSONAL INJURY PROTECTION

### COVERAGE C – MEDICAL PAYMENTS
### COVERAGE N – WORK LOSS
### COVERAGE P – ACCIDENTAL DEATH

### INSURING AGREEMENT – PART II

Subject to the Exclusions, *we* will only pay those benefits for which a specific premium is shown in the declarations page. These benefits apply to any *private passenger motor vehicle* which is registered or principally garaged in Arkansas and is owned by the *named insured* and covered under Part I of this policy.

*We* will pay personal injury protection benefits to or for an *insured* who sustains *bodily injury*. The *bodily injury* must:

1. be caused by an *auto accident*; and

2. arise out of the maintenance or *use* of an *auto* as an *auto*.

14

If a duly licensed automobile dealer provides an **auto** to the **named insured** or a **household member** for use as a temporary substitute for **your insured auto** while it is out of normal **use** because of its:

1. breakdown;

2. repair; or

3. servicing;

personal injury protection benefits shall extend to such loaned **auto** only to the extent of the coverage provided, if any, to **your insured auto** being repaired or serviced.

Subject to the Exclusions, if **you** pay a premium for COVERAGE C – MEDICAL PAYMENTS, **we** will pay the following:

All reasonable and necessary expenses incurred within 2 years from the date of the **auto accident** for:

1. medical, hospital, x-ray, professional nursing, dental, surgical, ambulance, prosthetic and funeral expenses; and

2. any non-medical remedial care and treatment rendered in accordance with a recognized religious method of healing.

Medical payments do not include expenses in excess of those required for a semi-private room, unless more intensive care is required.

Subject to the Exclusions, if **you** pay a premium for COVERAGE N – WORK LOSS, **we** will pay the following:

1. If an **insured** is an income earner, loss of income from work that **insured** would have performed had the **insured** not sustained **bodily injury**, up to 70% of loss of gross income per week, not to exceed $140 per week.

15

non-income earner, expenses reasonably incurred in obtaining ordinary and necessary services instead of those that **insured** would have performed, without income and for the benefit of the **insured** or the **insured's** family, had the **insured** not sustained **bodily injury**, not to exceed $70 per week or pro rata for a less period.

Work loss applies only to the period beginning 8 days after the date of the **auto accident** and not exceeding 52 weeks. However, work loss does not include any loss or expenses after the death of an **insured**.

Subject to the Exclusions, if **you** pay a premium for COVERAGE P – ACCIDENTAL DEATH, **we** will pay the following:

1. A death benefit paid if **bodily injury** resulting from the **auto accident** causes the death of an **insured** within 1 year from the date of the **auto accident**. The **bodily injury** must be the sole cause of death.

## PERSONS INSURED – PART II

Under PART II, **insured** means:

1. The **named insured** or any **household member** who sustains **bodily injury** while:
   a. **occupying** an **auto**; or
   b. a **pedestrian** struck by an **auto**.

2. Any other **person** who sustains **bodily injury**:
   a. While
      (1) **occupying your insured auto**; or
      (2) a **pedestrian** struck by **your insured auto**.
   b. While **occupying** an **auto** other than **your insured auto**. The **bodily injury** must result from the:
      (1) **use** of such **auto** by the **named insured**;
      (2) operation of such **auto** by the **named insured's** private chauffeur or domestic servant on behalf of the **named insured**; or

16

(3) a **family member** if the **auto** is a **private passenger auto** or **trailer**.

However, 2.b. does not apply to work loss or accidental death.

## ADDITIONAL DEFINITIONS – PART II

**Named Insured** - means the **person** named in the declarations page.

**Pedestrian** - means any **person** who is not **occupying** any vehicle other than a:

1. motorcycle; or

2. vehicle operated by human or animal power.

**Private passenger motor vehicle** - means an **auto** which is a:

1. **Private passenger auto**.

2. Motorcycle.

However, **private passenger motor vehicle** does not include an **auto used** as a public or livery conveyance for passengers.

## ADDITIONAL DEFINITIONS – COVERAGE C

**Your insured auto** – with respect to medical payments, means a **motor vehicle** shown in the declarations page to which medical payments apply. This includes:

1. A **private passenger auto** not owned by the **named insured** while **used** as a temporary substitute for **your insured auto** which is out of normal **use** because of its:
   a. breakdown;
   b. repair;
   c. servicing;
   d. loss; or
   e. destruction.

17

**use** with a **private passenger auto** provided such **trailer** is not being **used** for **business** purposes with another type vehicle.

## ADDITIONAL DEFINITIONS –
## COVERAGES N AND P

**Your insured auto** – with respect to work loss and accidental death, means a **private passenger motor vehicle** shown in the declarations page to which work loss applies. This includes:

1. A **private passenger auto** not owned by the **named insured** while **used** as a temporary substitute for **your insured auto** which is out of normal **use** because of its:
   a. breakdown;
   b. repair;
   c. servicing;
   d. loss; or
   e. destruction.

2. A trailer designed for **use** with a **private passenger auto** provided such **trailer** is not being **used** for **business** purposes with another type vehicle.

## WHAT IS NOT COVERED – EXCLUSIONS –
## PART II

Under PART II, this policy does not provide Personal Injury Protection Coverage for **bodily injury**:

1. Due to war, civil war, insurrection, rebellion, revolution, nuclear reaction, radioactive contamination or any consequence of any of these.

2. Sustained while **occupying**:
   a. any **auto used** as a residence or premises; or
   b. any **trailer** while **used** for **business** purposes.

3. Sustained while **operating** any **auto** without the permission of the owner.

18

4. Sustained by any person while not in lawful possession of an *auto* or voluntarily *occupying* an *auto* knowing it is stolen.

5. Caused by that *person* driving *your insured auto* who intentionally causes a *collision*, causes *property damage*, or intentionally attempts to cause injury to himself, herself or others; which is either expected or intended by an *insured* or which is the result of an *insured's* intentional or criminal acts. *You* are deemed to intend the natural and probable consequences of *your* actions.

6. While committing a felony or while seeking to elude lawful apprehension or arrest for a felony by a law enforcement official.

## WHAT IS NOT COVERED – EXCLUSIONS – COVERAGE C

Under COVERAGE C, this policy does not provide medical payments for *bodily injury* sustained by:

1. Any *person* to the extent that benefits are, in whole or in part, paid or payable under any of the following or similar law:
   a. workers' compensation law; or
   b. employer's disability law.

2. The *named insured* while *occupying* any *auto*, other than *your insured auto*, which is owned by, or furnished, or available for regular *use* of, the *named insured*.

3. Any *household member* while *occupying* any *auto*, other than *your insured auto*, which is owned by, or furnished, or available for regular *use* of, the *named insured* or that *household member*.

4. Any *insured*, other than the *named insured* or any *household member*, while *occupying* any *auto*, other than *your insured auto*, which is owned by, or furnished, or available for regular *use* of, the *named insured* or any *household member*.

19

*person occupying* any *auto* or *trailer* while carrying or delivering *persons*, property or food for a fee or compensation (including wages, salary, tip or separate payment). This exclusion does not apply:
   a. to any shared expense car pools or charitable delivery; or
   b. *you* or a *household member* while a passenger in any *auto* or *trailer*, other than *your insured auto*.

6. Any *person*, other than the *named insured* or any *household member* while *occupying* any *auto*, other than *your insured auto*, while *used* in the *auto business*. This exclusion does not apply to *you* or a *household member*.

7. Any *person*, other than the *named insured* or any *household member* arising out of the maintenance or *use* of any *auto*, other than *your insured auto* or a motorcycle, by that *person* while employed or otherwise engaged in any other *business* or occupation. This exclusion does not apply to *bodily injury* resulting from the operation or occupancy of a:
   a. *private passenger auto*; or
   b. *trailer used* with such *private passenger auto* or *your insured auto;*
   by the *named insured* or their private chauffeur or domestic servant.

8. Any *person* while *occupying* any *auto*, other than *your insured auto*, unless that *person* has the permission of the owner.

## WHAT IS NOT COVERED – EXCLUSIONS – COVERAGE N

Under COVERAGE N, this policy does not provide work loss coverage sustained by:

1. Any *person* to the extent that benefits are, in whole or in part, paid or payable under any of the following or similar law:
   a. workers' compensation law; or
   b. employer's disability law.

20

2. The **named insured** while **occupying** any **private passenger motor vehicle**, other than **your insured auto**, which is owned by, or furnished, or available for regular **use** of, the **named insured**.

3. Any **household member** while **occupying** any **private passenger motor vehicle**, other than **your insured auto**, which is owned by, or furnished, or available for regular **use** of, the **named insured** or that **household member**.

4. Any **household member** entitled to similar coverage as a **named insured** under another policy which provides personal injury protection benefits equal to or greater than those required by the Arkansas statutes.

5. Any **person**, other than the **named insured** or any **household member**, entitled to similar coverage as **named insured** or **household member** under another policy which provides personal injury protection benefits equal to or greater than those required by the Arkansas statutes.

### WHAT IS NOT COVERED – EXCLUSIONS – COVERAGE P

Under COVERAGE P, this policy does not provide accidental death coverage sustained by:

1. The **named insured** while **occupying,** or when struck by, any **private passenger motor vehicle**, other than **your insured auto**, which is owned by, or furnished, or available for regular **use** of, the **named insured**.

2. Any **household member** while **occupying,** or when struck by, any **private passenger motor vehicle**, other than **your insured auto**, which is owned by, or furnished, or available for regular **use** of, the **named insured** or that **household member**.

21

**household member** entitled to similar coverage as a **named insured** under another policy which provides personal injury protection benefits equal to or greater than those required by the Arkansas statutes.

4. Any **person**, other than the **named insured** or any **household member**, entitled to similar coverage as **named insured** or **household member** under another policy which provides personal injury protection benefits equal to or greater than those required by the Arkansas statutes.

### LIMITS OF LIABILITY – PART II

The limits of liability shown in the declaration page for Personal Injury Protection Coverage are the most **we** will pay each **insured** injured in any one **auto accident**, regardless of the number of:

1. **insureds;**

2. policies or bonds applicable;

3. claims made; or

4. **your insured autos**.

### OTHER INSURANCE – PART II

Any insurance **we** provide for COVERAGE C – MEDICAL PAYMENTS:

1. With respect to **bodily injury** sustained by any **household member**, shall be excess over any other insurance available to that **household member** as a **named insured** under another **auto** insurance policy providing direct benefits without regard to fault.

2. With respect to **bodily injury** sustained by an **insured**, other than the **named insured** or any **household member**, shall be excess over any other similar insurance available to that **insured** as a **named insured** or **household member** under another **auto** insurance policy providing direct benefits without regard to fault.

22

Case 4:19-cv-00354-JM Document 1 Filed 05/16/19 Page 88 of 204

Except as provided above, if there is other similar insurance which provides coverage for medical payments, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit liability bears to the total of all applicable limits.

However, if a duly licensed automobile dealer provides an **auto** to the **named insured** or a **household member**:

1. for **use** as a temporary substitute for **your insured auto** while it is out of normal **use** because of its:
   a. breakdown;
   b. repair;
   c. servicing; or

2. to demonstrate the **auto**;

then **we** will provide primary insurance.

No one shall be entitled to recover duplicate payments for medical payments for the same elements of loss.

In the event **we** provide COVERAGE N – WORK LOSS or COVERAGE P – ACCIDENTAL DEATH to:

1. An **insured**, other than the **named insured** or any **household member**, such coverage **we** provide shall be excess over any other insurance available to an **insured**. In this event, **our** maximum limit of liability will be the amount by which the applicable limit of liability shown in the declarations page exceeds the applicable limits of liability of all other insurance.

2. A **named insured** or any **household member**, and the **named insured** or **household member** is provided similar coverage under any other **auto** insurance policy, the maximum recovery under all policies shall not exceed the highest limit of liability under any one policy. In such an event, **we** will pay only **our** share of the loss.

23

However, if a duly licensed automobile dealer provides an **auto** to the **named insured** or a **household member**:

1. for **use** as a temporary substitute for **your insured auto** while it is out of normal **use** because of its:
   a. breakdown;
   b. repair;
   c. servicing; or

2. to demonstrate the **auto**;

then **we** will provide primary insurance.

The coverages under this Part II shall not be applicable or payable, if the prescribed minimum coverages (as set forth in Section 23-89-202 of the Arkansas Statutes) are afforded to those occupants and to **persons** struck by **your insured auto**, either as **named insured** or additional **insured**, under another **auto** insurance policy.

## PAYMENT OF BENEFITS – PART II

**We** may pay medical payments or work loss to an **insured** or any **person** or organization rendering the services. It is **our** option whether the payment is made directly to an **insured**, or to the **person** or organization providing the services. Such payment shall reduce the amount payable under this coverage for **bodily injury** sustained by that **insured**.

### **OUR** RIGHT TO RECOVER PAYMENT – PART II

**Our** right to recover payment under Part II is as follows:

1. This provision does not apply to accidental death.

24

Case 4:19-cv-00354-DCN Document 1 Filed 06/10/19 Page 89 of 204

2. If **we** make a payment under this coverage and the **person** to or for whom payment was made has a right to recover damages from another, that **person** shall:

    a. hold in trust for **us** such rights of recovery;

    b. do nothing after loss to prejudice such rights of recovery;

    c. do whatever is necessary to secure these rights; and

    d. execute and deliver to **us** any instruments and papers as may be appropriate to secure that **person's** and **our** rights.

3. **We** will have a lien against the proceeds of the recovery. **We** may give notice of the lien to any interested **person**.

**Our** right to recover payment will apply only if the **person** to or for whom payment was made under COVERAGE C or COVERAGE N of this policy is made whole in his or her recovery from a third party.

---

### PART III – UNINSURED MOTORIST COVERAGE

**COVERAGE E – UNINSURED MOTORIST COVERAGE – BODILY INJURY**
**COVERAGE F – UNDERINSURED MOTORIST COVERAGE – BODILY INJURY**
**COVERAGE K – UNINSURED MOTORIST COVERAGE – PROPERTY DAMAGE**

### INSURING AGREEMENT – COVERAGE E AND COVERAGE K

Subject to the Exclusions, **we** will pay damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle**, to the extent that the owner or operator is liable, because of:

1. **bodily injury** sustained by an **insured** and caused by an **auto accident**; and

2. **property damage** caused by an **auto accident** if the declarations page indicates that both **bodily injury** and **property damage** Uninsured Motorist Coverage applies.

25

the company's liability for these damages must arise out of the ownership, maintenance or **use** of the **uninsured motor vehicle**.

Any judgment for damages arising out of a suit brought without **our** written consent is not binding on **us**.

### PERSONS INSURED – COVERAGE E AND COVERAGE K

Under COVERAGE E AND COVERAGE K, **insured** means:

1. **You** or any **household member**.

2. Any other **person occupying your insured auto**.

3. Any **person** for damages that **person** is entitled to recover, because of **bodily injury** to which this coverage applies, sustained by a **person** described in 1. or 2. above.

### ADDITIONAL DEFINITIONS – COVERAGE E AND COVERAGE K

**Property damage** means injury to or destruction of **your insured auto**, plus a reasonable allowance for loss of **use** of a comparable vehicle.

**Uninsured motor vehicle** means a land motor vehicle or **trailer** of any type:

1. to which no **bodily injury** liability bond or policy applies at the time of the **auto accident**;

2. which is a hit and run vehicle whose operator or owner cannot be identified and which hits:

    a. **you** or any **household member**;

    b. a vehicle which **you** or any **household member** are **occupying**; or

    c. **your insured auto**; or

3. to which a **bodily injury** liability bond or policy applies at the time of the **auto accident** but the bonding or insuring company is or becomes insolvent.

26

include any vehicle or equipment:

1. Owned by or furnished or available for the regular *use* of *you* or any *household member*.

2. Owned or operated by a self-insurer under any applicable motor vehicle law.

3. Operated on rails or crawler treads.

4. Designed mainly for *use* off public roads while not on public roads.

5. While located for *use* as a residence or premises.

## WHAT IS NOT COVERED – EXCLUSIONS – COVERAGE E AND COVERAGE K

*We* do not provide Uninsured Motorist Coverage for *bodily injury* or *property damage* sustained by any *person*:

1. While *occupying*, or when struck by, any motor vehicle owned by *you* or any *household member* which is not insured for this coverage under this policy. This includes a *trailer* of any type *used* with that motor vehicle.

2. If that *person* or the legal representative settles the *bodily injury* or *property damage* claim without *our* written consent.

3. When *your insured auto* is being *used* to carry or deliver *persons*, property or food for a fee or compensation (including wages, salary, tip or separate payment). This exclusion does not apply to a share-the-expense car pool or charitable delivery.

4. *Using* an *auto* without the permission of the owner.

27

amount of *property damage* to *your insured auto*. This exclusion does not apply if:
a. *we* insure *your insured auto* for both Collision and Uninsured Motorist Coverage – Property Damage; and
b. the operator of the *uninsured motor vehicle* is positively identified and is solely at fault.

This coverage shall not apply directly or indirectly to benefit:

1. Any insurer or self-insurer under any of the following or similar law:
a. workers' compensation law; or
b. disability benefits law.

2. Any insurer of property.

## LIMITS OF LIABILITY – COVERAGE E AND COVERAGE K

The limit of liability shown in the declarations page for each *person* for Uninsured Motorist Coverage is *our* maximum limit of liability for all damages for *bodily injury* sustained by any one *person* in any one *auto accident*. The limit of liability shown for each *person* for *bodily injury* also includes all claims which are derivative of the *bodily injury* to that *person*, including but not limited to damages for care, loss of consortium, loss of services and negligent entrustment, and including imputed negligence, agency, conspiracy, the family purpose doctrine, joint enterprise or venture, employment relationship, partnership, concert of action, or negligent hiring or supervision or retention. This is the most *we* will pay regardless of the number of:

1. *insureds*;

2. claims made;

3. *autos* or premiums shown in the declarations page;

4. policies issued to *you* or *household members* by *us*; or

28

The limit of liability shown in the declarations page for each *auto accident* for Uninsured Motorist Coverage is *our* maximum limit of liability for all damages arising out of and due to *bodily injury* to any number of *persons*, resulting from any one *auto accident*. The limit of liability shown for each *auto accident* for *bodily injury* also includes all claims which are derivative of the *bodily injury* to any *person*, including but not limited to damages for care, loss of consortium, loss of services and negligent entrustment, and including imputed negligence, agency, conspiracy, the family purpose doctrine, joint enterprise or venture, employment relationship, partnership, concert of action, or negligent hiring or supervision or retention. This is the most *we* will pay regardless of the number of:

1. *insureds*;

2. claims made;

3. *autos* or premiums shown in the declarations page;

4. policies issued to *you* or *household members* by *us*; or

5. *autos* involved in the *auto accident*.

Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:

1. paid because of the *bodily injury* or *property damage* by or on behalf of *persons* or organizations who may be legally responsible. This includes all sums paid under Part I and Part II; and

2. paid or payable because of the *bodily injury* under any of the following or similar law:
   a. workers' compensation law; or
   b. disability benefits law.

No payment will be made for loss paid or payable to the *insured* under Part IV of the policy.

Any payment under this coverage will reduce any amount that *person* is entitled to recover for the same damages under Part I of the policy.

## OTHER INSURANCE – COVERAGE E AND COVERAGE K

If there is other applicable similar insurance or self-insurance, *we* will pay only *our* share of the loss. *Our* share is the proportion that *our* limit of liability bears to the total of all applicable limits. However, any insurance *we* provide with respect to a vehicle *you* do not own shall be excess over any other collectable insurance or self-insurance.

## INSURING AGREEMENT – COVERAGE F

Subject to the Exclusions, *we* will pay damages which an *insured* is legally entitled to recover from the owner or operator of an *underinsured motor vehicle*, to the extent that the owner or operator is liable, because of *bodily injury*:

1. sustained by an *insured*; and
2. caused by an *auto accident*.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or *use* of the *underinsured motor vehicle*.

However, we will pay under this coverage only after the limits of liability under any applicable *bodily injury* liability bonds or policies have been exhausted by payment of judgments or settlements.

Within 30 days of receipt of written notice, *we* may make payment to *you* of an amount equal to the tentative settlement amount agreed to by the owner or operator of the other motor vehicle or their liability insurer.

In such event, *we* shall be entitled to subrogate *your* right of recovery against the owner or operator of such other motor vehicle to the extent of such payments and to the extent of any underinsured motorist insurance benefit it pays to *you*.

settlement within 30 days, *we* have no right to the proceeds of any settlement or judgment between *you* and the other owner or operator and/or such owner's or operator's liability insurer, no right to otherwise recoup the amount of the underinsured motorist benefit it may pay from such other owner or operator or their insurer, and no right to refuse payment of its underinsured motorist coverage benefit by reason of the settlement made by *you*.

In the event that the tortfeasor's motor vehicle liability insurance carrier and the underinsured motorist coverage are provided by *us*, the underinsured party may proceed against their underinsured insurance carrier at any time after settlement of the underlying tortfeasor's liability policy claim.

## PERSONS INSURED – COVERAGE F

Under COVERAGE F, *insured* means *you* and any *household member*.

## ADDITIONAL DEFINITIONS – COVERAGE F

*Underinsured motor vehicle* means a land motor vehicle or *trailer* of any type to which a *bodily injury* liability bond or policy applies at the time of the *auto accident* but its limit for *bodily injury* liability is less than the total amount of *your* damages not to exceed the amount of Underinsured Motorist Coverage shown on *your* declarations page.

However, *underinsured motor vehicle* does not include any *auto* or equipment:

1. Owned by or furnished or available for the regular *use* of *you* or any *household member*.

2. Operated on rails or crawler treads.

3. Designed mainly for *use* off public roads while not upon public roads.

as a residence or premises.

5. Owned or operated by a *person* qualifying as a self-insurer under any applicable motor vehicle law.

6. To which a *bodily injury* liability bond or policy applies at the time of the accident but the bonding or insuring company is or becomes insolvent.

## WHAT IS NOT COVERED – EXCLUSIONS – COVERAGE F

*We* do not provide Underinsured Motorist Coverage for *bodily injury* sustained by any *person*:

1. While *occupying*, or when struck by, any motor vehicle owned by *you* or any *household member* which is not insured for this coverage under this policy. This includes a *trailer* of any type *used* with that motor vehicle.

2. When *your insured auto* is being *used* to carry or deliver *persons*, property or food for a fee or compensation (including wages, salary, tip or separate payment). This exclusion does not apply to a share-the-expense car pool or charitable delivery.

3. *Using* a vehicle without the permission of the owner.

This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. workers' compensation law; or

2. disability benefits law.

31

32

The limit of liability shown in the declarations page for each *person* for Underinsured Motorist Coverage is *our* maximum limit of liability for all damages for *bodily injury* sustained by any one *person* in any one *auto accident*. The limit of liability shown for each *person* for *bodily injury* also includes all claims which are derivative of the *bodily injury* to that *person*, including but not limited to damages for care, loss of consortium, loss of services and negligent entrustment, and including imputed negligence, agency, conspiracy, the family purpose doctrine, joint enterprise or venture, employment relationship, partnership, concert of action, or negligent hiring or supervision or retention. This is the most *we* will pay regardless of the number of:

1. *insureds*;

2. claims made;

3. *autos* or premiums shown in the declarations page;

4. policies issued to *you* or *household members* by *us*; or

5. *autos* involved in the *auto accident*.

The limit of liability shown in the declarations page for each *auto accident* for Underinsured Motorist Coverage is *our* maximum limit of liability for all damages arising out of and due to *bodily injury* to any number of *persons*, resulting from any one *auto accident*. The limit of liability shown for each *auto accident* for *bodily injury* also includes all claims which are derivative of the *bodily injury* to any *person*, including but not limited to damages for care, loss of consortium, loss of services and negligent entrustment, and including imputed negligence, agency, conspiracy, the family purpose doctrine, joint enterprise or venture, employment relationship, partnership, concert of action, or negligent hiring or supervision or retention. This is the most *we* will pay regardless of the number of:

1. *insureds*;

33

3. *autos* or premiums shown in the declarations page;

4. policies issued to *you* or *household members* by *us*; or

5. *autos* involved in the *auto accident*.

Any amounts otherwise payable for damages under this coverage shall be reduced by all sums payable because of the *bodily injury* under any of the following or similar law:

1. workers' compensation law; or

2. disability benefits law.

## OTHER INSURANCE – COVERAGE F

If there is other applicable Underinsured Motorist insurance, *we* will pay only *our* share of the loss. *Our* share is the proportion that *our* limit of liability bears to the total of all applicable limits. However, any insurance *we* provide with respect to an *auto you* do not own shall be excess over any other collectable insurance.

## LEGAL ACTION AGAINST *US*

Any suit or action will be barred unless commenced within 5 years after the date of the *auto accident*.

---

## PART IV – PHYSICAL DAMAGE

### COVERAGE G – COMPREHENSIVE
### COVERAGE H – COLLISION
### COVERAGE J – RENTAL REIMBURSEMENT

### INSURING AGREEMENT –
### COVERAGES G AND H

*We* will pay for direct and accidental physical loss to *your insured auto* and any *non–owned auto*. Payment will be reduced by the applicable deductible shown in the declarations page.

34

If the loss is caused by collision with another auto insured by *us* or any company within the Auto Club Enterprises Group, *your* deductible will be reduced by $500. If *your* deductible is less than $500, it will be reduced by *your* actual deductible amount.

## ADDITIONAL PAYMENTS – COVERAGES G AND H

1.  Total Theft Transportation Expenses - *We* will reimburse *you* up to $30 per day, to a maximum of $750, for transportation expenses incurred by *you* when *you* rent an *auto* of equivalent type as *your insured auto* from a car rental agency or garage or *use* public transportation.

    *We* will pay only transportation expenses incurred during the period:
    a.  beginning immediately after the theft has been reported to *us* and to the police; and
    b.  ending when *your insured auto* is returned to *use*, replaced, or five days after *our* offer to pay for its loss, whichever comes first.

2.  If a covered loss to *your insured auto* exceeds the applicable deductible shown in the declarations page, *we* will pay up to $250 for direct and accidental damage to personal property:
    a.  owned by *you* or a *household member*; or
    b.  for which *you* are legally liable and which is contained in *your insured auto*.

    However, this coverage applies only if the damage to the personal property results:
    a.  from the same *auto accident* and the same cause of loss as the damage to the *auto*; and
    b.  not from theft.

3.  Limited Insurance for Loss to Customized Equipment - *We* agree to pay for the direct and accidental loss to customized equipment, including camper shells, to a maximum of $1,000.This limitation does not apply if the

customized equipment has been disclosed and any necessary premium has been paid. The customized equipment · should be *permanently installed* in the *auto*. Any camper shell must be on *your insured auto* at the time of loss.

## INSURING AGREEMENT – COVERAGE J

*We* will pay reasonable expenses *you* actually and necessarily incur for:

1.  renting an *auto* of equivalent type as *your insured auto* from a car rental agency or garage; or

2.  *using* public transport;

because of a loss to *your insured auto*, if *your insured auto* is other than a *trailer*, and the loss:

1.  is other than the total theft of the *auto*; and

2.  is covered under COVERAGES G or H; and

3.  exceeds the applicable deductible shown in the declarations page.

## WHAT IS NOT COVERED – EXCLUSIONS – PART IV

Under PART IV, this policy does not apply to:

1.  Any *auto* or *trailer* while *used* to carry or deliver *persons*, property or food for a fee or compensation (including wages, salary, tip or separate payment). This exclusion does not apply to any shared expense car pools or charitable delivery.

2.  Any *auto* while rented or leased to others.

3.  Any *non-owned auto* or *trailer* while *used* in the *auto business*.

35

36

4.   Loss due and confined to:
    a.   wear and tear;
    b.   deterioration or depreciation;
    c.   freezing; or
    d.   mechanical or electrical breakdown or failure.

5.   Loss resulting from the lack of lubricant or coolant.

6.   Loss to motor homes, *trailers* or campers if the loss results from seepage of water.

7.   Tires unless the loss:
    a.   is caused by fire, malicious mischief, vandalism, or theft; or
    b.   occurs at the same time and from the same cause as other loss covered under PART IV.

8.   Any covered *auto* while it is:
    a.   being prepared for, *used* in practice for, or operated in any racing contest, speed contest, hill-climbing contest, jumping contest or other similar contest; or
    b.   on a track primarily designed for racing or high-speed driving. This does not apply if the vehicle is being *used* in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

9.   Loss due to confiscation by governmental or civil authority.

10.   Loss due to war, civil war, insurrection, rebellion, revolution, nuclear reaction, radioactive contamination or any consequence of any of these.

11.   Loss to *electronic equipment*. This exclusion does not apply if the equipment is *permanently installed* in *your insured auto* in the opening or console designed for the installation of such equipment and was offered as original manufacturers equipment. This exclusion does not apply if the equipment has been declared and any necessary premium has been paid.

37

12.   Any *non-owned auto* when *used* without the permission of the owner.

13.   Loss by or at the direction of any insured which is either expected or intended by an insured or which is the result of an insured's intentional or criminal acts. *You* are deemed to intend the natural and probable consequences of *your* actions.

14.   Any diminution in the value of *your insured auto* or a *non-owned auto* after any damage covered under this part has been repaired.

15.   Loss to a *trailer* not shown in the declarations page. This exclusion does not apply to a *trailer you*:
    a.   acquire during the policy period; and
    b.   ask *us* to insure within 30 days after *you* become the owner.

16.   Theft, embezzlement or other unlawful conversion by any *person* having custody of *your insured auto* after the *auto* has been turned over to another party for the purpose of selling, leasing, or subleasing it.

17.   Loss while committing a felony or while seeking to elude lawful apprehension or arrest for a felony by a law enforcement official.

18.   Loss while the *auto* is *used* in any illegal activity or illegal transportation by *you* or any *household member*.

19.   Loss to any of the following or their accessories;
    a.   citizens band radio;
    b.   two-way mobile radio;
    c.   telephone;
    d.   scanning monitor receiver; or
    e.   radar detector.
    This exclusion does not apply if the equipment is *permanently installed* in the opening or console designed for the installation of such equipment.

38

20. Loss to any custom furnishings in or upon **your insured auto**. Custom furnishings include but are not limited to:
    a. special carpeting and insulation, furniture, bars or television receivers;
    b. facilities for cooking and sleeping;
    c. height-extending roofs;
    d. custom paint jobs, custom murals, paintings, decals, wheels, tires or graphics; or
    e. camper bodies, deck spoilers or other body modifications.

    This exclusion does not apply if the furnishings have been declared and any necessary premium has been paid.

21. Any loss to **your insured auto** or **non-owned auto** arising out of or during its **use** for the transportation of any:
    a. explosive substance;
    b. flammable liquid; or
    c. similar hazardous materials;

    except transportation incidental to **your** ordinary household or farm activities.

22. Loss to **your insured auto** or a newly acquired car if an insured voluntarily relinquishes possession of that **auto** to a **person** or organization under an actual or presumed sales agreement regardless of if the title has been signed or passed.

23. **Punitive damages**.

**LIMITS OF LIABILITY – COVERAGES G AND H**

1. In case of loss, **we** will pay the lesser of:
    a. the actual cash value of the damaged, destroyed, or stolen property, meaning the market value just prior to the loss, taking age and condition of the damaged, destroyed, or stolen property into account;
    b. the cost to repair or replace with like kind and quality. **We** may require or specify the **use** of motor vehicle parts not made by the original manufacturer; or

liability stated in the declarations page.

The applicable deductible shown in the declarations page will be subtracted from **our** payment.

2. **Our** liability will not include diminution of value.

3. **Our** liability for the cost of parts that are not obtainable in the U.S.A. shall not exceed their list price in the U.S.A.

4. The inability to obtain parts shall not be the reason for a total loss.

5. **Our** liability for refinishing all or part of the finished surface of an **auto** shall not exceed the cost of the standard surface finish applied by the **auto** manufacturer before customization or modification.

In addition, with respect to a **non-owned auto**:

1. Any amounts otherwise payable for damages under this coverage shall be reduced by all sums paid because of the damages to the **non-owned auto** by or on behalf of the **persons** or organizations who may be legally responsible. This includes all sums paid under Part I.

2. Any payment under this coverage will reduce any amount that **person** is entitled to recover for the same damages under Part I.

**LIMITS OF LIABILITY – COVERAGE J**

**We** will pay up to the amount of rental reimbursement per day shown in the declarations page for **your insured auto**.

If **your insured auto** is:

1. Not drivable, this coverage starts after the loss has been reported to **us**.

# PART 4. YOUR DUTIES AFTER AN ACCIDENT OR LOSS

## GENERAL DUTIES

1. After an **auto accident** or loss:
   a. **we** must be notified promptly; and
   b. **we** must be informed of the date, time, place and circumstances including, but not limited to, the names and addresses of **persons** involved, injured **persons**, and witnesses.

2. In case of claim or suit against any insured, any legal papers received by an insured must be sent to **us** immediately.

3. Any insured shall cooperate with **us** in investigating any claim and, at **our** request:
   a. attend depositions, hearings and trials;
   b. assist in:
      (1) making settlements;
      (2) securing and giving evidence;
      (3) obtaining the attendance of witnesses; and
      (4) the conduct of suits;
   c. submit, as often as **we** reasonably require, to examination(s) under oath while not in the presence of:
      (1) any other insured **person**; or
      (2) anyone whose presence is not reasonably required for accessibility or communication, except legal counsel; and sign the transcript of the examination(s);
   d. make available for inspection any **auto**, object or premises involved;
   e. authorize **us** to obtain any documentation **we** reasonably require in investigating any claim, including, but not limited to, medical, employment and tax records;
   f. submit to medical exams by doctors **we** choose; and
   g. allow **us** access to the black box.

43

insureds shall not voluntarily:
   a. make any payment;
   b. assume any obligation; or
   c. incur any expense, except for first aid to others at the time of an **auto accident** involving an **auto** or **trailer** insured under PART I;
   except at their own cost.

## ADDITIONAL DUTIES

1. Under Part II – PERSONAL INJURY PROTECTION COVERAGE, **we** must be promptly notified in writing of how, when and where the **auto accident** happened. Notice should include the names and addresses of any insureds and witnesses.

   A **person** seeking Personal Injury Protection Coverage must:
   a. Give **us** written proof of claim, under oath if required. This proof of claim must include:
      (1) complete details of the nature and extent of the injuries and treatment received and contemplated; and
      (2) any other information which may assist **us** in determining the amount due and payable.
   b. At **our** request, furnish **us** with a sworn statement of earnings for the insured since the date of the **auto accident** and for a reasonable time before the **auto accident**.

2. Under PART III – COVERAGE E and COVERAGE K, any **person** seeking Uninsured Motorist Coverage must also:
   a. Promptly notify the police if a hit and run driver is involved.
   b. Immediately send **us** copies of the legal papers if a suit is brought.
   c. Take such action as may be necessary or appropriate to preserve the right to recover damages from any **person** or organization alleged to be legally responsible for the **bodily injury**.

44

d. confirm the person or organization alleged to be legally responsible for the *bodily injury* as a party defendant in any legal action against *us*, when requested by *us*.

3. Under PART III – COVERAGE F, a *person* seeking Underinsured Motorist Coverage must also submit written notice to *us* by certified mail, return receipt requested, if a tentative agreement to settle for the liability limits of the owner or operator of the other *auto* has been reached. Such written notice shall include:
   a. written documentation of pecuniary loss, including copies of all medical bills;
   b. written authorization for *us* to obtain medical and employment records from all medical providers and employers;
   c. written confirmation from the other driver's liability insurer as to the amount of the other driver's liability limits and the terms of the tentative agreement, which shall not include any component sum representing *punitive damages*.

4. Under PART IV – PHYSICAL DAMAGE, any insured shall:
   a. Take reasonable steps to protect a damaged *auto* from further loss. *We* will pay reasonable expenses actually incurred for this protection.
   b. Promptly report to the police:
      (1) the total theft of an *auto*; or
      (2) the vandalism of an *auto*.
   c. Allow *us* to:
      (1) inspect and appraise any *auto* insured under PART IV; and
      (2) get any estimates *we* need;
      before the *auto* can be repaired or disposed of.

45

## PART VI – GENERAL PROVISIONS

### AAA MEMBERSHIP REQUIREMENT

A valid membership in the American Automobile Association (AAA) or its divisions or affiliates is required as a prerequisite to obtaining and renewing this policy.

### AUTHORIZATION TO EXAMINE DRIVING RECORD

By accepting this policy or any renewal of it, *you* authorize *us* or the Attorney–in–Fact, as *your* agent, to obtain the driving records of *you* or any operator.

### BANKRUPTCY

The bankruptcy or insolvency of an insured does not relieve *us* of any obligations *we* have under this policy.

### CHANGES AND LIBERALIZATION

This policy may not be changed unless *we* authorize and agree upon the change. *We* will mail or deliver a written endorsement reflecting the change. Mailing or delivery by *us* to the named insured in the declarations page at the last address on record shall be proof of endorsement or notice.

If *we* broaden coverages during the policy period without charge, this policy will automatically provide those coverages as of the date *we* implement them.

### MISREPRESENTATION OR FRAUD

This policy shall be void if *you* or any insured *person* or anyone acting on *your* behalf has concealed or misrepresented any material fact, or in any case of any fraud or attempted fraud touching any matter regarding this policy, whether before or after a loss, or at the time of the application for the policy.

46

When a **person** has been paid damages by **us** under this policy and also recovers from another, the amount recovered from the other shall be held by that **person** in trust for **us** and reimbursed to **us** to the extent of **our** payment.

## OUR RIGHT TO RECOVER PAYMENT

1. If **we** make a payment under this policy and the **person** to or for whom payment was made has a right to recover damages from another, **we** shall be subrogated to that right. That **person** shall do:
   a. whatever is necessary to enable **us** to exercise **our** rights; and
   b. nothing after loss to prejudice **our** rights.

2. If **we** make a payment under this policy and the **person** to or for whom payment is made recovers damages from another, that **person** shall:
   a. hold in trust for **us** the proceeds of the recovery; and
   b. reimburse **us** to the extent of **our** payment.

**Our** right to recover payment under 1. and 2. will apply only if the **person** to or for whom payment was made is made whole in his or her recovery against a third party.

## POLICY PERIOD AND TERRITORY

This policy applies to accidents and losses that occur during the policy period shown in the declarations page, and within:

1. the United States of America, its territories and possessions; and

2. Canada;

or between ports thereof.

47

## STATEMENTS IN THE APPLICATION FOR INSurance

By accepting this policy, **you** agree:

1. The facts stated in the application for insurance and in the declarations page are correct and accurate. **We** have issued the policy in reliance upon the truth of **your** statements.

2. This policy contains all the agreements between **you** and **us**.

3. To notify **us** promptly of any change to the facts affecting this insurance, including but not limited to:
   a. any change in **autos, auto use,** regular **auto** operators, principal garaging location or the marital status of any regular operator; and
   b. the suspension or revocation of the driver's license of **you** or any other operator who either resides in **your** household or customarily operates any **auto** insured under this policy.

## SUBROGATION

When **we** pay for a loss, any rights of recovery any insured has against a **person** or organization legally liable for the loss become **ours** up to the amount **we** have paid. Any insured must protect these rights and help **us** enforce them.

**Our** right to recover payment will apply only if the **person** to or for whom payment was made under this policy is made whole in his or her recovery against a third party.

## SUIT AGAINST US

**We** may not be sued unless all terms of this policy have been fully complied with. In addition, legal action may not be brought against **us**:

48

1. Under PART I, until an *insured's* obligation to pay is finally determined by:

   a. judgment against the *insured* after actual trial; or

   b. written agreement of the *insured*, the claimant and *us*.

2. Under PARTS II, III and IV, until 30 days after written proof of loss is filed and the amount of loss is determined.

No one has the right to bring *us* into a suit to determine the liability of an insured.

## TERMINATION

1. Cancellation by *You*

   *You* may cancel by:

   a. returning this policy to *us*; or

   b. giving *us* advance notice of the date cancellation is to take effect.

2. Cancellation by *Us*

   *We* may cancel by mailing to *you* and any lienholder at the last address known by *us*:

   a. at least 10 days notice if cancellation is for nonpayment of premium; or

   b. at least 30 days notice in all other cases.

   After this policy is in effect for 60 days, or if this is a renewal or continuation policy, *we* will cancel only:

   a. for nonpayment of premium; or

   b. if *you* or any driver of *your insured auto* shall be convicted of:

      (1) driving while intoxicated;

      (2) homicide or assault arising out of *use* of a motor vehicle; or

      (3) three separate convictions of speeding or reckless driving, or any combination of the two, during the policy period, including three months prior to the effective date of the policy;

   c. if the driver's license or motor vehicle registration of *you* or any operator who either resides in the same household or

49

customarily operates an *auto* insured under this policy has been under suspension or revocation during the policy period, or if the policy is a renewal, during its policy period or the one hundred eighty (180) days immediately preceding its effective date; or

   d. for fraud or misrepresentation of a material fact, the knowledge of which would have caused *us* to decline to issue a policy.

*We* will not rescind *bodily injury* or *property damage* liability coverage under this policy for fraud or misrepresentation with respect to any injury to a third party when suffered as a result of the insured's negligent operation of a motor vehicle.

3. Nonrenewal by *You*

   If *we* offer to renew or continue and *you* or *your* representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that *you* have not accepted *our* offer.

   If *you* obtain other insurance on *your insured auto*, any similar insurance provided by this policy will terminate as to that *auto* on the effective date of the other insurance.

4. Nonrenewal by *Us*

   If *we* decide not to renew or continue this policy, *we* will mail notice to *you* at the last address known by *us*. Notice will be mailed at least 30 days before the end of the policy period.

5. Method of Mailing Notice

   Proof of mailing of any notice shall be sufficient proof of notice.

50

6. **Premium Refund**

   a. If this policy is cancelled, **you** may either be entitled to a refund, or **you** may owe additional premium. If **you** are entitled to a refund, **we** will send it to **you**. However, making or offering to make a refund is not a condition of cancellation.

   b. If **you** cancel during the first policy period (first six months), the earned premium will be computed on a pro rata basis plus a 10% cancellation penalty. The 10% cancellation penalty will be computed on the unearned premium. If cancellation is for non-payment of premium, **you** have cancelled the policy.

   c. If **you** cancel at any other time, the premium for the period from the date of cancellation to the expiration date will be refunded on a pro rata basis. This means that unearned premium to be returned will be in the same proportion to the total policy premium as the remaining policy term (after date of cancellation) bears to the total policy term. Earned premium will be calculated on a daily basis.

   d. If **we** cancel, the refund will be calculated on a pro rata basis.

   e. The effective date of cancellation stated in the notice shall become the end of the policy period.

## TERMS OF POLICY CONFORMED TO STATUTE

Terms of this policy which are in conflict with the statutes of the State of Arkansas are hereby amended to conform to such statutes.

## TRANSFER OR ASSIGNMENT

1. This policy or any interests in it may not be assigned without **our** written permission.

2. If **you** should die, **your** interests in this policy will transfer to **your** legal representative while acting within the scope of his or her duties. Until such appointment, any **person** having proper temporary custody of **your insured auto** will be covered as an insured under the

51

policy, contingent upon payment of the premium.

   Coverage under this provision will only be provided until the end of the policy period during which the death occurred. However, if the death occurred after **we** offered to renew this policy, **we** will continue coverage until the end of the policy period for which **we** offered renewal, contingent upon payment of the premium.

3. This policy does not apply to any **auto accident** or loss after an insured has permanently relinquished possession of **your insured auto**. **We** will, however, pay damages for which **you** are legally liable under PART I.

## TWO OR MORE AUTO POLICIES

If this policy and any other **auto** insurance policy issued to **you**, or any **person** domiciled in **your** household, by the Automobile Club Inter-Insurance Exchange and/or Auto Club Family Insurance Company, apply to the same **auto accident**, the maximum limit of **our** liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

## *YOUR* PREMIUM

**You** agree to pay:

1. the premium stated in the declarations page for the policy period; and

2. any additional premium resulting during the policy period from:
   a. the correction or completion of;
   b. any changes to;
   any information on file that affects the premium for this insurance.

If any transaction described in 2. above results in a premium decrease, a refund will:

1. be mailed to **you** if **your** premium is paid in full; or

52

2. applied to **your** outstanding balance.

The premium for this policy is based upon information **we** have received from **you** or other sources. **You** must inform **us** if any information regarding the following is incorrect or incomplete, or changes during the policy period, and **you** must answer questions **we** ask regarding the following:

1. **your insured auto**, or its **use**, including annual mileage;

2. the **persons** who regularly drive **your insured auto**, including any newly licensed **household members**;

3. **your** marital status; or

4. the location where **your insured auto** is primarily garaged.

If the above information or any other information used to determine the premium is incorrect, incomplete, changes during the policy period, or is not provided to **us** when **we** ask, then **we** may decrease or increase the premium during the policy period.

If any transaction results in a premium decrease, a refund will:

1. be mailed to **you** if **your** premium is paid in full; or

2. applied to **your** outstanding balance.

If **we** increase the premium during the policy period, then **you** must pay the amount of the increase.

_Gail C. Lowe_  Secretary

_[signature]_  President

53

Please keep **your** Declarations Certificates and Endorsements with **your** policy.

**AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE**



### POWER OF ATTORNEY

By accepting or renewing this insurance policy from the Automobile Club Inter-Insurance Exchange ("Exchange"), you have accepted the terms contained herein and have appointed Club Exchange Corporation, a Missouri corporation, having its principal office at 12901 North Forty Drive, St Louis, Missouri ("CEC"), or any such replacement as the Advisory Board may designate pursuant to the provisions of this Power of Attorney, as your Attorney-in-Fact to do the following:

**Sec. 1.** Make, subscribe, modify and cancel policies exchanging insurance with other policyholders at the Exchange containing the terms and agreements as your Attorney-in-Fact shall deem necessary or expedient to effect the exchange of insurance, and with the approval of a majority of the members of the Advisory Board, to secure reinsurance to the extent permitted by applicable law and to cancel or non-renew any such policies including, without limitation, any reinsurance pooling agreement; to receive, collect and sue for, in its own name or otherwise, all money due or to become due to you or the Attorney-in-Fact, or to the Exchange for unpaid premium deposits or otherwise, as well as under any policy of insurance or reinsurance, or in any other manner arising from or growing out of this instrument or the insurance hereby provided for; to waive and receive all notices and proofs of loss; to adjust and settle all losses and claims under policies of insurance and reinsurance; to perform and waive all agreements and stipulations of any such policies; to institute and defend proceedings at law and in equity; to settle any controversy or dispute arising hereunder or under any policy of insurance; to do all things required to effect compliance with the laws of any state in which the Exchange shall operate and to appoint and authorize the statutory officer of such state to accept service of process in any action, suit or proceeding against the Exchange and all appointments for service of process heretofore made are hereby adopted, ratified and confirmed; to accept service and appear in any litigation and to prosecute, defend or compromise the same; with the consent of a majority of the members of the Advisory Board, to borrow money on behalf and in the name of the Exchange or to hypothecate and pledge any and all assets and property of the Exchange as security for the repayment of any money borrowed or to sell or otherwise dispose of any part or all of the assets and property of the Exchange necessary to meet the obligations of the Exchange; and to perform every act necessary to carry out, directly or through one or more subsidiary companies owned by the Exchange, the purposes of this instrument and the insurance business which the Exchange is authorized to transact under applicable law, with full power of substitution and revocation, being subject to the approval of the Advisory Board.

**Sec. 2.** The Attorney-in-Fact shall have no power to make you jointly liable with any other subscriber.

**Sec. 3.** The Exchange is part of an affiliated group of insurance companies and has entered into an Affiliation Agreement, dated as of March 1, 2006, among the Exchange, the Interinsurance Exchange of the Automobile Club, a California interinsurance exchange (the "California Exchange"), Auto Club Enterprises, a California nonprofit mutual benefit corporation ("Enterprises"), Automobile Club of Missouri, a Missouri nonprofit mutual benefit corporation ("AAA Missouri"), Automobile Club of Southern California, a California nonprofit mutual benefit corporation, CEC and ACSC Management Services, Inc., a California corporation (the "Affiliation Agreement").

(a) The Advisory Board shall consist of nine (9) members. The members of the present Advisory Board shall continue in office for the terms to which they were elected and thereafter their successors shall be chosen by the Advisory Board, provided, however, that six (6) members of the Advisory Board (the "California Exchange Members") shall at all times be members of the Board of Governors of the California Exchange and three (3) members of the Advisory Board  (the "AAA Missouri Members") shall at all times be members of the Board of Directors of AAA Missouri.  The AAA Missouri Members shall include each member of the Board of Directors of AAA Missouri then designated by AAA Missouri to serve as a member of the Board of Directors of Enterprises (an "AAA Missouri Designee").  Members shall serve for such terms as the Advisory Board shall provide by its rules and regulations.

(b) If any California Exchange Member ceases to be a member of the Board of Governors of the California Exchange or any AAA Missouri Member ceases to be a member of the Board of Directors of AAA Missouri or if applicable, a AAA Missouri Designee, then such member shall be deemed to be removed from the Advisory Board and such member's successor shall be elected, subject to the provisions of Subsection (a) of this Section 3, by the Advisory Board pursuant to the provisions of such rules and regulations as the Advisory Board may adopt.

(c) The funds of policyholders shall be deposited in banks or other financial institutions, or invested in securities (including the securities of companies engaged in the insurance business, whether or not wholly owned or controlled by the Exchange), real estate or other authorized investments by your Attorney-in-Fact and approved by a majority of the members of the Advisory Board, and the disbursements of such funds shall be by checks or other orders or instructions signed or given by any person or persons authorized by the Attorney-in-Fact. The Advisory Board shall require a good and sufficient bond of the officers and representatives of the Attorney-in-Fact for the protection of all policyholders.

(d) The Advisory Board, by a majority vote of its members, shall have the power and is hereby expressly authorized (1) to remove, at any time and for any reason, which shall not be arbitrary or capricious, your Attorney-in-Fact hereunder, including, but not limited to, CEC, and to designate a new Attorney-in-Fact as a replacement, (2) to adopt, modify, amend, repeal and enforce rules and regulations for determining the manner, mode, and time of computing the amount of savings at the Exchange, and fixing the time or times for the allocation or distribution thereof; (3) to employ certified public accountants to make annual examinations of the accounts of the Exchange and to report their findings to the Advisory Board; (4) to adopt, modify, amend, repeal and enforce uniform rules and regulations as to the participation of policyholders in the surplus of the Exchange; (5) to authorize such expenditures out of the funds

of the policyholders not herein expressly provided for as in the opinion of a majority of members of the Advisory Board shall be for the best interests of the policyholders.  However, no present or future policyholder shall be liable in excess of the policyholders premium deposit or deposits for any portion of the debts of or risks written at the Exchange, and no policyholder shall be bound jointly with any other.  Following any removal of CEC as your Attorney-in-Fact pursuant to this Section 3(d), any replacement Attorney-in-Fact shall only be Enterprises or any of its subsidiaries or affiliates.

(e)  The rules and regulations of the Advisory Board and the decisions of that Board consistent with this agreement and adopted by a majority of the members of that Board shall be final and binding on you.

**Sec. 4.**  The Attorney-in-Fact is authorized to provide for the maintenance of such reserves as are required by the laws in any state in which the Exchange may operate or such reserves as a majority of the members of the Advisory Board deem to be necessary for the protection of the policyholders and the Attorney-in-Fact, with the approval of a majority of the members of the Advisory Board, is authorized to deduct such portion as it shall determine of the savings in each year for the creation and maintenance of a surplus for the payment of losses, insurance, and reinsurance premiums and such other different disbursements as may be authorized by a majority of the members of the Advisory Board.  The savings so deducted shall constitute a general surplus for the aforesaid purposes and shall be known as "exchange surplus".  It is understood that you have no vested or recoverable interest in and to any portion of said "exchange surplus" prior to the liquidation of the Exchange.  If the business of the Exchange is liquidated or dissolved, any remaining surplus in said "exchange surplus" shall be distributed pro rata among the then policyholders at the Exchange, each policyholder being entitled to receive his or her share as determined by applying the ratio between the premium deposits made by him or her and the total of all premium deposits to the sum of the amount of the surplus and all savings returned to the policyholders, and by subtracting from the resulting figures the savings returned to the participating policyholder.  Provided, however, that the Attorney-in-Fact shall receive from any surplus of assets over liabilities all the available portion of its contribution to the Exchange, if any, in cash, securities or by waiver, plus all accumulated earnings due thereon; and in the event the surplus of the Exchange is ever in excess of the legal requirements then the Attorney-in-Fact may, at its option, withdraw from such excess surplus all or the available portion of the funds contributed for the benefit of the Exchange by or through said Attorney-in-Fact, with the consent of the Director of the Department of Insurance of the State of Missouri.

**Sec. 5.**  All savings over and above the amount applied to the "exchange surplus" shall be allocated to the reduction of future premium deposit rates or returned at such time or times as may be designated by a majority of the members of the Advisory Board.  The Attorney-in-Fact shall maintain a basis of accounting that will make possible the allocation or distribution of savings.

**Sec. 6.**  The Attorney-in-Fact is authorized and directed to deduct and retain from the premium deposits received by it an amount to defray its actual expenses for providing necessary office space, books, furniture, stationery, records, data and equipment to conduct the business, and all expenses incident to the operation of the business herein authorized and all other trade association or other association dues.  Any property acquired by the Attorney-in-Fact hereunder shall remain the property of the Exchange.  The Exchange shall not enter into, amend, modify, terminate or grant any waiver, or give any consent with respect to, any management agreement, services agreement or cost-sharing arrangement between the Exchange and the Attorney-in-Fact or any of its affiliates, without the approval of a majority of the members of the Advisory Board.

**Sec. 7.**  This instrument or any policy of insurance or of reinsurance entered into pursuant to the provisions hereof may be canceled or non-renewed by either party as of 12:01 a.m. on any day by either party giving to the other written notice as required by law by mail at the last known address of the party upon whom such notice is to be served, and in case any policy of insurance issued to you shall be cancelled, you agree (if the same shall be unpaid) to pay to the Attorney-in-Fact on demand the amount of the earned premium deposit applicable to such cancelled policy as determined by the rules and regulations of the Advisory Board in force at the date such cancellation shall become effective.  Whenever each and every policy of insurance issued to you shall expire by lapse of time or be cancelled, you shall cease to exchange insurance and, without further notice, this Power of Attorney at the Exchange shall be automatically cancelled within the intent and meaning of this instrument, and any unearned premium deposit or deposits or savings over and above the amount applied to the "exchange surplus" determined in accordance with the rules and regulations of the Advisory Board shall be allocated to the reduction of future premium deposit rates or returned to you.

The Attorney-in-Fact is authorized to issue to you a written policy of insurance for the coverages specifically indicated in the Declarations relating to the vehicles described in such Declarations, and you agree to pay on demand the cash deposit as specified in said Declarations.

This Power of Attorney shall become effective on the Closing Date of the affiliation of the Exchange with the California Exchange pursuant to the Affiliation Agreement with respect to all subscribers as of that date, and will become effective as to persons or entities becoming subscribers thereafter as of the date of such subscribers' execution of or accession to this Power of Attorney.

This Power of Attorney shall apply to any and all other or additional insurance hereafter applied for by you, in the same manner as though applied for in this instrument.  In the event you shall apply for such other or additional insurance you agree to pay such cash deposit or deposits as shall be applicable thereto and agreed to in writing.

**AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE**
**By: CLUB EXCHANGE CORPORATION, Attorney-In-Fact**

Secretary

President

Form 119 (07/2006)

115AR (07/2012)



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMENDMENTS OF POLICY PROVISIONS - ARKANSAS**

**PART IV - PHYSICAL DAMAGE**

The following is added under **INSURING AGREEMENT - COVERAGES G AND H**:

The deductible shall not apply if the loss results from an accidental *collision* between any *auto* insured under COVERAGE H and another *auto* if the cost of repairs exceeds the deductible amount and:

1.  the operator of the *auto* insured under COVERAGE H is free of negligence and is legally entitled to recover damages from the operator of the other *auto*; and
2.  the operator of the *auto* responsible for the *collision* can be identified; and
3.  the operator of the *auto* responsible for the *collision* is covered by *property damage* liability insurance which applies to the loss.

If the owner or operator of the *auto* that struck *your insured auto* cannot be identified, *we* will be unable to waive *your* deductible under PART IV of *your* policy.

The first paragraph under **ADDITIONAL PAYMENTS - COVERAGES G AND H**, item 1. is deleted and replaced by the following:

1.  Total Theft Transportation Expenses - *We* will reimburse *you* up to $40 per day, to a maximum of $1,000, for transportation expenses incurred by *you* when *you* rent an *auto* of equivalent type as *your insured auto* from a car rental agency or garage or *use* public transportation.

**SUBROGATION - PART IV** has been added.

**SUBROGATION - PART IV**

When *we* pay, any rights of recovery from anyone who may be legally liable become *ours* up to the amount *we* have paid. Any *person* insured must protect these rights and help *us* enforce them.

If *we* recover damages for any part of the loss, *we* will pay the *person* insured the applicable deductible up to the amount of *our* recovery.

*Our* right to recover payment will apply only if the *person* to or for whom payment was made under this policy is made whole in his or her recovery against a third party.

**AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE**
**CLUB EXCHANGE CORPORATION, Attorney-in-Fact**

Secretary

President

Kathleen Torrence                        A40208036  0

**193 (11/2012)**

 **THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

*Insurance*    **YOURAUTO ENDORSEMENT**

When the YourAuto Endorsement is shown on *your* Declarations, the following changes apply to *your* policy:

## PART IV - PHYSICAL DAMAGE

The following is added as provision 4. under **ADDITIONAL PAYMENTS - COVERAGES G and H**:

4.  Pet Coverage - If a domestic dog or cat owned by *you* or a *household member* is injured as a direct result of a loss covered under PART IV - PHYSICAL DAMAGE while the domestic dog or cat is *occupying* one of *your insured autos* or a *non-owned auto, we* will pay up to $1,000:
    a.  for reasonable and necessary veterinary expenses actually incurred by *you* or a *household member* for treatment of injuries to *your* injured domestic dog or cat; or
    b.  if *your* domestic dog or cat dies due to those injuries. *Our* payment will be reduced by any veterinary expenses *we* have paid under 4.a. above.

If a domestic dog or cat owned by *you* or a *household member* is lost as a direct result of a total *theft* of *your insured auto* or a *non-owned auto* and the domestic dog or cat is not recovered, *we* will pay $1,000 for the loss of *your* domestic dog or cat.

The most *we* will pay under this coverage for any one covered loss is $1,000 regardless of the number of domestic dogs or cats injured, killed, or lost.

No deductible applies to this coverage.

The following paragraph is added:

## EXTENDED RENTAL REIMBURSEMENT COVERAGE - COVERAGE J

If a covered loss occurs involving *your insured auto* for which *you* have purchased coverage under RENTAL REIMBURSEMENT - COVERAGE J, and, for that loss, *you* elect to:

1.  Allow *us* to arrange for *your* rental vehicle; and
2.  have any repairs covered by this policy performed at a direct repair facility approved by *us*;

*we* will pay up to the amount of RENTAL REIMBURSEMENT coverage per day *you* have purchased until the repairs are completed. This will also increase the per day limit *you* have purchased by $5 per day. This does not apply to an *auto* that has been determined to be a total loss.

Nothing contained here varies, alters or extends any provision of *your auto* insurance policy except as printed in this endorsement.

                **AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE**
                **CLUB EXCHANGE CORPORATION,  Attorney-in-Fact**

               Secretary                           President

**193 (11/2012)**

Kathleen Torrence                A40208036  0



# Notice of Privacy Policy

**Automobile Club of Missouri**
**Automobile Club Inter-Insurance Exchange**
**Auto Club Family Insurance Company**
**Club Insurance Agency, Inc.**

AAA Missouri serves AAA members in Missouri, Arkansas, Louisiana, Mississippi, Eastern Kansas, Southern Illinois, Southern Indiana, Oklahoma and Alabama.

This notice will explain AAA's policies for collecting, using, securing and sharing nonpublic personal information ("customer information") that you have provided to us or that we have acquired from other sources. After you read this notice, if you have any questions or comments, please contact us by mail, telephone or e-mail.

**Our Privacy Principles**

- We do not sell customer information.
- We value you as a customer and take your personal privacy very seriously.
- We respect your right to privacy. If you notify us of your decision to opt out of receiving AAA solicitations and having your personal information shared with non-affiliated companies, we will gladly honor your request.
- We share customer information within our family of companies (including other affiliates of the American Automobile Association) to improve our service to you.
- We sometimes share customer information with other reputable organizations (non-affiliated companies) with whom AAA has a contractual relationship or joint marketing agreement and whose products and services we believe may suit your needs.
- We do not provide customer information directly to such organizations but to third party processors (service bureaus).
- We have a contractual agreement with third party processors that stipulates that they cannot use your personal information for any other purpose than to process solicitations approved by AAA.
- We afford prospective and former customers the same protections as existing customers with respect to use of personal information.

**Information we may collect**
We collect and use information we believe is necessary to administer our business, to advise you about our products and services and to provide you with customer service. We may collect and maintain several types of customer information needed for these purposes. The types of information we may collect and how we gather it include:

- From you, we gather such information as your address, telephone number and e-mail address (from applications for AAA membership, AAA insurance or on other forms, through telephone interviews, your AAA agent and our Customer Care Center).
- From your transactions with us, we gather such information as your payment history, underwriting and claim documents.
- From non-AAA companies, we gather such information as your age, vehicles you own, your driving record and claim history. And from consumer reporting agencies, we gather such information as your credit history.

**How we use the information**
We use customer information to provide your membership benefits, underwrite your policies, process your claims, ensure proper billing, service your accounts and offer you other AAA products.

**(over)**

**Information disclosure**

We share information about our transactions and experiences with you within our AAA family of companies and with AAA agents to better serve you and to assist in meeting your current product and service needs. We may also disclose customer information about you to persons or organizations inside or outside our family of companies as permitted or required by law, including companies that perform marketing services for us or with whom we have joint marketing agreements. These agreements allow us to provide a broader selection of insurance and financial products to you. We share customer information as necessary to provide service to you and to protect you against fraud and unauthorized transactions.

**Your choice to share information**

There are two types of information sharing—information sharing within AAA's family of companies and information sharing outside of AAA. The choice in the Special Notice, which follows, applies only to sharing your personal information outside AAA. If you request that your information not be shared, we will discontinue sharing your information with non-affiliated companies. We may continue to share your information within the AAA family of companies.

**Special notice regarding sharing your personal information**

This notice does not apply to sharing of information within AAA that involves your transactions or experiences with us.

What information we share: Unless you tell us not to, we may share information such as your name, address, phone number or date of birth that was obtained from your AAA membership or insurance application or other forms we use within our AAA family of companies; or information obtained from outside companies such as your driving records.

Why we share: We may share information about you within the AAA family of companies to enhance our service to you, to underwrite your policies, to measure your interest in our products and services, to improve existing products and develop new ones, and to monitor customer trends. We may share information outside AAA in order to offer AAA-endorsed products and services that we believe may suit your needs.

Who we share with: We may share information within the AAA family of companies and with AAA agents, as well as certain non-affiliated companies that process offers of AAA-endorsed products and services to you.

If you prefer that we not share information, please contact us by mail, telephone or e-mail at the address or phone number below. Your choice also will apply to your associate members and joint account and policy holders.

**How we protect customer information**

We maintain physical, electronic and organizational safeguards to protect customer information. We continually review our policies and practices, monitor our computer networks and test the strength of our security in order to help us ensure the safety of customer information.

If you have questions or comments about our Privacy Policy, please contact us at the following address or phone number:

- Write us at: Privacy Policy Inquiries, AAA Missouri, 12901 N. Forty Drive, St. Louis, MO 63141.
- Phone us at: 1-800-222-7623 ext. 7950.
- Send e-mail to: customercare@aaamissouri.com.

**151AR (05/2011)**



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**NAMED DRIVER EXCLUSION ENDORSEMENT**

*You* agree with *us* that by accepting this policy and this endorsement that *we* will not pay for any loss occurring while *your insured auto* or any other *auto* is being driven by

| |
|---|
| Katherine Waits |

This policy provides no coverage in any form while the *person(s)* named above as the excluded driver(s) is operating *your insured auto* or any other *auto*. Any such operation shall immediately make this policy null and void.

This agreement shall be binding and shall apply to all future renewals, reinstatements and changes to this policy unless otherwise mutually agreed to by the Automobile Club Inter-Insurance Exchange and the named insured(s).

**Automobile Club Inter-Insurance Exchange**
**Club Exchange Corporation,  Attorney-in-Fact**

_____
Secretary

_____
President

**Named Insured:**                    **Policy #:**

Kathleen Torrence                    A40208036 0

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2019-Apr-17  17:16:36
60CV-19-1251
C06D02 : 3 Pages

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

**KATHLEEN TORRENCE**                                     **PLAINTIFF**

v.                        **CASE NO. 60CV-19-1251**

**AAA ARKANSAS INSURANCE AGENCY, INC.**         **DEFENDANTS**

---

## PLAINTIFF'S MOTION AND MEMORANDUM BRIEF IN SUPPORT OF HER MOTION FOR VOLUNTARY NON-SUIT OF HER CLAIMS AGAINST DEFENDANT AAA ARKANSAS INSURANCE AGENCY, INC.

---

Comes now Plaintiff Kathleen Torrence, and for her motion and memorandum brief in support of her motion for voluntary non-suit of her claims against Defendant AAA Arkansas Insurance Agency, Inc., states:

1.      Pursuant to Ark. R. Civ. P. 41(a), Plaintiff moves to dismiss her claims against Defendant AAA Arkansas Insurance Agency, Inc. without prejudice.

2.      Simultaneously with this filing, Plaintiff is filing her Amended Class Action Complaint in which she names Automobile Club Inter-



Insurance Exchange as a Defendant in this action. Plaintiff incorporates her Amended Class Action Complaint herein.

WHEREFORE, Plaintiff prays that the Court grants her motion for voluntary non-suit and for all other just and proper relief to which she may be entitled.

Respectfully Submitted,

**HOLLEMAN & ASSOCIATES, P.A.**
1008 West Second Street
Little Rock, Arkansas 72201
Tel. 501.975.5040
Fax 501.975.5043

By: _/s/ John Holleman_____
John Holleman, ABN 91056
_jholleman@johnholleman.net_
Timothy A. Steadman, ABN 2009113
_tim@johnholleman.net_
Jerry Garner, ABN 2014134
_jerry@johnholleman.net_

&

Lloyd "Tre" Kitchens, ABN 99075
_tkitchens@bradhendricks.com_
**THE BRAD HENDRICKS LAW FIRM**
500 C Pleasant Valley Drive
Little Rock, AR 72227
Telephone (501) 221-0444

## CERTIFICATE OF SERVICE

I, John Holleman, hereby certify that on April 17, 2019, a true and correct copy of the foregoing document was served via the Court's electronic filing system which will send notification to all counsel of record:


*/s/ John Holleman*
John Holleman

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## HON. CHRIS PIAZZA - 2ND DIVISION 6TH CIRCUIT

### KATHLEEN TORRENCE V AAA ARK INS AGENCY, INC

60CV-19-1251

### SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE
Corporation Service Company
300 South Spring Street
Suite 900
Little Rock, AR  72201

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

John T Holleman
1008 West 2nd Street
Little Rock, AR  72201

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:
•Notice of Right to Consent to Disposition of Case by a State District Court Judge

Plaintiff is serving her First Set of Interrogatories and Requests for Production of Documents with the summons and complaint



EXHIBIT

4

CLERK OF COURT

Address of Clerks Office

TERRI HOLLINGSWORTH, CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W. MARKHAM
LITTLE ROCK, AR  72201

*jvalenzuela*

Jane Valenzuela, DC

Date: 04/18/2019

## NOTICE OF RIGHT TO CONSENT
## TO DISPOSITION OF CASE BY A STATE DISTRICT COURT JUDGE

In accordance with Administrative Order Number 18, you are hereby notified that upon the consent of all the parties in a case, a State District Court Judge may be authorized to conduct all proceedings, including trial of the case and entry of a final judgment. Copies of appropriate consent forms are available from the Circuit Clerk.

You should be aware that your decision to consent or not to consent to the disposition of your case before a State District Court Judge is entirely voluntary, and by consenting to the reference of this matter to a State District Court Judge, the parties waive their right to a jury trial, and any appeal in the case shall be taken directly to the Arkansas Supreme Court or Court of Appeals as authorized by law.

You should communicate your consent by completing the Form -- CONSENT TO PROCEED BEFORE A STATE DISTRICT COURT JUDGE -- and return to the Circuit Clerk.

Circuit Clerk
Date: 04/18/2019

No: 60CV-19-1251 This summons is for AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE (name of Defendant).

## PROOF OF SERVICE

❑ On _____ [date] I personally delivered the summons and complaint to the individual at _____ [place]; or

❑ After making my purpose to deliver the summons and complaint clear, on _____ [date] I left the summons and complaint in the close proximity of the defendant by _____ [describe how the summons and complaint was left] after he/she refused to receive it when I offered it to him/her; or

❑ On _____ [date] I left the summons and complaint with _____, a member of the defendant's family at least 18 years of age, at _____ [address], a place where the defendant resides; or

❑ On _____ [date] I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant]; or

❑ On _____ [date] at _____ [address], where the defendant maintains and office or other fixed location for the conduct of business, during normal working hours I left the summons and complaint with

_____
[name and job description]; or

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

❑ Other [specify]:

_____

❑ I was unable to execute service because:

_____
_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____          SHERIFF OF _____ COUNTY, ARKANSAS

                                                  By: _____
                                                  [Signature of server]

                                                  _____
                                                  [Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____          By: _____
                                                  [Signature of server]

                                                  _____
                                                  [Printed name]

Address: _____

_____

Phone: _____

Subscribed and sworn to before me this date: _____

                                                  _____
                                                  Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2019-Apr-17 17:16:36
60CV-19-1251
C06D02 : 20 Pages

# IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

**KATHLEEN TORRENCE**                                    **PLAINTIFF**

**v.**                    **CASE NO. 60CV-19-1251**

**AUTOMOBILE CLUB INTER-INSURANCE
EXCHANGE**                                    **DEFENDANT**

---

## AMENDED CLASS ACTION
## COMPLAINT

---

### I. INTRODUCTION

1.      Kathleen Torrence was driving a 2001 Mercedes-Benz E-Class sedan that was involved in an accident. Torrence insured the vehicle with Automobile Club Inter-Insurance Exchange ("AAA"), who declared the vehicle a total loss. AAA made a cash settlement of $3,438 using a CCC One Report. No similar cars were for sale within 250 miles of Torrence's home, but similar vehicles were for sale at prices ranging from $4,800 to $5,995 within a 500-mile radius. AAA uses the CCC One Report in adjusting its total loss claims. The CCC One Report systematically undervalues the insured's

vehicles, resulting in a payment of less than the actual cash value for all total loss claims, saving AAA millions of dollars each year at the expense of its insureds.

2.     AAA's use of the CCC One Report to value total loss claims violates its contracts with its insureds and Arkansas law. AAA is required to calculate actual cash value through either: (a) the cost of a specific, comparable replacement automobile, or (b) using one of two or more quotations obtained from two or more qualified dealers or appraisal services located within the local market area. Instead of following Arkansas law AAA uses the CCC One Report to cheat their policyholders and increase their profits. Torrence brings this suit on behalf of herself and others similarly situated to recover the difference between the actual cash value of her vehicle and what she was paid, punitive damages, costs, and attorneys' fees. Plaintiff also asks the Court to declare that the use of the CCC One Report to adjust first-party insurance claims violates Arkansas law and to permanently enjoin its use.

## II. Parties, Jurisdiction, and Venue

3.      Plaintiff Kathleen Torrence is a resident and citizen of Pulaski County, Arkansas. At all times relevant to this Complaint, she had a motor vehicle insurance policy with AAA and had a total-loss claim.

4.      Defendant Automobile Club Inter-Insurance Exchange ("AAA") is an unincorporated association of subscribing members. As a result, AAA is a citizen of Arkansas as it has members (including Plaintiff) who are citizens of Arkansas. AAA's registered agent for service of process is the Corporation Service Company, 300 Spring St., Suite 900, Little Rock, AR 72201

5.      This Court has subject matter jurisdiction pursuant to Ark. Const. amend. 80, § 6 and Ark. Code Ann. § 16-13-201.

6.      Venue is proper in this Court because Plaintiff resided in Pulaski County at the time of the events which gave rise to this cause of action, and the accident occurred in the same. Ark. Code Ann. § 16-60-101.

## III. Factual Allegations

7.      In November of 2015, Torrence was driving a 2001 Mercedes - Benz E-Class Sedan and was involved in a motor vehicle accident that resulted in substantial damage to her vehicle. Torrence had an insurance

policy with AAA and submitted a claim to her insurer and received an estimate on or about November 30, 2015.

8.     Torrence's insurance policy with AAA contained a clause providing for the adjustment and settlement of total loss claims based on "actual cash value" or "the cost to repair or replace with like kind and quality." Upon information and belief, this is AAA's standard automobile insurance policy issued to insureds in the state of Arkansas. A copy of Torrence's policy is attached as Exhibit "A."

9.     AAA used a report from a third-party corporation known as a CCC One Report to adjust Torrence's claim. The CCC One Report is sold almost solely to insurance companies, and it is marketed as reducing the costs of total value settlements. Upon information and belief, AAA uses the CCC One Report to calculate its offers of all total loss claims.

10.    AAA presented the CCC One report to Torrence as representing the "actual cash value" of the vehicle, and, based on the CCC One Report, AAA paid $3,438 to settle the claim. *See* CCC One Report, attached as Exhibit B. Plaintiff's vehicle, however, was worth more than shown on the CCC One Report. A search for identical vehicles for sale in the immediate area did not show any vehicles of a similar make, model, mileage, or condition within

250 miles of Torrence's home. However, if the search area was expanded to 500 miles, there were similar vehicles listed for prices between $4,800.00 and $5,995.00. *See* used cars for sale at nearby dealerships, obtained on February 28, 2019 attached as Exhibit C.

11. The CCC One Report systematically undervalues vehicles by making a series of arbitrary and unexplained adjustments to the vehicles contained in the report. For instance, the CCC One Report bases its estimate on vehicles listed for sale, but not "in the local area." The first purportedly "comparable" vehicle was located in Memphis, Tennessee, some 138 miles away, while the other vehicle was listed in Paducah, Kentucky, which is over 320 miles away. These are not "in the local market area."

12. The CCC Report automatically discounts 7% from the list value of vehicles listed for private sale and 9% from the value of cars sold by a dealership. This serves to immediately lower the cash price paid to covered parties.

13. AAA knows that the CCC One Report undervalues vehicles. Despite knowing that the CCC One Report undervalues vehicles, AAA continues to use it to determine the amount to pay claimants.

14.     Arkansas law requires that AAA, when adjusting or settling first party automobile total losses, either provide a replacement vehicle, provide a cash settlement based on a specific replacement vehicle if one is available in the local market area, or use "one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified dealers or appraisal services located within the local market area when a comparable automobile is located in the local market area." Ark. Ins. Regulation 43, § 10(a)(2). If the insurer deviates from one of those methods, the deviation must be supported by documentation giving particulars of the automobiles condition, and "[a]ny deductions from such cost, including deduction for salvage, must be measurable, discernable, itemized, and specified as to dollar amount and shall be appropriate in amount." Ark. Ins. R. 43, § 10(a)(3). Further, "[t]he basis for such settlement shall be fully explained to the first party claimant." Ark. Ins. R. 43, § 10(a)(3).

15.     CCC One Information Services, Inc. is not a qualified dealer or appraisal service located in Pulaski County, Arkansas. CCC One Information Services, Inc. is not registered with the Arkansas Secretary of State to do business in Arkansas and does not maintain any offices in the state of Arkansas.

16.    AAA did not provide documentation about why it needed to deviate from one of the two approved methods for Torrence's vehicle, and there was nothing unique about Torrence's vehicle that would justify deviating from the methods approved under Arkansas law.

17.    AAA knows or should know that using the CCC One Report to determine actual cash value violates Arkansas law. Despite knowing that the practice is unlawful, AAA uses the practices because it saves AAA millions of dollars. AAA can achieve this savings because the cost of obtaining an appraisal and litigating the value of a property damage claim exceeds the difference in value between the CCC One Report and the actual cash value of the vehicle.

## IV. CLASS ACTION ALLEGATIONS

18.    Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

19.    Plaintiff brings this as a class action under Rule 23 of the *Arkansas Rules of Civil Procedure*.

20.    Members of the putative class are so numerous that joinder of all such members is impracticable. The exact size of the putative class is unknown but may be easily determined from records maintained by AAA.

21.    There are common questions of law and fact applicable to the putative class with respect to liability, relief, and anticipated affirmative defenses. Common questions of law and fact include:

a.    Whether AAA has a practice of using the CCC One Report to determine actual cash value;

b.    Whether Regulation § 43, § 10 is incorporated into the terms of AAA's automobile insurance policies;

c.    Whether AAA's practices violated Regulation 43, § 10;

d.    Whether CCC One Information Services, Inc. is a qualified dealer or appraiser in the local market area; and

e.    By what percentage does CCC One systematically undervalue cars vis a vis their actual cash value;

22.    Plaintiff's claims are typical of the putative class. Like all other putative class members, Plaintiff had a total loss automobile claim that was settled and adjusted using the CCC One Report.

23.    Plaintiff will fairly and adequately protect the interest of the putative class. She has no conflicts with putative class members and has suffered the same injury as members of the putative class.

**Page 8 of 20**

24.   Plaintiff's counsel possesses the requisite resources and experience in class action litigation to adequately represent Plaintiffs in prosecuting the claims here.

25.   The questions of law and fact common to Plaintiff and members of the putative class predominate over any question affecting only individual class members. These common questions concerning AAA's wrongdoing must be resolved for all class members.

26.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy. AAA engages in a common business practice of using the CCC One Report to settle total loss claims, which is alleged to violate Arkansas law, and it is not unfair to require AAA to litigate its business practice on a class-wide basis. Moreover, Class members' individual damage claims are too small to make individual litigation an economically viable alternative. But despite the small size of any one individual's claims standing along, the aggregate value of the practice is substantial.

27.   Plaintiff's class claims are appropriate to proceed under the Arkansas Deceptive Trade Practices Act. Act 986 of 2017 – which purports to prohibit most private class actions under the Act – is an unconstitutional

intrusion into the Arkansas Supreme Court's exclusive authority to "prescribe the rules of pleading, practice and procedure for all courts." Ark. Const. Amend. 80, § 3; *see also Johnson v. Rockwell Automation*, 2009 Ark. 241, 308 S.W.3d 135 (holding two provisions of Arkansas Civil Justice Reform Act were unconstitutional); *Summerville v. Thrower*, 369 Ark. 231, 253 S.W.3d 415 (2007) (holding statute requiring reasonable cause affidavit was unconstitutional); *Weidrick v. Arnold*, 310 Ark. 138, 835 S.W.2d 843 (1992) (holding statute requiring 60-day notice before filing medical malpractice claim was unconstitutional).

## V. CAUSES OF ACTION
### COUNT I: ARKANSAS DECEPTIVE TRADE PRACTICES ACT

28.    Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

29.    Arkansas law requires that an insurer settle total loss automobile claims by providing the insured with enough money to purchase a specific comparable replacement vehicle in the local market area, or, if no comparable vehicle is available, using one of two or more quotations from a local dealer or appraiser. Ark. Ins. R. 43, § 10.

30.     AAA settles total loss automobile claims by relying on the CCC One Report, even though CCC One Information Services, Inc. is not a local dealer or appraiser and even though the report does not provide the insured with sufficient funds to purchase a comparable replacement automobile.

31.     AAA engaged in an unconscionable, false, or deceptive act or practice in business, commerce, or trade when it used the CCC One Report to settle Plaintiff's total loss claim. AAA also used the same unconscionable, false, or deceptive act or practice in using the CCC One Report to settle all of its total loss claims in Arkansas.

32.     Defendant's conduct proximately caused damage to Plaintiff and putative class members. Plaintiff and putative class members seek compensatory damages in an amount equal to the difference between the amount paid to them to settle total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

33.     AAA knew or ought to have known that their conduct would result in injury to Plaintiff and putative class members and it continued in such conduct in reckless disregard of the consequences. As a result, Plaintiff and putative class members are entitled to punitive damages.

34.     Plaintiff and the putative class members are entitled to an award of attorneys' fees, costs, and expenses in bringing their Deceptive Trade Practices Act claim.

## COUNT II: FRAUD IN THE INDUCEMENT

35.     Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

36.     AAA falsely represented that the amount in the CCC One Report represented the actual cash value of Torrence's automobile. AAA made the same false representation to every other putative class member.

37.     AAA knew that its representation was false. First, AAA knew that Arkansas law requires that an insurer use one of the methods identified in Regulation 43 to determine actual cash value and that the CCC One Report was not a permissible method. Further, AAA knew that the CCC One Report systematically generated valuations that were lower than the "actual cash value" that would have resulted had it obtained a valuation from a qualified local dealer or appraiser as required by Arkansas law.

38.     AAA intended to induce and coerce Plaintiff and putative class members into settling their total loss claims for less than they would have if

AAA had complied with Arkansas law and obtained a quotation from a qualified dealer or appraiser located in the local market area.

39. Plaintiff and putative class members justifiably relied on AAA's representation about the actual cash value. Indeed, because the misrepresentation goes to a material matter, reliance is presumed. *Manhattan Credit Co. v. Burns*, 230 Ark. 418, 323 S.W.2d 206 (1959) ("[R]eliance is to be presumed when, as here, the misrepresentation goes to a material matter."); *Pickering v. Garrison*, 2009 Ark. App. 107, at *13 ("Reliance is presumed when the misrepresentation goes to a material matter.").

40. AAA's conduct proximately caused damages. Plaintiff and putative class members suffered damages in an amount equal to the difference between the amount paid to them to settle their total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

41. Defendant knew or ought to have known that its conduct would result in injury to Plaintiff and putative class members and it continued in such conduct in reckless disregard of the consequences. As a result, Plaintiff and putative class members are entitled to punitive damages.

## COUNT III: BAD FAITH

42.    Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

43.    AAA acted in bad faith to avoid liability under its policy issued to Torrence. AAA knew that its method of settling total loss claims violated Arkansas law and would result in a lower payment to Torrence than if AAA would have obtained a quotation from a qualified local dealer or appraiser. Despite this knowledge, AAA fraudulently presented the CCC One Report to Torrence as representing the "actual cash value" of her vehicle.

44.    AAA did more than merely refuse to pay a claim. AAA intentionally violated Arkansas law to save itself money at the expense of its insured. AAA's conduct was dishonest and oppressive, and was carried out with a state of mind characterized by contempt for its insureds.

45.    AAA's conduct proximately caused damages. Plaintiff and putative class members suffered damages in an amount equal to the difference between the amount paid to them to settle total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

46.    Defendant knew or ought to have known that its conduct would result in injury to Plaintiff and putative class members and it continued in

such conduct in reckless disregard of the consequences. As a result, Plaintiff and putative class members are entitled to punitive damages.

## COUNT IV: BREACH OF CONTRACT

47. Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

48. Torrence and AAA entered into a contract. Among other things, the policy provides for the adjustment and settlement of total losses based on "actual cash value or replacement with another of like kind or quality."

49. Arkansas law requires that AAA either provide a replacement vehicle, provide a cash settlement based on a specific replacement vehicle if one is available in the local market area, or use "one (1) of two (2) or more quotations obtained by the insurer from two (2) or more qualified dealers or appraisal services located within the local market area when a comparable automobile is located in the local market area." Ark. Ins. Regulation 43, § 10(a)(2). If the insurer deviates from this method, it must provide documentation for the deviation, including giving particulars of the automobiles condition, and "[a]ny deductions from such cost, including deduction for salvage, must be measurable, discernable, itemized, and specified as to dollar amount and shall be appropriate in amount." Ark. Ins.

R. 43, § 10(a)(3). Further, "[t]he basis for such settlement shall be fully explained to the first party claimant." Ark. Ins. R. 43, § 10(a)(3). The provisions of Ark. Ins. R. 43 are incorporated into the insurance contract as a matter of law. *See First Sec. Bank v. John Doe 1, 2, & 3*, 297 Ark. 254, 257, 760 S.W.2d 863, 865 (1988).

50.    Torrence and putative class members did what the contract required of them.

51.    AAA breached the contracts by using the CCC One Report instead of using the methods required by Arkansas law.

52.    As a result of AAA's breach of contract, Plaintiff and putative class members suffered damages in an amount equal to the difference between the amount paid to them to settle total loss claims and the actual cash value of their vehicle computed as required by Arkansas law.

### VI. JURY DEMAND & PRAYER FOR RELIEF

53.    Plaintiff incorporates by reference the preceding paragraphs as if they were fully set forth herein.

54.    Article 2, § 7 of the Arkansas Constitution provides that "The right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy[.]" Further, Article 2, § 13

also guarantees every person a "remedy in the laws for all injuries or wrongs

. . . ." Plaintiff demands a remedy in the laws for all injuries and wrongs

alleged, and a trial by jury on all issues so triable.

55.  WHEREFORE, Plaintiff respectfully requests this Court:

a.  Certify a class defined as:

> All individuals insured by AAA under a policy issued or effective in Arkansas who: (a) had a total loss claim with AAA; (b) that received a settlement calculated using CCC One Report; (c) during the period from February 28, 2014 to the present.

b.  Appoint Kathleen Torrence as class representative;

c.  Appoint Holleman & Associates, P.A. as class counsel;

d.  Declare that AAA's practice of using the CCC One Report to settle total loss claims violates Arkansas law;

e.  Enjoin AAA from using the CCC One Report to settle future total loss claims in the state of Arkansas;

f.  Award her compensatory damages in an amount equal to the difference between the actual cash value of her vehicle and the amount AAA paid;

g.      Award her punitive damages in an amount sufficient to punish AAA for its wrongdoing and to deter others from engaging in similar wrongdoing;

h.      Award Plaintiff all recoverable costs, expenses, and attorneys' fees incurred in prosecuting this action, together with all applicable interest; and

i.      Grant Plaintiff all such further relief deemed just and appropriate.

Respectfully Submitted,

**HOLLEMAN & ASSOCIATES, P.A.**
1008 West Second Street
Little Rock, Arkansas 72201
Tel. 501.975.5040
Fax 501.975.5043

By: */s/ John Holleman*
John Holleman, ABN 91056
*jholleman@johnholleman.net*
Timothy A. Steadman, ABN 2009113
*tim@johnholleman.net*
Jerry Garner, ABN 2014134
*jerry@johnholleman.net*

&

Lloyd "Tre" Kitchens, ABN 99075
*tkitchens@bradhendricks.com*
**THE BRAD HENDRICKS LAW FIRM**
500 C Pleasant Valley Drive
Little Rock, AR 72227
Telephone (501) 221-0444

## **CERTIFICATE OF SERVICE**

I, John Holleman, do hereby certify that the foregoing document was filed electronically on April 17, 2019, which will serve notification of this filing to all counsel of record.

_/s/ John Holleman_
John Holleman

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2019-Apr-03  11:03:09
60CV-19-1251
C06D02 : 42 Pages

CARL D. KRAFT, being duly sworn, deposes and states that he is Assistant Secretary of CLUB EXCHANGE CORPORATION, Attorney-in-Fact for the AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE, and that the attached is a true and exact copy of the Declarations Certificate and the Arkansas Personal Auto Policy of **KATHLEEN TORRENCE AND TERRY B. TORRENCE** for the policy period from **September 21, 2015** to **March 21, 2016**, subject to the definitions, exclusions, conditions, requirements, and limits of liability of the policy, and that said document is part of their insurance policy with the AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE, Claim #PA0001349458.

**CARL D. KRAFT**
**Assistant Secretary**

STATE OF MISSOURI  )
                                      ) SS.
COUNTY OF ST. LOUIS  )

Subscribed and sworn to before me this 14th. day of <u>March</u>, 2019, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

*Elizabeth L Umbach*
Notary Public

**EXHIBIT A**

ELIZABETH L. UMBACH
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Charles County
My Commission Expires: January 31, 2021
Commission Number: 13485984

**EXHIBIT 1**



**AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE**

12901 North Forty Drive, St. Louis, MO 63141

**NEW**

## AUTOMOBILE DECLARATIONS

THIS DECLARATIONS CERTIFICATE IS PART OF YOUR POLICY. PLEASE KEEP IT WITH YOUR POLICY.

**YOUR AGENT INFORMATION:**
Policy Services
12901 N Forty Dr
St Louis, MO 63141-8634
(877) 736-3922

**TO REPORT A CLAIM:**
**1–866–222–2378**

**POLICY NUMBER:** A4-020803-6
**POLICY PERIOD:**
09/21/2015 TO 03/21/2016
(12:01 A.M. Standard Time)

**NAMED INSURED AND ADDRESS:**

Kathleen Torrence
Terry B Torrence
5716 Meadowlark Dr
Little Rock, AR 72209-2733

**DATE PREPARED:** 09/29/2015

**Household Address:**
5716 Meadowlark Dr
Little Rock, AR 72209-2733

### SUMMARY

| VEHICLE | DRIVER | DATE OF BIRTH | PREMIUM |
|---|---|---|---|
| 2001 MRCD E430W SED<br>WDBJF70J91B383025 | Kathleen Torrence (Primary)<br>Terry B Torrence | REDACT<br>ED | REDACT |
| | | **TOTAL POLICY PREMIUM** | **REDAC** |

### COVERAGES, LIMITS AND PREMIUM INFORMATION

Any loss under coverage for damage to your auto, collision or comprehensive, is payable, as interest may appear, subject to the provisions of the Loss Payable Clause on the reverse side to the named insured and the lienholder.

| *2001 MRCD E430W SED*<br>WDBJF70J91B383025 | Usage: Pleasure | Estimated Annual Miles:<br>2,501 - 5,000 | Class: E6FMPP |
|---|---|---|---|

| COVERAGE | LIMIT/DEDUCTIBLE | | PREMIUM |
|---|---|---|---|
| Bodily Injury Liability | $25,000 per person / $50,000 per accident | | REDAC |
| Property Damage Liability | $25,000 per accident | | TED |
| Personal Injury Protection - Medical | $1,000 per person | | |
| Personal Injury Protection-Work Loss | $140 per week / 52 weeks maximum | | |
| Personal Injury Protection-Accidental Death | $5,000 per person | | |
| Uninsured Motorists | $25,000 per person / $50,000 per accident | | |
| Underinsured Motorists | $25,000 per person / $50,000 per accident | | |
| Collision | Actual Cash Value / $1,000 deductible | | |
| Comprehensive | Actual Cash Value / $250 deductible | | |
| Rental Reimbursement | $40 per day / $1,000 maximum per accident | | |

**VEHICLE PREMIUM**

The following discounts have been applied to this vehicle and are reflected in the above premium, resulting in a premium savings of **$178.00:**
*Air Bag, Anti-Theft Passive/Vin, Anti-Lock Braking System, AAA Membership Discount, Longevity, Verified Mileage*

| **DECLARATIONS** (continued) | **POLICY #:** A4-020803-6 | **EFFECTIVE:** | 09/21/2015 TO 03/21/2016 |
|---|---|---|---|

## POLICY FORMS AND ENDORSEMENTS

| **FORM** | **DATE** | **DESCRIPTION** |
|---|---|---|
| **MANDATORY ENDORSEMENTS:** | | |
| * 136 | 05/2011 | Arkansas Personal Auto Policy |
| * 119 | 07/2006 | Power of Attorney |
| * 115AR | 07/2012 | Amendments of Policy Provisions - Arkansas |
| * 193 | 11/2012 | Your Auto Pet Insurance and Extended Rental Reimbursement |
| * PVYPOL | 07/2001 | Notice of Privacy |
| **OPTIONAL ENDORSEMENTS:** | | |
| * 151AR | 05/2011 | Named Driver Exclusion Endorsement |

* Endorsement has been revised/added.

| **EXCLUDED DRIVER(S)** | **DATE OF BIRTH** |
|---|---|
| Katherine Waits | REDACT |

### LOSS PAYABLE CLAUSE
#### INFORMATION FOR FINANCED VEHICLES

If a lienholder is shown in the Declarations, we may pay any comprehensive or collision loss to:

1. you and, if unpaid, the repairer, or;
2. you and such lienholder, as its interests may appear, when we find it is not practical to repair your insured auto; or
3. the lienholder as to its interest, if your insured auto has been repossessed.

If we pay the lienholder for loss for which you are not covered, we are entitled to the lienholder's right of recovery against you to the extent of our payment. Our right of recovery shall not impair the lienholder's right to recover the full amount of its claim.

The date of termination of the lienholder's interest will be at least 10 days after we mail the termination notice.

## FUTURE BILLING INFORMATION

FORM 2413-2 (07/2012)

| DECLARATIONS (continued) | POLICY #:   A4-020803-6 | EFFECTIVE:   09/21/2015 TO 03/21/2016 |
|---|---|---|

## IMPORTANT MESSAGES

### TO OUR ARKANSAS POLICYHOLDERS

The following address and telephone numbers are being furnished for your information in compliance with ACT 197 passed by the Arkansas Legislature effective January 1, 1989.

ARKANSAS INSURANCE DEPARTMENT
1200 WEST THIRD STREET
LITTLE ROCK, ARKANSAS 72201-1904
(501) 371 - 2640   (800) 852 - 5494

**Your Personal Injury Protection (PIP) Medical Payment benefit is different than the Required First Party Coverage law suggests OR you have rejected at least one of your PIP benefits - Medical Payment, Work Loss Coverage and Accidental Death.**
• **Automobile Medical Payment Coverage provides all reasonable and necessary expenses for medical up to limits shown on your declarations page.**
• **Work Loss Coverage provides coverage to you for loss of income from work that you would have performed had you not sustained bodily injury.**
• **Accidental Death Coverage provides a death benefit paid if bodily injury resulting from the accident causes death within one year from the date of the accident.**

**Please refer to your policy for a complete description of these coverages and any exclusions that apply.  To make changes to your PIP Coverage limits or to add PIP Coverage to your policy, please contact your AAA agent.**

**Your policy currently has Uninsured Motorist Coverage (UM) and Underinsured Motorists Coverage (UIM) limits that are less than your Bodily Injury Liability Coverage limits OR you have rejected Uninsured Motorist Coverage (UM), Underinsured Motorist Coverage (UIM) and/or Uninsured Motorist Property Damage (UMPD):**
• **UM Coverage is available up to the limits of your Bodily Injury Liability Coverage limits and protects you, household members, and passengers if injured by a hit-and-run motorist or a driver who carries no liability insurance.**
• **UIM Coverage is available at the same limits as your UM Coverage and pays the difference when the at-fault driver's insurance is not enough to compensate you and household members for injuries suffered in an accident.**
• **UMPD Coverage is available to protect you in the event that your insured vehicle is damaged by an uninsured motorist.**

**Please refer to your policy for a complete description of these coverages and any exclusions that apply.  To make changes to your UM and/or UIM Coverage limits or to add UM, UIM or UMPD Coverage to your policy, please contact your AAA agent.**

Your AAA Membership works hard for you.  As a member, you enjoy an exclusive discount that provides annual savings of 10% on certain coverages on your auto insurance in addition to many discounts already offered.  Insure your auto and home with AAA Insurance and save even more.  Call your AAA Agent for details.

When you participate in our AAA OnBoard® Program through the use of the AAA OnBoard® in-vehicle device, you save with a discount on your auto insurance.  The device helps locate your vehicle for roadside assistance and simplifies vehicle mileage collection which will be used to determine your annual mileage at renewal.  It is available to AAA insured members.  Contact your agent to sign up today.

FORM 2413-2 (07/2012)

Kathleen Torrence                          A40208036 0

# PAYMENT NOTICE

## AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE
12901 North Forty Drive, St. Louis, Missouri 63141



PLEASE MAKE CHECK PAYABLE TO A.C.I.I.E. - RETURN THIS NOTICE WITH PAYMENT - ALLOW 5 DAYS IF PAYING BY MAIL - SEE REVERSE SIDE FOR ADDITIONAL INFORMATION

| | | | |
|---|---|---|---|
| POLICY NUMBER: | A4-020803-6 | #0699-E050 | **NEW** |
| POLICY PERIOD: | 09/21/2015  TO  03/21/2016 | Date Prepared: | 09/29/2015 |

THIS POLICY HAS BEEN
PAID IN FULL.

Kathleen Torrence
Terry B Torrence
5716 Meadowlark Dr
Little Rock, AR 72209-2733

140208036  09211500000000000002015181805140305 11999999

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
^ TEAR OFF RECEIPT ABOVE AND SEND IN WITH PAYMENT ^
KEEP ID CARDS FOR YOUR RECORDS
## IMPORTANT NOTICE

FAILURE TO MAINTAIN AUTOMOBILE LIABILITY COVERAGE IN THE MINIMUM LIMITS OF LIABILITY OF $25,000 / $50,000 / $25,000 IS A VIOLATION OF ARKANSAS LAW.

You may be eligible for auto insurance through the Arkansas Automobile Insurance Plan and such notice is given you pursuant to the provisions of the law of the State of Arkansas.

---

### ARKANSAS
### INSURANCE IDENTIFICATION CARD
AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE
12901 NORTH FORTY DRIVE   ST. LOUIS, MISSOURI  63141

**INSURED:** Kathleen Torrence , Terry B Torrence
5716 Meadowlark Dr
Little Rock, AR 72209-2733

| POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|
| A4-020803-6 | 09/21/15 | 03/21/16 |

| YEAR | MAKE | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|
| 2001 | MRCD | REDACTED |

EXCLUDED DRIVER(S):
Katherine Waits

SEE IMPORTANT NOTICE ON REVERSE SIDE        NAIC #15512
THIS DOCUMENT HAS A COLORED BACKGROUND WITH A VOID FEATURE

---

### ARKANSAS
### INSURANCE IDENTIFICATION CARD
AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE
12901 NORTH FORTY DRIVE   ST. LOUIS, MISSOURI  63141

**INSURED:** Kathleen Torrence , Terry B Torrence
5716 Meadowlark Dr
Little Rock, AR 72209-2733

| POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|
| A4-020803-6 | 09/21/15 | 03/21/16 |

| YEAR | MAKE | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|
| 2001 | MRCD | REDACTED |

EXCLUDED DRIVER(S):
Katherine Waits

SEE IMPORTANT NOTICE ON REVERSE SIDE        NAIC #15512
THIS DOCUMENT HAS A COLORED BACKGROUND WITH A VOID FEATURE

---

### ARKANSAS
### INSURANCE IDENTIFICATION CARD
AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE
12901 NORTH FORTY DRIVE   ST. LOUIS, MISSOURI  63141

**INSURED:** Kathleen Torrence , Terry B Torrence
5716 Meadowlark Dr
Little Rock, AR 72209-2733

| POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|
| VOID | VOID | VOID |

| YEAR | MAKE | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|
| | | |

EXCLUDED DRIVER(S):
Katherine Waits

SEE IMPORTANT NOTICE ON REVERSE SIDE        NAIC #15512
THIS DOCUMENT HAS A COLORED BACKGROUND WITH A VOID FEATURE

---

### ARKANSAS
### INSURANCE IDENTIFICATION CARD
AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE
12901 NORTH FORTY DRIVE   ST. LOUIS, MISSOURI  63141

**INSURED:** Kathleen Torrence , Terry B Torrence
5716 Meadowlark Dr
Little Rock, AR 72209-2733

| POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|
| VOID | VOID | VOID |

| YEAR | MAKE | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|
| | | |

EXCLUDED DRIVER(S):
Katherine Waits

SEE IMPORTANT NOTICE ON REVERSE SIDE        NAIC #15512
THIS DOCUMENT HAS A COLORED BACKGROUND WITH A VOID FEATURE

---

**Your Agent:** Policy Services          **Agent Phone:** (877) 736-3922

FORM 2413-1AR (12/2009)

## ADDITIONAL INFORMATION

Payment - To continue insurance under this policy, your payment is due and payable on or before the date due. Payment is considered as having been made upon receipt at company's home office and not at time of mailing. Failure to make your payment by the date due shall constitute your request to terminate the insurance. Please allow at least 5 days when mailing your payment.

Service Charge - The service charge is based on the minimum monthly premium or installment payment plan deposit, whichever is applicable.

Changes to Your Policy - Changes made to your policy will be reflected in your payment notice. To assure continuous protection, always pay the minimum amount due, even if it does not reflect a recent policy change. Proper premium credits or charges will be applied to future payment notices.

---

**THIS CARD MUST BE CARRIED IN THE INSURED
MOTOR VEHICLE FOR PRODUCTION UPON DEMAND.**

**IN CASE OF AN ACCIDENT**
Report any accident immediately to:
Claims
**1 – 866 – 222 – 2378**

INSURANCE AGENT:  Policy Services
12901 N Forty Dr
St Louis, MO 63141-8634
(877) 736-3922

**EXAMINE POLICY EXCLUSIONS CAREFULLY. THIS FORM DOES
NOT CONSTITUTE ANY PART OF YOUR INSURANCE POLICY.**

**THIS CARD MUST BE CARRIED IN THE INSURED
MOTOR VEHICLE FOR PRODUCTION UPON DEMAND.**

**IN CASE OF AN ACCIDENT**
Report any accident immediately to:
Claims
**1 – 866 – 222 – 2378**

INSURANCE AGENT:  Policy Services
12901 N Forty Dr
St Louis, MO 63141-8634
(877) 736-3922

**EXAMINE POLICY EXCLUSIONS CAREFULLY. THIS FORM DOES
NOT CONSTITUTE ANY PART OF YOUR INSURANCE POLICY.**

**THIS CARD MUST BE CARRIED IN THE INSURED
MOTOR VEHICLE FOR PRODUCTION UPON DEMAND.**

**IN CASE OF AN ACCIDENT**
Report any accident immediately to:
Claims
**1 – 866 – 222 – 2378**

INSURANCE AGENT:  Policy Services
12901 N Forty Dr
St Louis, MO 63141-8634
(877) 736-3922

**EXAMINE POLICY EXCLUSIONS CAREFULLY. THIS FORM DOES
NOT CONSTITUTE ANY PART OF YOUR INSURANCE POLICY.**

**THIS CARD MUST BE CARRIED IN THE INSURED
MOTOR VEHICLE FOR PRODUCTION UPON DEMAND.**

**IN CASE OF AN ACCIDENT**
Report any accident immediately to:
Claims
**1 – 866 – 222 – 2378**

INSURANCE AGENT:  Policy Services
12901 N Forty Dr
St Louis, MO 63141-8634
(877) 736-3922

**EXAMINE POLICY EXCLUSIONS CAREFULLY. THIS FORM DOES
NOT CONSTITUTE ANY PART OF YOUR INSURANCE POLICY.**



# *ARKANSAS PERSONAL AUTO POLICY*

**Automobile Club
Inter-Insurance Exchange
12901 North Forty Drive
St. Louis, Missouri 63141
(314) 523-7350**

*A Reciprocal Insurance Exchange*

**Form 136 (05/2011)**

**EXHIBIT 1**

**ARKANSAS**

## TABLE OF CONTENTS

**TO OUR POLICYHOLDER**     1

**AGREEMENT**     1

**DEFINITIONS**     1

**PART I – LIABILITY
COVERAGE A – BODILY INJURY
COVERAGE B – PROPERTY DAMAGE**

Insuring Agreement     5
Supplementary Payments     6
Persons Insured     8
What is Not Covered – Exclusions     8
Limits of Liability     11
Out of State Coverage     13
Financial Responsibility     13
Other Insurance     14

**PART II – PERSONAL INJURY PROTECTION
COVERAGE C – MEDICAL PAYMENTS
COVERAGE N – WORK LOSS
COVERAGE P – ACCIDENTAL DEATH**

Insuring Agreement     14
Persons Insured     16
Additional Definitions - Part II     17
Additional Definitions - Coverage C     17
Additional Definitions - Coverages N and P     18
What is Not Covered – Exclusions – Part II     18
What is Not Covered - Exclusions - Coverage C     19
What is Not Covered - Exclusions - Coverage N     20
What is Not Covered - Exclusions - Coverage P     21
Limits of Liability     22
Other Insurance     22
Payment of Benefits     24
Our Right to Recover Payment     24

**READ *YOUR* POLICY CAREFULLY**

This policy is the legal contract between *you* and *us*. It is written in easy to read and understand language.

**PART III — UNINSURED MOTORIST COVERAGE**
**COVERAGE E – UNINSURED MOTORIST**
   **COVERAGE – BODILY INJURY**
**COVERAGE F – UNDERINSURED MOTORIST**
   **COVERAGE - BODILY INJURY**
**COVERAGE K - UNINSURED MOTORIST**
   **COVERAGE - PROPERTY DAMAGE**

| | |
|---|---|
| Insuring Agreement - Coverage E and Coverage K | 25 |
| Persons Insured - Coverage E and Coverage K | 26 |
| Additional Definitions - Coverage E and Coverage K | 26 |
| What is Not Covered – Exclusions - Coverage E and Coverage K | 27 |
| Limits of Liability - Coverage E and Coverage K | 28 |
| Other Insurance - Coverage E and Coverage K | 30 |
| Insuring Agreement - Coverage F | 30 |
| Persons Insured - Coverage F | 31 |
| Additional Definitions - Coverage F | 31 |
| What is Not Covered - Exclusions - Coverage F | 32 |
| Limits of Liability - Coverage F | 33 |
| Other Insurance - Coverage F | 34 |
| Legal Action Against Us | 34 |

**PART IV – PHYSICAL DAMAGE**
**COVERAGE G – COMPREHENSIVE**
**COVERAGE H – COLLISION**
**COVERAGE J – RENTAL REIMBURSEMENT**

| | |
|---|---|
| Insuring Agreement – Coverages G and H | 34 |
| Additional Payments – Coverages G and H | 35 |
| Insuring Agreement – Coverage J | 36 |
| What is Not Covered – Exclusions | 36 |
| Limits of Liability – Coverages G and H | 39 |
| Limits of Liability – Coverage J | 40 |
| No Benefit to Bailee | 41 |
| Other Insurance | 41 |
| Appraisal – Coverages G and H | 41 |
| Payment of Loss – Coverages G and H | 42 |

**PART V – YOUR DUTIES AFTER AN ACCIDENT**
**OR LOSS**

| | |
|---|---|
| General Duties | 43 |
| Additional Duties | 44 |

**PART VI – GENERAL PROVISIONS**

| | |
|---|---|
| AAA Membership Requirement | 46 |
| Authorization to Examine Driving Record | 46 |
| Bankruptcy | 46 |
| Changes and Liberalization | 46 |
| Misrepresentation or Fraud | 46 |
| No Double Recovery | 47 |
| Our Right to Recover Payment | 47 |
| Policy Period and Territory | 47 |
| Statements in the Application for Insurance | 48 |
| Subrogation | 48 |
| Suit Against Us | 48 |
| Termination | 49 |
| Terms of Policy Conformed to Statute | 51 |
| Transfer or Assignment | 51 |
| Two or More Auto Policies | 52 |
| Your Premium | 52 |

## TO OUR POLICYHOLDER

This Automobile Club Inter-Insurance Exchange policy along with the Declarations, the Application for Insurance and other endorsements, if any, is *your* complete and valid *auto* insurance contract. This is a non-assessable policy issued only to and renewed for qualified members of the American Automobile Association (AAA) and its divisions or affiliates.

If *you* have an accident or loss, no matter how slight, always report it to the nearest Auto Club representative as soon as possible. For additional information, see Part V – *Your* Duties After an Accident or Loss in this policy.

Automobile Club Inter-Insurance Exchange

## AGREEMENT

*We* will provide the insurance *you* have selected in return for the premium due *us* and *your* compliance with all policy provisions. *Your* declarations page shows the policy period, *your insured autos*, the coverages and limits *you* have chosen and *your* premium. Insurance under this policy is provided only for the coverages for which a premium is shown in the declarations page. The declarations page is part of this policy.

## DEFINITIONS

Throughout this policy, certain words and phrases have a defined meaning when printed in *bold italic* type.

*We*, *us*, or *our* refers to the Automobile Club Inter-Insurance Exchange.

*You* or *your* refers to the named insured shown in the declarations page and the named insured's spouse, if domiciled in the same household.

1

*Auto* - means a motor vehicle with four or more wheels:

1. whether operable or not;

2. designed and licensed for *use* mainly on public roads; and

3. with the primary purpose of transporting *persons* or property.

*Auto accident* - means an accident arising out of the ownership or *use* of an *auto* or *trailer*.

*Auto business* – means to be employed or otherwise engaged in the *business* of selling, repairing, servicing, delivering, testing, road testing, parking or storing motor vehicles or *trailers*.

*Bodily injury* – means bodily harm, sickness or disease, including death that results.

*Business* – means commercial enterprise, trade, profession or occupation.

*Collision* – means:

1. contact between an *auto* and another object; or

2. upset of an *auto*.

*Comprehensive* – means direct and accidental loss to *your insured auto* or a *non-owned auto*, except loss caused by *collision*. Loss caused by, but not limited to, the following are considered *comprehensive* not *collision*:

1. missiles or falling objects;

2. fire;

3. theft or larceny;

4. explosion or earthquake;

5. windstorm;

6. hail, water or flood;

2

7.   malicious mischief or vandalism;

8.   riot or civil commotion;

9.   contact with bird or animal; or

10.   breakage of glass.

If breakage of glass is caused by a *collision*, *you* may elect to have it considered a loss caused by *collision*.

*Electronic equipment* – means any equipment that is *permanently installed* to *your insured auto* which is designed to reproduce, transmit, or receive audio, video, or data signals. *Electronic equipment* includes, but is not limited to, radios; tape and CD players; speakers; global positioning systems (GPS); television and video monitors; DVD and video players or recorders; telephones and fax machines; CB and two-way mobile radios; and any parts or components of any of these.

*Household member* – means a *person* who is domiciled in *your* household.

*Non-owned auto* – means a *private passenger auto* or *trailer* not:

1.   owned by;

2.   registered or leased in the name of; or

3.   furnished or available for regular *use* to;

*you* or a *household member* or any other *person* domiciled in *your* household while in the care, custody, control or charge of *you* or a *household member* or any other *person* domiciled in *your* household.

A *temporary substitute auto* is not considered a *non-owned auto*.

*Occupying, occupied* or *occupancy* – means being in or upon, getting in, on, out, upon or off.

*Permanently installed* – means installed in such a way as to require the *use* of hand tools to remove.

3

*Person* – means a living human being.

*Private passenger auto* – means:

1.   an *auto* with 4 wheels of the private passenger type,

2.   a motor home with 4 or more wheels, or

3.   a pickup or van type *auto* with a rated load capacity of 2,000 pounds or less.

*Property damage* – means injury to or destruction of tangible property, and includes any resulting loss of *use*.

*Punitive damages* – means amounts of money awarded or imposed to punish or to make an example of a wrongdoer and includes, but is not limited to, exemplary damages and aggravated damages.

*Temporary substitute auto* – means an *auto* or *trailer* not owned by *you*, if it replaces *your insured auto* for a short time, not to exceed 90 days. Its *use* has to be with the permission of the owner. *Your insured auto* has to be out of *use* due to its breakdown, repair, servicing, damage or loss. A *temporary substitute auto* is not considered a *non-owned auto*.

*Trailer* – means a vehicle designed to be pulled by a *private passenger auto*.

*Use, used* or *using* – means operating, maintaining, loading or unloading.

*Your insured auto* – means:

1.   Any *auto* shown in the declarations page, while owned by *you*.

2.   Any *private passenger auto* which *you* newly acquire during the policy period and which is owned solely by *you*. Coverage applies only if at the time *you* take possession of the newly acquired *private passenger auto*:

4

a. it has replaced any **auto** shown in the declarations page and title and possession of the replaced **auto** have been transferred; or

b. it is in addition to any **auto** shown in the declarations page and **we** insure all **private passenger autos you** then own.

A replacement **auto** as defined in a. above has the same coverage as the **auto** it replaced. An additional **auto** as defined in b. above has the same coverage as the **auto** with the most broad coverage that is shown in the declarations page.

However, **you** must ask **us** for coverage within 30 days after **you** take possession of a newly acquired **auto** insured under this provision if **you** wish:
a. To add or continue physical damage coverage on a replacement **auto**.
b. To insure an additional **auto**. A premium will be charged from the date **you** took possession of the additional **auto**.
If **you** fail to notify **us**, no coverage will be provided after 30 days from the time **you** take possession.

3. Any **trailer you** own. (Physical Damage Coverage does not apply until **you** have notified **us** and a premium is paid for the coverage.)

4. Any **temporary substitute auto**.

5. Any **auto you** do not own while being driven temporarily as a demonstrator **auto** provided by a duly licensed automobile dealer.

---

## PART I - LIABILITY

## COVERAGE A – *BODILY INJURY*
## COVERAGE B – *PROPERTY DAMAGE*

## INSURING AGREEMENT – PART I

1. Subject to the Exclusions, **we** will pay damages for which any **insured** is legally

liable because of **bodily injury** or **property damage** caused by an **auto accident**.

Damages do not include criminal fines, restitution orders or **punitive damages**.

2. **We** will defend any suit claiming damages covered under PART I. **We** will defend any suit even if the allegations are groundless, false or fraudulent.

Defense lawyers will be provided by **us**. If any **insured** retains a lawyer for any claim, whether or not covered under PART I, **we** will not be liable for the fees and costs charged by that lawyer and **we** may pay outside counsel a flat fee to represent **you**.

3. **We** may settle any claim or suit as **we** find appropriate.

## SUPPLEMENTARY PAYMENTS – PART I

In addition to the limits of liability for PART I, **we** will pay:

1. All settlement and defense costs **we** incur on **your** behalf.

2. Any interest on damages covered under PART I on that part of a judgment that is within **our** limit of liability, except:
a. if **we** offer to pay **our** limit of liability before judgment, **we** will not pay interest thereafter; or
b. if a judgment is rendered, **we** will not pay interest after **our** limit of liability has been paid or deposited in court.

3. Any reasonable expenses that an **insured** actually incurs at **our** request.

4. Loss of net earnings, but not other income, because of attendance at hearings, trials or depositions at **our** request.

5. Expenses an **insured** incurs for first aid to others at the time of an **auto accident** involving an **auto** insured under PART I.



5    6

6. Premiums or:
   a. Appeal bonds or attachment bonds required in any suit *we* defend. *We* will not pay for:
      (1) a bond in excess of the limits of liability; or
      (2) an appeal bond for that portion of a judgment that is not covered under PART I.
   b. Bail bonds required:
      (1) because of an *auto accident* arising out of the *use* of an *auto* insured under PART I; or
      (2) for any traffic citation received in connection with such *auto accident*.
      The bail bond shall not exceed $250.

   *We* will pay for, but not apply for or furnish, any such bail bonds.

7. NAMED INSURED'S SPECIAL BENEFIT - This coverage applies only to *you*, the named insured. If Liability Coverage is afforded by this policy, *we* will pay the principal sum of $5,000, if *you*, while *occupying your insured auto*, are killed instantly or are injured and die within thirty days from the date of such injury, as a direct result of *collision* or upset of such *auto*, provided that such death is caused solely through external, violent and accidental means.

   The special benefit of $5,000 will be increased to $15,000 if, at the time of the accident, *you* were *using* the *auto's* complete restraint system.

   If the deceased *insured* is survived by a spouse who was domiciled in the same household at the time of the *auto accident*, *we* will pay the death benefit to such spouse. If the deceased *insured* was an unmarried minor, *we* will pay the death benefit to either parent, who was domiciled in the same household at the time of the accident. Otherwise, *we* will pay the death benefit to the deceased *insured's* estate.

7

*We* have the right to request an autopsy where it is not forbidden by law.

## PERSONS INSURED – PART I

Under PART I, *insured* means:

1. *You* and a *household member*:
   a. in the *use* of *your insured auto*; and
   b. in the *use* of any other *auto* or *trailer*.

2. Any other *person using your insured auto* with *your* permission provided the *use* is within the scope of such permission.

## WHAT IS NOT COVERED – EXCLUSIONS - PART I

*We* do not cover liability of any *person* for:

1. The ownership, maintenance or *use* of:
   a. Any *auto*, other than *your insured auto* which is:
      (1) owned by *you*; or
      (2) furnished or available for *your* regular *use*.
   b. Any *auto*, other than *your insured auto*, which is:
      (1) owned by any *household member*; or
      (2) furnished or available for the regular *use* of any *household member*.
      However, this exclusion does not apply to *your* maintenance or *use* of any *auto* which is:
      (1) owned by a *household member*; or
      (2) furnished or available for the regular *use* of a *household member*.

2. *Bodily injury* or *property damage* arising from the *use* of any *auto* or *trailer* while carrying or delivering *persons*, property or food for a fee or compensation (including wages, salary, tip or separate payment). This exclusion does not apply:
   a. to any shared expense car pools or charitable delivery; or
   b. to *you* while a passenger in an *auto* other than *your insured auto*.

8

Case 2:09-cv-00054... Document 1   Filed 05/16/... Page 9 of 20...

3. Any obligation assumed under a contract or agreement.

4. **Bodily injury** or **property damage** which is either expected or intended by an **Insured** or which is the result of an **Insured's** intentional or criminal acts. **You** are deemed to intend the natural and probable consequences of **your** actions.

5. **Bodily injury** to any employee of a **person** insured if the **bodily injury** arises out of and in the course of employment.

6. **Bodily injury** or **property damage** arising from the **use** of any **auto** in the **auto business**. This exclusion does not apply to the **use** of **your insured auto** by:
   a. **you**;
   b. a **household member**; or
   c. any employee or agent of **you** or a **household member**.

7. **Bodily injury** or **property damage** arising from the **use** of any **auto** in any other **business** of an **insured**. This exclusion does not apply to:
   a. **your insured auto**; or
   b. any other **auto** insured under PART I that is a **private passenger auto** or **trailer used** therewith, operated or **occupied** by **you** or **your** domestic employee.

8. Property damage to real or personal property owned or transported by, or in the care, custody, control or charge of or rented to any insured. This exclusion does not apply to:
   a. a rented dwelling house, rented private garage or rented carport damaged by an **auto** insured under PART I, or
   b. any **auto** operated by an **Insured** if the **auto** is loaned to the **Insured** for demonstration purposes or loaned as a replacement **auto** while **your insured auto** is out of **use** because of breakdown, repair, or servicing, and if the other **auto** is loaned by a **person**, firm or corporation engaged in the **business** of selling, repairing, or servicing **autos**.

9

9. Any obligation of the owner or lessor of an **auto you** or a **household member** does not own.

10. **Bodily injury** or **property damage** to any covered **auto** while it is:
    a. being prepared for, **used** in practice for, or operated in any racing contest, speed contest, hill-climbing contest, jumping contest or other similar contest; or
    b. on a track primarily designed for racing or high-speed driving. This does not apply if the vehicle is being **used** in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

11. **Bodily injury** or **property damage** arising from the **use** of any **auto**, not owned by **you** or a **household member**, without the permission of the owner.

12. **Bodily injury** or **property damage** if insurance is or can be afforded under any nuclear energy policy.

13. **Bodily injury** arising from the loading or unloading of any **auto** insured under PART I. This exclusion does not apply to:
    a. **you**;
    b. a **household member**;
    c. a bailee;
    d. any employee of a., b., or c. above.

14. Any obligation for which any **Insured** may be held liable under any workers' compensation law.

15. **Bodily injury** or **property damage** arising from the **use** of any **trailer** with any **auto** not covered under PART I.

16. **Punitive damages**.

17. **Bodily injury** to **you** or any **household member**.

10

18. **Bodily injury** or **property damage** arising from the **use** of any motorized vehicle with less than four wheels.

19. **Bodily injury** or **property damage** arising from the **use** of any all terrain vehicles or golf carts.

20. Any damages for which any government entity might be liable for that **person's use** of the **auto**.

21. **Bodily injury** or **property damage** caused by the dumping, discharge or escape of irritants, pollutants or contaminants; however, this exclusion does not apply if the discharge is sudden and accidental.

22. **Bodily injury** or **property damage** while committing a felony or while seeking to elude lawful apprehension or arrest for a felony by a law enforcement official.

23. **Bodily injury** or **property damage** sustained by any **person** while not in lawful possession of an **auto** or voluntarily **occupying** an **auto** knowing it is stolen.

24. **Bodily injury** to any fellow employee of the **insured** arising out of and in the course of such employee's employment.

Any exclusion which is invalid or unenforceable under Arkansas law shall apply to that portion of the damages which exceeds the minimum limits of liability required by such law.

### LIMITS OF LIABILITY – PART I

1. The limit of liability shown in the declarations page for each **person** for **bodily injury** liability is **our** maximum limit of liability for all damages arising out of and due to **bodily injury** to any one **person**, in any one **auto accident**. The limit of liability shown for each **person** for **bodily injury** also includes all claims which are derivative of the **bodily injury** to that **person**, including but not limited

to damages for care, loss of consortium, loss of services and negligent entrustment, and including imputed negligence, agency, conspiracy, the family purpose doctrine, joint enterprise or venture, employment relationship, partnership, concert of action, or negligent hiring or supervision or retention. This is the most **we** will pay regardless of the number of:

a. covered **persons**;
b. claims made;
c. **autos** or premiums shown in the declarations page;
d. policies issued to **you** or **household members** by **us**; or
e. **autos** involved in the **auto accident**.

The limit of liability shown in the declarations page for each **auto accident** for **bodily injury** liability is **our** maximum limit of liability for all damages arising out of and due to **bodily injury** to any number of **persons**, resulting from any one **auto accident**. The limit of liability shown for each **auto accident** for **bodily injury** also includes all claims which are derivative of the **bodily injury** to any **person**, including but not limited to damages for care, loss of consortium, loss of services and negligent entrustment, and including imputed negligence, agency, conspiracy, the family purpose doctrine, joint enterprise or venture, employment relationship, partnership, concert of action, or negligent hiring or supervision or retention. This is the most **we** will pay regardless of the number of:

a. covered **persons**;
b. claims made;
c. **autos** or premiums shown in the declarations page;
d. policies issued to **you** or **household members** by **us**; or
e. **autos** involved in the **auto accident**.

2. The limit of liability shown in the declarations page for each accident for *property damage* liability is *our* maximum limit of liability for all damages to all property resulting from any one *auto accident*. This is the most *we* will pay regardless of the number of:

   a. covered *persons*;

   b. claims made;

   c. *autos* or premiums shown in the declarations page;

   d. policies issued to *you* or *household members* by *us*; or

   e. *autos* involved in the *auto accident.*

3. No one will be entitled to duplicate payments for the same elements of damages.

4. An *auto* and attached *trailer* are considered one *auto*. Therefore, the limits of liability will not be increased for an *auto accident* involving an *auto* which has an attached *trailer*.

## OUT OF STATE COVERAGE – PART I

If an *auto accident* involving *your insured auto* occurs outside the state in which *your insured auto* is principally garaged but within the territory where this policy applies, and:

1. the liability limits required by the financial responsibility or similar law of the jurisdiction in which the *auto accident* occurred are higher than the liability limits of this policy; or

2. a compulsory insurance or similar law requires a nonresident to maintain insurance whenever *using* an *auto* in that jurisdiction;

then this policy will provide at least the required coverages and limits.

## FINANCIAL RESPONSIBILITY – PART I

When this policy is certified as future proof of financial responsibility, it will comply with the law to the extent required.

13

## OTHER INSURANCE – PART I

If there is other applicable liability insurance, *we* will pay only *our* share of the loss. *Our* share is the proportion that *our* limit of liability bears to the total of all applicable limits.

However, any insurance *we* provide for an *auto you* do not own shall be excess over any other insurance, unless such *auto* is loaned to *you* by a *person*, firm or corporation engaged in the *auto business* and such *auto* is *used* by any covered *person*:

1. for demonstration purposes; or

2. as a temporary substitute for *your insured auto* which is out of normal *use* because of its breakdown, repair, servicing, or loss or destruction.

## PART II – PERSONAL INJURY PROTECTION

### COVERAGE C – MEDICAL PAYMENTS
### COVERAGE N – WORK LOSS
### COVERAGE P – ACCIDENTAL DEATH

### INSURING AGREEMENT – PART II

Subject to the Exclusions, *we* will only pay those benefits for which a specific premium is shown in the declarations page. These benefits apply to any *private passenger motor vehicle* which is registered or principally garaged in Arkansas and owned by the *named insured* and covered under Part I of this policy.

*We* will pay personal injury protection benefits to or for an *insured* who sustains *bodily injury*. The *bodily injury* must:

1. be caused by an *auto accident*; and

2. arise out of the maintenance or *use* of an *auto* as an *auto*.

14

If a duly licensed automobile dealer provides an *auto* to the *named insured* or a *household member* for use as a temporary substitute for *your insured auto* while it is out of normal *use* because of its:

1. breakdown;

2. repair; or

3. servicing;

personal injury protection benefits shall extend to such loaned *auto* only to the extent of the coverage provided, if any, to *your insured auto* being repaired or serviced.

Subject to the Exclusions, if *you* pay a premium for COVERAGE C – MEDICAL PAYMENTS, *we* will pay the following:

All reasonable and necessary expenses incurred within 2 years from the date of the *auto accident* for:

1. medical, hospital, x-ray, professional nursing, dental, surgical, ambulance, prosthetic and funeral expenses; and

2. any non-medical remedial care and treatment rendered in accordance with a recognized religious method of healing.

Medical payments do not include expenses in excess of those required for a semi-private room, unless more intensive care is required.

Subject to the Exclusions, if *you* pay a premium for COVERAGE N – WORK LOSS, *we* will pay the following:

1. If an *insured* is an income earner, loss of income from work that *insured* would have performed had the *insured* not sustained *bodily injury*, up to 70% of loss of gross income per week, not to exceed $140 per week.

non-income earner, expenses reasonably incurred in obtaining ordinary and necessary services instead of those that *insured* would have performed, without income and for the benefit of the *insured* or the *insured's* family, had the *insured* not sustained *bodily injury*, not to exceed $70 per week or pro rata for a less period.

Work loss applies only to the period beginning 8 days after the date of the *auto accident* and not exceeding 52 weeks. However, work loss does not include any loss or expenses after the death of an *insured*.

Subject to the Exclusions, if *you* pay a premium for COVERAGE P – ACCIDENTAL DEATH, *we* will pay the following:

1. A death benefit paid if *bodily injury* resulting from the *auto accident* causes the death of an *insured* within 1 year from the date of the *auto accident*. The *bodily injury* must be the sole cause of death.

## PERSONS INSURED – PART II

Under PART II, *Insured* means:

1. The *named insured* or any *household member* who sustains *bodily injury* while:
   a. *occupying* an *auto*; or
   b. a *pedestrian* struck by an *auto*.

2. Any other *person* who sustains *bodily injury*:
   a. While
      (1) *occupying your insured auto*; or
      (2) a *pedestrian* struck by *your insured auto*.
   b. While *occupying* an *auto* other than *your insured auto*. The *bodily injury* must result from the:
      (1) *use* of such *auto* by the *named insured*;
      (2) operation of such *auto* by the *named insured's* private chauffeur or domestic servant on behalf of the *named insured*; or

15

16

(3) as to such an auto by any household
member if the *auto* is a *private
passenger auto* or *trailer*.

However, 2.b. does not apply to work loss or
accidental death.

## ADDITIONAL DEFINITIONS – PART II

***Named Insured*** - means the ***person*** named in the
declarations page.

***Pedestrian*** - means any ***person*** who is not
***occupying*** any vehicle other than a:

1.  motorcycle; or

2.  vehicle operated by human or animal power.

***Private passenger motor vehicle*** - means an ***auto***
which is a:

1.  ***Private passenger auto***.

2.  Motorcycle.

However, ***private passenger motor vehicle*** does
not include an ***auto used*** as a public or livery
conveyance for passengers.

## ADDITIONAL DEFINITIONS – COVERAGE C

***Your insured auto*** – with respect to medical
payments, means a ***motor vehicle*** shown in the
declarations page to which medical payments apply.
This includes:

1.  A ***private passenger auto*** not owned by the
    ***named insured*** while ***used*** as a temporary
    substitute for ***your insured auto*** which is out
    of normal ***use*** because of its:
    a.  breakdown;
    b.  repair;
    c.  servicing;
    d.  loss; or
    e.  destruction.

17

***use*** with a ***private
passenger auto*** provided such ***trailer*** is not
being ***used*** for ***business*** purposes with
another type vehicle.

## ADDITIONAL DEFINITIONS –
## COVERAGES N AND P

***Your insured auto*** – with respect to work loss and
accidental death, means a ***private passenger
motor vehicle*** shown in the declarations page to
which work loss applies. This includes:

1.  A ***private passenger auto*** not owned by the
    ***named insured*** while ***used*** as a temporary
    substitute for ***your insured auto*** which is out
    of normal ***use*** because of its:
    a.  breakdown;
    b.  repair;
    c.  servicing;
    d.  loss; or
    e.  destruction.

2.  A trailer designed for ***use*** with a ***private
    passenger auto*** provided such ***trailer*** is not
    being ***used*** for ***business*** purposes with
    another type vehicle.

## WHAT IS NOT COVERED – EXCLUSIONS –
## PART II

Under PART II, this policy does not provide Personal
Injury Protection Coverage for ***bodily injury***:

1.  Due to war, civil war, insurrection, rebellion,
    revolution, nuclear reaction, radioactive
    contamination or any consequence of any of
    these.

2.  Sustained while ***occupying***:
    a.  any ***auto used*** as a residence or
        premises; or
    b.  any ***trailer*** while ***used*** for ***business***
        purposes.

3.  Sustained while ***operating*** any ***auto*** without
    the permission of the owner.

18

4. Sustained by any *person* while not in lawful possession of an *auto* or voluntarily *occupying* an *auto* knowing it is stolen.

5. Caused by that *person* driving *your insured auto* who intentionally causes a *collision*, causes *property damage*, or intentionally attempts to cause injury to himself, herself or others; which is either expected or intended by an *insured* or which is the result of an *insured's* intentional or criminal acts. *You* are deemed to intend the natural and probable consequences of *your* actions.

6. While committing a felony or while seeking to elude lawful apprehension or arrest for a felony by a law enforcement official.

## WHAT IS NOT COVERED – EXCLUSIONS – COVERAGE C

Under COVERAGE C, this policy does not provide medical payments for *bodily injury* sustained by:

1. Any *person* to the extent that benefits are, in whole or in part, paid or payable under any of the following or similar law:
   a. workers' compensation law; or
   b. employer's disability law.

2. The *named insured* while *occupying* any *auto*, other than *your insured auto*, which is owned by, or furnished, or available for regular *use* of, the *named insured*.

3. Any *household member* while *occupying* any *auto*, other than *your insured auto*, which is owned by, or furnished, or available for regular *use* of, the *named insured* or that *household member*.

4. Any *insured*, other than the *named insured* or any *household member*, while *occupying* any *auto*, other than *your insured auto*, which is owned by, or furnished, or available for regular *use* of, the *named insured* or any *household member*.

19

any *person* while *occupying* any *auto* or *trailer* while carrying or delivering *persons*, property or food for a fee or compensation (including wages, salary, tip or separate payment). This exclusion does not apply:
   a. to any shared expense car pools or charitable delivery; or
   b. *you* or a *household member* while a passenger in any *auto* or *trailer*, other than *your insured auto*.

6. Any *person*, other than the *named insured* or any *household member* while *occupying* any *auto*, other than *your insured auto*, while *used* in the *auto business*. This exclusion does not apply to *you* or a *household member*.

7. Any *person*, other than the *named insured* or any *household member* arising out of the maintenance or *use* of any *auto*, other than *your insured auto* or a motorcycle, by that *person* while employed or otherwise engaged in any other *business* or occupation. This exclusion does not apply to *bodily injury* resulting from the operation or occupancy of a:
   a. *private passenger auto*; or
   b. *trailer used* with such *private passenger auto* or *your insured auto;*
   by the *named insured* or their private chauffeur or domestic servant.

8. Any *person* while *occupying* any *auto*, other than *your insured auto*, unless that *person* has the permission of the owner.

## WHAT IS NOT COVERED – EXCLUSIONS – COVERAGE N

Under COVERAGE N, this policy does not provide work loss coverage sustained by:

1. Any *person* to the extent that benefits are, in whole or in part, paid or payable under any of the following or similar law:
   a. workers' compensation law; or
   b. employer's disability law.

20

2. The *named insured* while *occupying* any *private passenger motor vehicle*, other than *your insured auto*, which is owned by, or furnished, or available for regular *use* of, the *named insured*.

3. Any *household member* while *occupying* any *private passenger motor vehicle*, other than *your insured auto*, which is owned by, or furnished, or available for regular *use* of, the *named insured* or that *household member*.

4. Any *household member* entitled to similar coverage as a *named insured* under another policy which provides personal injury protection benefits equal to or greater than those required by the Arkansas statutes.

5. Any *person*, other than the *named insured* or any *household member*, entitled to similar coverage as *named insured* or *household member* under another policy which provides personal injury protection benefits equal to or greater than those required by the Arkansas statutes.

## WHAT IS NOT COVERED – EXCLUSIONS – COVERAGE P

Under COVERAGE P, this policy does not provide accidental death coverage sustained by:

1. The *named insured* while *occupying,* or when struck by, any *private passenger motor vehicle*, other than *your insured auto*, which is owned by, or furnished, or available for regular *use* of, the *named insured*.

2. Any *household member* while *occupying,* or when struck by, any *private passenger motor vehicle*, other than *your insured auto*, which is owned by, or furnished, or available for regular *use* of, the *named insured* or that *household member*.

3. Any *household member* entitled to similar coverage as a *named insured* under another policy which provides personal injury protection benefits equal to or greater than those required by the Arkansas statutes.

4. Any *person*, other than the *named insured* or any *household member*, entitled to similar coverage as *named insured* or *household member* under another policy which provides personal injury protection benefits equal to or greater than those required by the Arkansas statutes.

## LIMITS OF LIABILITY – PART II

The limits of liability shown in the declaration page for Personal Injury Protection Coverage are the most *we* will pay each *insured* injured in any one *auto accident*, regardless of the number of:

1. *insureds;*

2. policies or bonds applicable;

3. claims made; or

4. *your insured autos*.

## OTHER INSURANCE – PART II

Any insurance *we* provide for COVERAGE C – MEDICAL PAYMENTS:

1. With respect to *bodily injury* sustained by any *household member*, shall be excess over any other insurance available to that *household member* as a *named insured* under another *auto* insurance policy providing direct benefits without regard to fault.

2. With respect to *bodily injury* sustained by an *insured*, other than the *named insured* or any *household member*, shall be excess over any other similar insurance available to that *insured* as a *named insured* or *household member* under another *auto* insurance policy providing direct benefits without regard to fault.

21

22

Except as provided above, if there is other similar insurance which provides coverage for medical payments, *we* will pay only *our* share of the loss. *Our* share is the proportion that *our* limit liability bears to the total of all applicable limits.

However, if a duly licensed automobile dealer provides an *auto* to the *named insured* or a *household member*:

1. for *use* as a temporary substitute for *your insured auto* while it is out of normal *use* because of its:
   a. breakdown;
   b. repair;
   c. servicing; or

2. to demonstrate the *auto*;

then *we* will provide primary insurance.

No one shall be entitled to recover duplicate payments for medical payments for the same elements of loss.

In the event *we* provide COVERAGE N – WORK LOSS or COVERAGE P – ACCIDENTAL DEATH to:

1. An *insured*, other than the *named insured* or any *household member*, such coverage *we* provide shall be excess over any other insurance available to an *insured*. In this event, *our* maximum limit of liability will be the amount by which the applicable limit of liability shown in the declarations page exceeds the applicable limits of liability of all other insurance.

2. A *named insured* or any *household member*, and the *named insured* or *household member* is provided similar coverage under any other *auto* insurance policy, the maximum recovery under all policies shall not exceed the highest limit of liability under any one policy. In such an event, *we* will pay only *our* share of the loss.

23

automobile dealer provides an *auto* to the *named insured* or a *household member*:

1. for *use* as a temporary substitute for *your insured auto* while it is out of normal *use* because of its:
   a. breakdown;
   b. repair;
   c. servicing; or

2. to demonstrate the *auto*;

then *we* will provide primary insurance.

The coverages under this Part II shall not be applicable or payable, if the prescribed minimum coverages (as set forth in Section 23-89-202 of the Arkansas Statutes) are afforded to those occupants and to *persons* struck by *your insured auto*, either as *named insured* or additional *insured*, under another *auto* insurance policy.

**PAYMENT OF BENEFITS – PART II**

*We* may pay medical payments or work loss to an *insured* or any *person* or organization rendering the services. It is *our* option whether the payment is made directly to an *insured*, or to the *person* or organization providing the services. Such payment shall reduce the amount payable under this coverage for *bodily injury* sustained by that *insured*.

**OUR RIGHT TO RECOVER PAYMENT – PART II**

*Our* right to recover payment under Part II is as follows:

1. This provision does not apply to accidental death.

24

2. If we make a payment under this coverage and the *person* to or for whom payment was made has a right to recover damages from another, that *person* shall:

   a. hold in trust for *us* such rights of recovery;

   b. do nothing after loss to prejudice such rights of recovery;

   c. do whatever is necessary to secure these rights; and

   d. execute and deliver to *us* any instruments and papers as may be appropriate to secure that *person's* and *our* rights.

3. *We* will have a lien against the proceeds of the recovery. *We* may give notice of the lien to any interested *person*.

*Our* right to recover payment will apply only if the *person* to or for whom payment was made under COVERAGE C or COVERAGE N of this policy is made whole in his or her recovery from a third party.

---

## PART III – UNINSURED MOTORIST COVERAGE

**COVERAGE E – UNINSURED MOTORIST COVERAGE – BODILY INJURY**
**COVERAGE F – UNDERINSURED MOTORIST COVERAGE – BODILY INJURY**
**COVERAGE K – UNINSURED MOTORIST COVERAGE – PROPERTY DAMAGE**

### INSURING AGREEMENT – COVERAGE E AND COVERAGE K

Subject to the Exclusions, *we* will pay damages which an *insured* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle*, to the extent that the owner or operator is liable, because of:

1. *bodily injury* sustained by an *insured* and caused by an *auto accident*; and

2. *property damage* caused by an *auto accident* if the declarations page indicates that both *bodily injury* and *property damage* Uninsured Motorist Coverage applies.

25

---

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or *use* of the *uninsured motor vehicle*.

Any judgment for damages arising out of a suit brought without *our* written consent is not binding on *us*.

### PERSONS INSURED – COVERAGE E AND COVERAGE K

Under COVERAGE E AND COVERAGE K, *Insured* means:

1. *You* or any *household member*.

2. Any other *person occupying your insured auto*.

3. Any *person* for damages that *person* is entitled to recover, because of *bodily injury* to which this coverage applies, sustained by a *person* described in 1. or 2. above.

### ADDITIONAL DEFINITIONS – COVERAGE E AND COVERAGE K

*Property damage* means injury to or destruction of *your insured auto*, plus a reasonable allowance for loss of *use* of a comparable vehicle.

*Uninsured motor vehicle* means a land motor vehicle or *trailer* of any type:

1. to which no *bodily injury* liability bond or policy applies at the time of the *auto accident*;

2. which is a hit and run vehicle whose operator or owner cannot be identified and which hits:

   a. *you* or any *household member*;

   b. a vehicle which *you* or any *household member* are *occupying*; or

   c. *your insured auto*; or

3. to which a *bodily injury* liability bond or policy applies at the time of the *auto accident* but the bonding or insuring company is or becomes insolvent.

26

1. Owned by or furnished or available for the regular *use* of *you* or any *household member*.

2. Owned or operated by a self-insurer under any applicable motor vehicle law.

3. Operated on rails or crawler treads.

4. Designed mainly for *use* off public roads while not on public roads.

5. While located for *use* as a residence or premises.

## WHAT IS NOT COVERED – EXCLUSIONS – COVERAGE E AND COVERAGE K

*We* do not provide Uninsured Motorist Coverage for *bodily injury* or *property damage* sustained by any *person*:

1. While *occupying*, or when struck by, any motor vehicle owned by *you* or any *household member* which is not insured for this coverage under this policy. This includes a *trailer* of any type *used* with that motor vehicle.

2. If that *person* or the legal representative settles the *bodily injury* or *property damage* claim without *our* written consent.

3. When *your insured auto* is being *used* to carry or deliver *persons*, property or food for a fee or compensation (including wages, salary, tip or separate payment). This exclusion does not apply to a share-the-expense car pool or charitable delivery.

4. *Using* an *auto* without the permission of the owner.

27

for the first $200 of the amount of *property damage* to *your insured auto*. This exclusion does not apply if:
   a. *we* insure *your insured auto* for both Collision and Uninsured Motorist Coverage – Property Damage; and
   b. the operator of the *uninsured motor vehicle* is positively identified and is solely at fault.

This coverage shall not apply directly or indirectly to benefit:

1. Any insurer or self-insurer under any of the following or similar law:
   a. workers' compensation law; or
   b. disability benefits law.

2. Any insurer of property.

## LIMITS OF LIABILITY – COVERAGE E AND COVERAGE K

The limit of liability shown in the declarations page for each *person* for Uninsured Motorist Coverage is *our* maximum limit of liability for all damages for *bodily injury* sustained by any one *person* in any one *auto accident*. The limit of liability shown for each *person* for *bodily injury* also includes all claims which are derivative of the *bodily injury* to that *person*, including but not limited to damages for care, loss of consortium, loss of services and negligent entrustment, and including imputed negligence, agency, conspiracy, the family purpose doctrine, joint enterprise or venture, employment relationship, partnership, concert of action, or negligent hiring or supervision or retention. This is the most *we* will pay regardless of the number of:

1. *insureds*;

2. claims made;

3. *autos* or premiums shown in the declarations page;

4. policies issued to *you* or *household members* by *us*; or

28

5. *autos* involved in the *auto accident*.

The limit of liability shown in the declarations page for each *auto accident* for Uninsured Motorist Coverage is *our* maximum limit of liability for all damages arising out of and due to *bodily injury* to any number of *persons*, resulting from any one *auto accident*. The limit of liability shown for each *auto accident* for *bodily injury* also includes all claims which are derivative of the *bodily injury* to any *person*, including but not limited to damages for care, loss of consortium, loss of services and negligent entrustment, and including imputed negligence, agency, conspiracy, the family purpose doctrine, joint enterprise or venture, employment relationship, partnership, concert of action, or negligent hiring or supervision or retention. This is the most *we* will pay regardless of the number of:

1. *insureds*;

2. claims made;

3. *autos* or premiums shown in the declarations page;

4. policies issued to *you* or *household members* by *us*; or

5. *autos* involved in the *auto accident*.

Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:

1. paid because of the *bodily injury* or *property damage* by or on behalf of *persons* or organizations who may be legally responsible. This includes all sums paid under Part I and Part II; and

2. paid or payable because of the *bodily injury* under any of the following or similar law:
   a. workers' compensation law; or
   b. disability benefits law.

No payment will be made for loss paid or payable to the *insured* under Part IV of the policy.

Any payment under this coverage will reduce any amount that *person* is entitled to recover for the same damages under Part I of the policy.

## OTHER INSURANCE – COVERAGE E AND COVERAGE K

If there is other applicable similar insurance or self-insurance, *we* will pay only *our* share of the loss. *Our* share is the proportion that *our* limit of liability bears to the total of all applicable limits. However, any insurance *we* provide with respect to a vehicle *you* do not own shall be excess over any other collectable insurance or self-insurance.

## INSURING AGREEMENT – COVERAGE F

Subject to the Exclusions, *we* will pay damages which an *insured* is legally entitled to recover from the owner or operator of an *underinsured motor vehicle*, to the extent that the owner or operator is liable, because of *bodily injury*:

1. sustained by an *insured*; and
2. caused by an *auto accident*.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or *use* of the *underinsured motor vehicle*.

However, we will pay under this coverage only after the limits of liability under any applicable *bodily injury* liability bonds or policies have been exhausted by payment of judgments or settlements.

Within 30 days of receipt of written notice, *we* may make payment to *you* of an amount equal to the tentative settlement amount agreed to by the owner or operator of the other motor vehicle or their liability insurer.

In such event, *we* shall be entitled to subrogate *your* right of recovery against the owner or operator of such other motor vehicle to the extent of such payments and to the extent of any underinsured motorist insurance benefit it pays to *you*.

If *we* fail to pay you the amount of the tentative settlement within 30 days, *we* have no right to the proceeds of any settlement or judgment between *you* and the other owner or operator and/or such owner's or operator's liability insurer, no right to otherwise recoup the amount of the underinsured motorist benefit it may pay from such other owner or operator or their insurer, and no right to refuse payment of its underinsured motorist coverage benefit by reason of the settlement made by *you*.

In the event that the tortfeasor's motor vehicle liability insurance carrier and the underinsured motorist coverage are provided by *us*, the underinsured party may proceed against their underinsured insurance carrier at any time after settlement of the underlying tortfeasor's liability policy claim.

## PERSONS INSURED – COVERAGE F

Under COVERAGE F, *insured* means *you* and any *household member*.

## ADDITIONAL DEFINITIONS – COVERAGE F

*Underinsured motor vehicle* means a land motor vehicle or *trailer* of any type to which a *bodily injury* liability bond or policy applies at the time of the *auto accident* but its limit for *bodily injury* liability is less than the total amount of *your* damages not to exceed the amount of Underinsured Motorist Coverage shown on *your* declarations page.

However, *underinsured motor vehicle* does not include any *auto* or equipment:

1. Owned by or furnished or available for the regular *use* of *you* or any *household member*.

2. Operated on rails or crawler treads.

3. Designed mainly for *use* off public roads while not upon public roads.

31

a residence or premises.

5. Owned or operated by a *person* qualifying as a self-insurer under any applicable motor vehicle law.

6. To which a *bodily injury* liability bond or policy applies at the time of the accident but the bonding or insuring company is or becomes insolvent.

## WHAT IS NOT COVERED – EXCLUSIONS – COVERAGE F

*We* do not provide Underinsured Motorist Coverage for *bodily injury* sustained by any *person*:

1. While *occupying*, or when struck by, any motor vehicle owned by *you* or any *household member* which is not insured for this coverage under this policy. This includes a *trailer* of any type *used* with that motor vehicle.

2. When *your insured auto* is being *used* to carry or deliver *persons*, property or food for a fee or compensation (including wages, salary, tip or separate payment). This exclusion does not apply to a share-the-expense car pool or charitable delivery.

3. *Using* a vehicle without the permission of the owner.

This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. workers' compensation law; or

2. disability benefits law.

32

The limit of liability shown in the declarations page for each **person** for Underinsured Motorist Coverage is **our** maximum limit of liability for all damages for **bodily injury** sustained by any one **person** in any one **auto accident**. The limit of liability shown for each **person** for **bodily injury** also includes all claims which are derivative of the **bodily injury** to that **person**, including but not limited to damages for care, loss of consortium, loss of services and negligent entrustment, and including imputed negligence, agency, conspiracy, the family purpose doctrine, joint enterprise or venture, employment relationship, partnership, concert of action, or negligent hiring or supervision or retention. This is the most **we** will pay regardless of the number of:

1. **insureds**;

2. claims made;

3. **autos** or premiums shown in the declarations page;

4. policies issued to **you** or **household members** by **us**; or

5. **autos** involved in the **auto accident**.

The limit of liability shown in the declarations page for each **auto accident** for Underinsured Motorist Coverage is **our** maximum limit of liability for all damages arising out of and due to **bodily injury** to any number of **persons**, resulting from any one **auto accident**. The limit of liability shown for each **auto accident** for **bodily injury** also includes all claims which are derivative of the **bodily injury** to any **person**, including but not limited to damages for care, loss of consortium, loss of services and negligent entrustment, and including imputed negligence, agency, conspiracy, the family purpose doctrine, joint enterprise or venture, employment relationship, partnership, concert of action, or negligent hiring or supervision or retention. This is the most **we** will pay regardless of the number of:

1. **insureds**;

33

3. **autos** or premiums shown in the declarations page;

4. policies issued to **you** or **household members** by **us**; or

5. **autos** involved in the **auto accident**.

Any amounts otherwise payable for damages under this coverage shall be reduced by all sums payable because of the **bodily injury** under any of the following or similar law:

1. workers' compensation law; or

2. disability benefits law.

### OTHER INSURANCE – COVERAGE F

If there is other applicable Underinsured Motorist insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide with respect to an **auto you** do not own shall be excess over any other collectable insurance.

### LEGAL ACTION AGAINST *US*

Any suit or action will be barred unless commenced within 5 years after the date of the **auto accident**.

---

### PART IV – PHYSICAL DAMAGE

**COVERAGE G – COMPREHENSIVE**
**COVERAGE H – COLLISION**
**COVERAGE J – RENTAL REIMBURSEMENT**

**INSURING AGREEMENT –**
**COVERAGES G AND H**

**We** will pay for direct and accidental physical loss to **your insured auto** and any **non–owned auto**. Payment will be reduced by the applicable deductible shown in the declarations page.

34

If the loss is caused by collision with another auto insured by *us* or any company within the Auto Club Enterprises Group, *your* deductible will be reduced by $500. If *your* deductible is less than $500, it will be reduced by *your* actual deductible amount.

## ADDITIONAL PAYMENTS – COVERAGES G AND H

1. Total Theft Transportation Expenses - *We* will reimburse *you* up to $30 per day, to a maximum of $750, for transportation expenses incurred by *you* when *you* rent an *auto* of equivalent type as *your insured auto* from a car rental agency or garage or *use* public transportation.

   *We* will pay only transportation expenses incurred during the period:
   a. beginning immediately after the theft has been reported to *us* and to the police; and
   b. ending when *your insured auto* is returned to *use*, replaced, or five days after *our* offer to pay for its loss, whichever comes first.

2. If a covered loss to *your insured auto* exceeds the applicable deductible shown in the declarations page, *we* will pay up to $250 for direct and accidental damage to personal property:
   a. owned by *you* or a *household member*, or
   b. for which *you* are legally liable and which is contained in *your insured auto*.

   However, this coverage applies only if the damage to the personal property results:
   a. from the same *auto accident* and the same cause of loss as the damage to the *auto*; and
   b. not from theft.

3. Limited Insurance for Loss to Customized Equipment - *We* agree to pay for the direct and accidental loss to customized equipment, including camper shells, to a maximum of $1,000. This limitation does not apply if the

35

customized equipment has been disclosed and any necessary premium has been paid. The customized equipment should be *permanently installed* in the *auto*. Any camper shell must be on *your insured auto* at the time of loss.

## INSURING AGREEMENT – COVERAGE J

*We* will pay reasonable expenses *you* actually and necessarily incur for:

1. renting an *auto* of equivalent type as *your insured auto* from a car rental agency or garage; or

2. *using* public transport;

because of a loss to *your insured auto*, if *your insured auto* is other than a *trailer*, and the loss:

1. is other than the total theft of the *auto*; and

2. is covered under COVERAGES G or H; and

3. exceeds the applicable deductible shown in the declarations page.

## WHAT IS NOT COVERED – EXCLUSIONS – PART IV

Under PART IV, this policy does not apply to:

1. Any *auto* or *trailer* while *used* to carry or deliver *persons*, property or food for a fee or compensation (including wages, salary, tip or separate payment). This exclusion does not apply to any shared expense car pools or charitable delivery.

2. Any *auto* while rented or leased to others.

3. Any *non-owned auto* or *trailer* while *used* in the *auto business*.

36

4.  Loss due and confined to:
   a.  wear and tear;
   b.  deterioration or depreciation;
   c.  freezing; or
   d.  mechanical or electrical breakdown or failure.

5.  Loss resulting from the lack of lubricant or coolant.

6.  Loss to motor homes, *trailers* or campers if the loss results from seepage of water.

7.  Tires unless the loss:
   a.  is caused by fire, malicious mischief, vandalism, or theft; or
   b.  occurs at the same time and from the same cause as other loss covered under PART IV.

8.  Any covered *auto* while it is:
   a.  being prepared for, *used* in practice for, or operated in any racing contest, speed contest, hill-climbing contest, jumping contest or other similar contest; or
   b.  on a track primarily designed for racing or high-speed driving. This does not apply if the vehicle is being *used* in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

9.  Loss due to confiscation by governmental or civil authority.

10.  Loss due to war, civil war, insurrection, rebellion, revolution, nuclear reaction, radioactive contamination or any consequence of any of these.

11.  Loss to *electronic equipment*. This exclusion does not apply if the equipment is *permanently installed* in *your insured auto* in the opening or console designed for the installation of such equipment and was offered as original manufacturer's equipment. This exclusion does not apply if the equipment has been declared and any necessary premium has been paid.

37

12.  Any *non-owned auto* when *used* without the permission of the owner.

13.  Loss by or at the direction of any insured which is either expected or intended by an insured or which is the result of an insured's intentional or criminal acts. *You* are deemed to intend the natural and probable consequences of *your* actions.

14.  Any diminution in the value of *your insured auto* or a *non-owned auto* after any damage covered under this part has been repaired.

15.  Loss to a *trailer* not shown in the declarations page. This exclusion does not apply to a *trailer you*:
   a.  acquire during the policy period; and
   b.  ask *us* to insure within 30 days after *you* become the owner.

16.  Theft, embezzlement or other unlawful conversion by any *person* having custody of *your insured auto* after the *auto* has been turned over to another party for the purpose of selling, leasing, or subleasing it.

17.  Loss while committing a felony or while seeking to elude lawful apprehension or arrest for a felony by a law enforcement official.

18.  Loss while the *auto* is *used* in any illegal activity or illegal transportation by *you* or any *household member*.

19.  Loss to any of the following or their accessories;
   a.  citizens band radio;
   b.  two-way mobile radio;
   c.  telephone;
   d.  scanning monitor receiver; or
   e.  radar detector.
   This exclusion does not apply if the equipment is *permanently installed* in the opening or console designed for the installation of such equipment.

38

20. Loss to any custom furnishings in or upon *your insured auto*. Custom furnishings include but are not limited to:
    a. special carpeting and insulation, furniture, bars or television receivers;
    b. facilities for cooking and sleeping;
    c. height-extending roofs;
    d. custom paint jobs, custom murals, paintings, decals, wheels, tires or graphics; or
    e. camper bodies, deck spoilers or other body modifications.
    This exclusion does not apply if the furnishings have been declared and any necessary premium has been paid.

21. Any loss to *your insured auto* or *non-owned auto* arising out of or during its *use* for the transportation of any:
    a. explosive substance;
    b. flammable liquid; or
    c. similar hazardous materials;
    except transportation incidental to *your* ordinary household or farm activities.

22. Loss to *your insured auto* or a newly acquired car if an insured voluntarily relinquishes possession of that *auto* to a *person* or organization under an actual or presumed sales agreement regardless of if the title has been signed or passed.

23. *Punitive damages*.

## LIMITS OF LIABILITY – COVERAGES G AND H

1. In case of loss, *we* will pay the lesser of:
    a. the actual cash value of the damaged, destroyed, or stolen property, meaning the market value just prior to the loss, taking age and condition of the damaged, destroyed, or stolen property into account;
    b. the cost to repair or replace with like kind and quality. *We* may require or specify the *use* of motor vehicle parts not made by the original manufacturer; or

39

c. limit of liability stated in the declarations page.
    The applicable deductible shown in the declarations page will be subtracted from *our* payment.

2. *Our* liability will not include diminution of value.

3. *Our* liability for the cost of parts that are not obtainable in the U.S.A. shall not exceed their list price in the U.S.A.

4. The inability to obtain parts shall not be the reason for a total loss.

5. *Our* liability for refinishing all or part of the finished surface of an *auto* shall not exceed the cost of the standard surface finish applied by the *auto* manufacturer before customization or modification.

In addition, with respect to a *non-owned auto*:

1. Any amounts otherwise payable for damages under this coverage shall be reduced by all sums paid because of the damages to the *non -owned auto* by or on behalf of the *persons* or organizations who may be legally responsible. This includes all sums paid under Part I.

2. Any payment under this coverage will reduce any amount that *person* is entitled to recover for the same damages under Part I.

## LIMITS OF LIABILITY – COVERAGE J

*We* will pay up to the amount of rental reimbursement per day shown in the declarations page for *your insured auto*.

If *your insured auto* is:

1. Not drivable, this coverage starts after the loss has been reported to *us*.

40

## PART V – *YOUR DUTIES AFTER AN ACCIDENT OR LOSS*

### GENERAL DUTIES

1. After an *auto accident* or loss:
   a. *we* must be notified promptly; and
   b. *we* must be informed of the date, time, place and circumstances including, but not limited to, the names and addresses of *persons* involved, injured *persons*, and witnesses.

2. In case of claim or suit against any insured, any legal papers received by an insured must be sent to *us* immediately.

3. Any insured shall cooperate with *us* in investigating any claim and, at *our* request:
   a. attend depositions, hearings and trials;
   b. assist in:
      (1) making settlements;
      (2) securing and giving evidence;
      (3) obtaining the attendance of witnesses; and
      (4) the conduct of suits;
   c. submit, as often as *we* reasonably require, to examination(s) under oath while not in the presence of:
      (1) any other insured *person*; or
      (2) anyone whose presence is not reasonably required for accessibility or communication, except legal counsel; and sign the transcript of the examination(s);
   d. make available for inspection any *auto*, object or premises involved;
   e. authorize *us* to obtain any documentation *we* reasonably require in investigating any claim, including, but not limited to, medical, employment and tax records;
   f. submit to medical exams by doctors *we* choose; and
   g. allow *us* access to the black box.

43

4. Insureds shall not voluntarily:
   a. make any payment;
   b. assume any obligation; or
   c. incur any expense, except for first aid to others at the time of an *auto accident* involving an *auto* or *trailer* insured under PART I;
   except at their own cost.

### ADDITIONAL DUTIES

1. Under Part II – PERSONAL INJURY PROTECTION COVERAGE, *we* must be promptly notified in writing of how, when and where the *auto accident* happened. Notice should include the names and addresses of any insureds and witnesses.

   A *person* seeking Personal Injury Protection Coverage must:
   a. Give *us* written proof of claim, under oath if required. This proof of claim must include:
      (1) complete details of the nature and extent of the injuries and treatment received and contemplated; and
      (2) any other information which may assist *us* in determining the amount due and payable.
   b. At *our* request, furnish *us* with a sworn statement of earnings for the insured since the date of the *auto accident* and for a reasonable time before the *auto accident*.

2. Under PART III – COVERAGE E and COVERAGE K, any *person* seeking Uninsured Motorist Coverage must also:
   a. Promptly notify the police if a hit and run driver is involved.
   b. Immediately send *us* copies of the legal papers if a suit is brought.
   c. Take such action as may be necessary or appropriate to preserve the right to recover damages from any *person* or organization alleged to be legally responsible for the *bodily injury*.

44

d. Join the *person* or organization alleged to be legally responsible for the *bodily injury* as a party defendant in any legal action against *us*, when requested by *us*.

3. Under PART III – COVERAGE F, a *person* seeking Underinsured Motorist Coverage must also submit written notice to *us* by certified mail, return receipt requested, if a tentative agreement to settle for the liability limits of the owner or operator of the other *auto* has been reached. Such written notice shall include:

   a. written documentation of pecuniary loss, including copies of all medical bills;

   b. written authorization for *us* to obtain medical and employment records from all medical providers and employers;

   c. written confirmation from the other driver's liability insurer as to the amount of the other driver's liability limits and the terms of the tentative agreement, which shall not include any component sum representing *punitive damages*.

4. Under PART IV – PHYSICAL DAMAGE, any insured shall:

   a. Take reasonable steps to protect a damaged *auto* from further loss. *We* will pay reasonable expenses actually incurred for this protection.

   b. Promptly report to the police:
      (1) the total theft of an *auto*; or
      (2) the vandalism of an *auto*.

   c. Allow *us* to:
      (1) inspect and appraise any *auto* insured under PART IV; and
      (2) get any estimates *we* need;
      before the *auto* can be repaired or disposed of.

**45**

## PART VI – GENERAL PROVISIONS

### AAA MEMBERSHIP REQUIREMENT

A valid membership in the American Automobile Association (AAA) or its divisions or affiliates is required as a prerequisite to obtaining and renewing this policy.

### AUTHORIZATION TO EXAMINE DRIVING RECORD

By accepting this policy or any renewal of it, *you* authorize *us* or the Attorney–in–Fact, as *your* agent, to obtain the driving records of *you* or any operator.

### BANKRUPTCY

The bankruptcy or insolvency of an insured does not relieve *us* of any obligations *we* have under this policy.

### CHANGES AND LIBERALIZATION

This policy may not be changed unless *we* authorize and agree upon the change. *We* will mail or deliver a written endorsement reflecting the change. Mailing or delivery by *us* to the named insured in the declarations page at the last address on record shall be proof of endorsement or notice.

If *we* broaden coverages during the policy period without charge, this policy will automatically provide those coverages as of the date *we* implement them.

### MISREPRESENTATION OR FRAUD

This policy shall be void if *you* or any insured *person* or anyone acting on *your* behalf has concealed or misrepresented any material fact, or in any case of any fraud or attempted fraud touching any matter regarding this policy, whether before or after a loss, or at the time of the application for the policy.

**46**

**NO DOUBLE RECOVERY**

When a *person* has been paid damages by *us* under this policy and also recovers from another, the amount recovered from the other shall be held by that *person* in trust for *us* and reimbursed to *us* to the extent of *our* payment.

## OUR RIGHT TO RECOVER PAYMENT

1.  If *we* make a payment under this policy and the *person* to or for whom payment was made has a right to recover damages from another, *we* shall be subrogated to that right. That *person* shall do:
    a.  whatever is necessary to enable *us* to exercise *our* rights; and
    b.  nothing after loss to prejudice *our* rights.

2.  If *we* make a payment under this policy and the *person* to or for whom payment is made recovers damages from another, that *person* shall:
    a.  hold in trust for *us* the proceeds of the recovery; and
    b.  reimburse *us* to the extent of *our* payment.

*Our* right to recover payment under 1. and 2. will apply only if the *person* to or for whom payment was made is made whole in his or her recovery against a third party.

## POLICY PERIOD AND TERRITORY

This policy applies to accidents and losses that occur during the policy period shown in the declarations page, and within:

1.  the United States of America, its territories and possessions; and

2.  Canada;

or between ports thereof.

47

## STATEMENTS IN THE APPLICATION FOR INSURANCE

By accepting this policy, *you* agree:

1.  The facts stated in the application for insurance and in the declarations page are correct and accurate. *We* have issued the policy in reliance upon the truth of *your* statements.

2.  This policy contains all the agreements between *you* and *us*.

3.  To notify *us* promptly of any change to the facts affecting this insurance, including but not limited to:
    a.  any change in *autos*, *auto use*, regular *auto* operators, principal garaging location or the marital status of any regular operator; and
    b.  the suspension or revocation of the driver's license of *you* or any other operator who either resides in *your* household or customarily operates any *auto* insured under this policy.

## SUBROGATION

When *we* pay for a loss, any rights of recovery any insured has against a *person* or organization legally liable for the loss become *ours* up to the amount *we* have paid. Any insured must protect these rights and help *us* enforce them.

*Our* right to recover payment will apply only if the *person* to or for whom payment was made under this policy is made whole in his or her recovery against a third party.

## SUIT AGAINST US

*We* may not be sued unless all terms of this policy have been fully complied with. In addition, legal action may not be brought against *us*:

48

1.  Under PART I, until an *insured's* obligation to pay is finally determined by:
    a.  judgment against the *Insured* after actual trial; or
    b.  written agreement of the *Insured*, the claimant and *us*.

2.  Under PARTS II, III and IV, until 30 days after written proof of loss is filed and the amount of loss is determined.

No one has the right to bring *us* into a suit to determine the liability of an insured.

## TERMINATION

1.  Cancellation by *You*

    *You* may cancel by:
    a.  returning this policy to *us*; or
    b.  giving *us* advance notice of the date cancellation is to take effect.

2.  Cancellation by *Us*

    *We* may cancel by mailing to *you* and any lienholder at the last address known by *us*:
    a.  at least 10 days notice if cancellation is for nonpayment of premium; or
    b.  at least 30 days notice in all other cases.

    After this policy is in effect for 60 days, or if this is a renewal or continuation policy, *we* will cancel only:
    a.  for nonpayment of premium; or
    b.  if *you* or any driver of *your insured auto* shall be convicted of:
        (1) driving while intoxicated;
        (2) homicide or assault arising out of *use* of a motor vehicle; or
        (3) three separate convictions of speeding or reckless driving, or any combination of the two, during the policy period, including three months prior to the effective date of the policy;
    c.  if the driver's license or motor vehicle registration of *you* or any operator who either resides in the same household or

49

customarily operates an *auto* insured under this policy has been under suspension or revocation during the policy period, or if the policy is a renewal, during its policy period or the one hundred eighty (180) days immediately preceding its effective date; or
    d.  for fraud or misrepresentation of a material fact, the knowledge of which would have caused *us* to decline to issue a policy.

    *We* will not rescind *bodily injury or property damage* liability coverage under this policy for fraud or misrepresentation with respect to any injury to a third party when suffered as a result of the insured's negligent operation of a motor vehicle.

3.  Nonrenewal by *You*

    If *we* offer to renew or continue and *you* or *your* representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that *you* have not accepted *our* offer.

    If *you* obtain other insurance on *your Insured auto*, any similar insurance provided by this policy will terminate as to that *auto* on the effective date of the other insurance.

4.  Nonrenewal by *Us*

    If *we* decide not to renew or continue this policy, *we* will mail notice to *you* at the last address known by *us*. Notice will be mailed at least 30 days before the end of the policy period.

5.  Method of Mailing Notice

    Proof of mailing of any notice shall be sufficient proof of notice.

50

6. **Premium Refund**

a. If this policy is cancelled, *you* may either be entitled to a refund, or *you* may owe additional premium. If *you* are entitled to a refund, *we* will send it to *you*. However, making or offering to make a refund is not a condition of cancellation.

b. If *you* cancel during the first policy period (first six months), the earned premium will be computed on a pro rata basis plus a 10% cancellation penalty. The 10% cancellation penalty will be computed on the unearned premium. If cancellation is for non-payment of premium, *you* have cancelled the policy.

c. If *you* cancel at any other time, the premium for the period from the date of cancellation to the expiration date will be refunded on a pro rata basis. This means that unearned premium to be returned will be in the same proportion to the total policy premium as the remaining policy term (after date of cancellation) bears to the total policy term. Earned premium will be calculated on a daily basis.

d. If *we* cancel, the refund will be calculated on a pro rata basis.

e. The effective date of cancellation stated in the notice shall become the end of the policy period.

## TERMS OF POLICY CONFORMED TO STATUTE

Terms of this policy which are in conflict with the statutes of the State of Arkansas are hereby amended to conform to such statutes.

## TRANSFER OR ASSIGNMENT

1. This policy or any interests in it may not be assigned without *our* written permission.

2. If *you* should die, *your* interests in this policy will transfer to *your* legal representative while acting within the scope of his or her duties. Until such appointment, any *person* having proper temporary custody of *your insured auto* will be covered as an insured under the

policy, contingent upon payment of the premium.

Coverage under this provision will only be provided until the end of the policy period during which the death occurred. However, if the death occurred after *we* offered to renew this policy, *we* will continue coverage until the end of the policy period for which *we* offered renewal, contingent upon payment of the premium.

3. This policy does not apply to any *auto accident* or loss after an insured has permanently relinquished possession of *your insured auto*. *We* will, however, pay damages for which *you* are legally liable under PART I.

## TWO OR MORE AUTO POLICIES

If this policy and any other *auto* insurance policy issued to *you*, or any *person* domiciled in *your* household, by the Automobile Club Inter-Insurance Exchange and/or Auto Club Family Insurance Company, apply to the same *auto accident*, the maximum limit of *our* liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

## *YOUR* PREMIUM

*You* agree to pay:

1. the premium stated in the declarations page for the policy period; and

2. any additional premium resulting during the policy period from:
   a. the correction or completion of;
   b. any changes to;
   any information on file that affects the premium for this insurance.

If any transaction described in 2. above results in a premium decrease, a refund will:

1. be mailed to *you* if *your* premium is paid in full; or

51

52

2.  applied to *your* outstanding balance.

The premium for this policy is based upon information **we** have received from **you** or other sources. **You** must inform **us** if any information regarding the following is incorrect or incomplete, or changes during the policy period, and **you** must answer questions **we** ask regarding the following:

1.  **your insured auto**, or its **use**, including annual mileage;

2.  the **persons** who regularly drive **your insured auto**, including any newly licensed **household members**;

3.  **your** marital status; or

4.  the location where **your insured auto** is primarily garaged.

If the above information or any other information used to determine the premium is incorrect, incomplete, changes during the policy period, or is not provided to **us** when **we** ask, then **we** may decrease or increase the premium during the policy period.

If any transaction results in a premium decrease, a refund will:

1.  be mailed to **you** if **your** premium is paid in full; or

2.  applied to **your** outstanding balance.

If **we** increase the premium during the policy period, then **you** must pay the amount of the increase.

Gail C. Lewis      Secretary

President

53

Please keep **your** Declarations Certificates and Endorsements with **your** policy.

**AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE**



### POWER OF ATTORNEY

By accepting or renewing this insurance policy from the Automobile Club Inter-Insurance Exchange ("Exchange"), you have accepted the terms contained herein and have appointed Club Exchange Corporation, a Missouri corporation, having its principal office at 12901 North Forty Drive, St Louis, Missouri ("CEC"), or any such replacement as the Advisory Board may designate pursuant to the provisions of this Power of Attorney, as your Attorney-in-Fact to do the following:

**Sec. 1.** Make, subscribe, modify and cancel policies exchanging insurance with other policyholders at the Exchange containing the terms and agreements as your Attorney-in-Fact shall deem necessary or expedient to effect the exchange of insurance, and with the approval of a majority of the members of the Advisory Board, to secure reinsurance to the extent permitted by applicable law and to cancel or non-renew any such policies including, without limitation, any reinsurance pooling agreement; to receive, collect and sue for, in its own name or otherwise, all money due or to become due to you or the Attorney-in-Fact, or to the Exchange for unpaid premium deposits or otherwise, as well as under any policy of insurance or reinsurance, or in any other manner arising from or growing out of this instrument or the insurance hereby provided for; to waive and receive all notices and proofs of loss; to adjust and settle all losses and claims under policies of insurance and reinsurance; to perform and waive all agreements and stipulations of any such policies; to institute and defend proceedings at law and in equity; to settle any controversy or dispute arising hereunder or under any such policy of insurance; to do all things required to effect compliance with the laws of any state in which the Exchange shall operate and to appoint and authorize the statutory officer of such state to accept service of process in any action, suit or proceeding against the Exchange and all appointments for service of process heretofore made are hereby adopted, ratified and confirmed; to accept service and appear in any litigation and to prosecute, defend or compromise the same; with the consent of a majority of the members of the Advisory Board, to borrow money on behalf and in the name of the Exchange or to hypothecate and pledge any and all assets and property of the Exchange as security for the repayment of any money borrowed or to sell or otherwise dispose of any part or all of the assets and property of the Exchange necessary to meet the obligations of the Exchange; and to perform every act necessary to carry out, directly or through one or more subsidiary companies owned by the Exchange, the purposes of this instrument and the insurance business which the Exchange is authorized to transact under applicable law, with full power of substitution and revocation, being subject to the approval of the Advisory Board.

**Sec. 2.** The Attorney-in-Fact shall have no power to make you jointly liable with any other subscriber.

**Sec. 3.** The Exchange is part of an affiliated group of insurance companies and has entered into an Affiliation Agreement, dated as of March 1, 2006, among the Exchange, the Interinsurance Exchange of the Automobile Club, a California interinsurance exchange (the "California Exchange"), Auto Club Enterprises, a California nonprofit mutual benefit corporation ("Enterprises"), Automobile Club of Missouri, a Missouri nonprofit mutual benefit corporation ("AAA Missouri"), Automobile Club of Southern California, a California nonprofit mutual benefit corporation, CEC and ACSC Management Services, Inc., a California corporation (the "Affiliation Agreement").

(a) The Advisory Board shall consist of nine (9) members. The members of the present Advisory Board shall continue in office for the terms to which they were elected and thereafter their successors shall be chosen by the Advisory Board, provided, however, that six (6) members of the Advisory Board (the "California Exchange Members") shall at all times be members of the Board of Governors of the California Exchange and three (3) members of the Advisory Board (the "AAA Missouri Members") shall at all times be members of the Board of Directors of AAA Missouri. The AAA Missouri Members shall include each member of the Board of Directors of AAA Missouri then designated by AAA Missouri to serve as a member of the Board of Directors of Enterprises (an "AAA Missouri Designee"). Members shall serve for such terms as the Advisory Board shall provide by its rules and regulations.

(b) If any California Exchange Member ceases to be a member of the Board of Governors of the California Exchange or any AAA Missouri Member ceases to be a member of the Board of Directors of AAA Missouri or if applicable, a AAA Missouri Designee, then such member shall be deemed to be removed from the Advisory Board and such member's successor shall be elected, subject to the provisions of Subsection (a) of this Section 3, by the Advisory Board pursuant to the provisions of such rules and regulations as the Advisory Board may adopt.

(c) The funds of policyholders shall be deposited in banks or other financial institutions, or invested in securities (including the securities of companies engaged in the insurance business, whether or not wholly owned or controlled by the Exchange), real estate or other authorized investments by your Attorney-in-Fact and approved by a majority of the members of the Advisory Board, and the disbursements of such funds shall be by checks or other orders or instructions signed or given by any person or persons authorized by the Attorney-in-Fact. The Advisory Board shall require a good and sufficient bond of the officers and representatives of the Attorney-in-Fact for the protection of all policyholders.

(d) The Advisory Board, by a majority vote of its members, shall have the power and is hereby expressly authorized (1) to remove, at any time and for any reason, which shall not be arbitrary or capricious, your Attorney-in-Fact hereunder, including, but not limited to, CEC, and to designate a new Attorney-in-Fact as a replacement, (2) to adopt, modify, amend, repeal and enforce rules and regulations for determining the manner, mode, and time of computing the amount of savings at the Exchange, and fixing the time or times for the allocation or distribution thereof; (3) to employ certified public accountants to make annual examinations of the accounts of the Exchange and to report their findings to the Advisory Board; (4) to adopt, modify, amend, repeal and enforce uniform rules and regulations as to the participation of policyholders in the surplus of the Exchange; (5) to authorize such expenditures out of the funds

of the policyholders not herein expressly provided for as in the opinion of a majority of members of the Advisory Board shall be for the best interests of the policyholders. However, no present or future policyholder shall be liable in excess of the policyholders premium deposit or deposits for any portion of the debts of or risks written at the Exchange, and no policyholder shall be bound jointly with any other. Following any removal of CEC as your Attorney-in-Fact pursuant to this Section 3(d), any replacement Attorney-in-Fact shall only be Enterprises or any of its subsidiaries or affiliates.

(e)  The rules and regulations of the Advisory Board and the decisions of that Board consistent with this agreement and adopted by a majority of the members of that Board shall be final and binding on you.

Sec. 4.  The Attorney-in-Fact is authorized to provide for the maintenance of such reserves as are required by the laws in any state in which the Exchange may operate or such reserves as a majority of the members of the Advisory Board deem to be necessary for the protection of the policyholders and the Attorney-in-Fact, with the approval of a majority of the members of the Advisory Board, is authorized to deduct such portion as it shall determine of the savings in each year for the creation and maintenance of a surplus for the payment of losses, insurance, and reinsurance premiums and such other different disbursements as may be authorized by a majority of the members of the Advisory Board. The savings so deducted shall constitute a general surplus for the aforesaid purposes and shall be known as "exchange surplus". It is understood that you have no vested or recoverable interest in and to any portion of said "exchange surplus" prior to the liquidation of the Exchange. If the business of the Exchange is liquidated or dissolved, any remaining surplus in said "exchange surplus" shall be distributed pro rata among the then policyholders at the Exchange, each policyholder being entitled to receive his or her share as determined by applying the ratio between the premium deposits made by him or her and the total of all premium deposits to the sum of the amount of the surplus and all savings returned to the policyholders, and by subtracting from the resulting figures the savings returned to the participating policyholder. Provided, however, that the Attorney-in-Fact shall receive from any surplus of assets over liabilities all the available portion of its contribution to the Exchange, if any, in cash, securities or by waiver, plus all accumulated earnings due thereon; and in the event the surplus of the Exchange is ever in excess of the legal requirements then the Attorney-in-Fact may, at its option, withdraw from such excess surplus all or the available portion of the funds contributed for the benefit of the Exchange by or through said Attorney-in-Fact, with the consent of the Director of the Department of Insurance of the State of Missouri.

Sec. 5.  All savings over and above the amount applied to the "exchange surplus" shall be allocated to the reduction of future premium deposit rates or returned at such time or times as may be designated by a majority of the members of the Advisory Board. The Attorney -in-Fact shall maintain a basis of accounting that will make possible the allocation or distribution of savings.

Sec. 6.  The Attorney-in-Fact is authorized and directed to deduct and retain from the premium deposits received by it an amount to defray its actual expenses for providing necessary office space, books, furniture, stationery, records, data and equipment to conduct the business, and all expenses incident to the operation of the business herein authorized and all other trade association or other association dues. Any property acquired by the Attorney-in-Fact hereunder shall remain the property of the Exchange. The Exchange shall not enter into, amend, modify, terminate or grant any waiver, or give any consent with respect to, any management agreement, services agreement or cost-sharing arrangement between the Exchange and the Attorney-in-Fact or any of its affiliates, without the approval of a majority of the members of the Advisory Board.

Sec. 7.  This instrument or any policy of insurance or of reinsurance entered into pursuant to the provisions hereof may be canceled or non-renewed by either party as of 12:01 a.m. on any day by either party giving to the other written notice as required by law by mail at the last known address of the party upon whom such notice is to be served, and in case any policy of insurance issued to you shall be cancelled, you agree (if the same shall be unpaid) to pay to the Attorney-in-Fact on demand the amount of the earned premium deposit applicable to such cancelled policy as determined by the rules and regulations of the Advisory Board in force at the date such cancellation shall become effective. Whenever each and every policy of insurance issued to you shall expire by lapse of time or be cancelled, you shall cease to exchange insurance and, without further notice, this Power of Attorney at the Exchange shall be automatically cancelled within the intent and meaning of this instrument, and any unearned premium deposit or deposits or savings over and above the amount applied to the "exchange surplus" determined in accordance with the rules and regulations of the Advisory Board shall be allocated to the reduction of future premium deposit rates or returned to you.

The Attorney-in-Fact is authorized to issue to you a written policy of insurance for the coverages specifically indicated in the Declarations relating to the vehicles described in such Declarations, and you agree to pay on demand the cash deposit as specified in said Declarations.

This Power of Attorney shall become effective on the Closing Date of the affiliation of the Exchange with the California Exchange pursuant to the Affiliation Agreement with respect to all subscribers as of that date, and will become effective as to persons or entities becoming subscribers thereafter as of the date of such subscribers' execution or accession to this Power of Attorney.

This Power of Attorney shall apply to any and all other or additional insurance hereafter applied for by you, in the same manner as though applied for in this instrument. In the event you shall apply for such other or additional insurance you agree to pay such cash deposit or deposits as shall be applicable thereto and agreed to in writing.

**AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE**
**By: CLUB EXCHANGE CORPORATION, Attorney-In-Fact**

_____  
Secretary

_____  
President

**116AR (07/2012)**



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

*Insurance*

**AMENDMENTS OF POLICY PROVISIONS - ARKANSAS**

## PART IV - PHYSICAL DAMAGE

The following is added under **INSURING AGREEMENT - COVERAGES G AND H:**

The deductible shall not apply if the loss results from an accidental *collision* between any *auto* insured under COVERAGE H and another *auto* if the cost of repairs exceeds the deductible amount and:

1. the operator of the *auto* insured under COVERAGE H is free of negligence and is legally entitled to recover damages from the operator of the other *auto*; and
2. the operator of the *auto* responsible for the *collision* can be identified; and
3. the operator of the *auto* responsible for the *collision* is covered by *property damage* liability insurance which applies to the loss.

If the owner or operator of the *auto* that struck *your insured auto* cannot be identified, *we* will be unable to waive *your* deductible under PART IV of *your* policy.

The first paragraph under **ADDITIONAL PAYMENTS - COVERAGES G AND H,** item 1. is deleted and replaced by the following:

1. Total Theft Transportation Expenses - *We* will reimburse *you* up to $40 per day, to a maximum of $1,000, for transportation expenses incurred by *you* when *you* rent an *auto* of equivalent type as *your insured auto* from a car rental agency or garage or *use* public transportation.

**SUBROGATION - PART IV** has been added.

**SUBROGATION - PART IV**

When *we* pay, any rights of recovery from anyone who may be legally liable become *ours* up to the amount *we* have paid. Any *person* insured must protect these rights and help *us* enforce them.

If *we* recover damages for any part of the loss, *we* will pay the *person* insured the applicable deductible up to the amount of *our* recovery.

*Our* right to recover payment will apply only if the *person* to or for whom payment was made under this policy is made whole in his or her recovery against a third party.

**AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE**
**CLUB EXCHANGE CORPORATION, Attorney-In-Fact**

_____
Secretary

_____
President

Kathleen Torrence                    A40208036 0

**193 (11/2012)**

 **THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

*Insurance*                                     **YOURAUTO ENDORSEMENT**

---

When the YourAuto Endorsement is shown on *your* Declarations, the following changes apply to *your* policy:

**PART IV - PHYSICAL DAMAGE**

The following is added as provision 4. under **ADDITIONAL PAYMENTS - COVERAGES G and H:**

4. Pet Coverage - If a domestic dog or cat owned by *you* or a *household member* is injured as a direct result of a loss covered under PART IV - PHYSICAL DAMAGE while the domestic dog or cat is *occupying* one of *your insured autos* or a *non-owned auto, we* will pay up to $1,000:
   a. for reasonable and necessary veterinary expenses actually incurred by *you* or a *household member* for treatment of injuries to *your* injured domestic dog or cat; or
   b. if *your* domestic dog or cat dies due to those injuries. *Our* payment will be reduced by any veterinary expenses *we* have paid under 4.a. above.

If a domestic dog or cat owned by *you* or a *household member* is lost as a direct result of a total *theft* of *your insured auto* or a *non-owned auto* and the domestic dog or cat is not recovered, *we* will pay $1,000 for the loss of *your* domestic dog or cat.

The most *we* will pay under this coverage for any one covered loss is $1,000 regardless of the number of domestic dogs or cats injured, killed, or lost.

No deductible applies to this coverage.

The following paragraph is added:

**EXTENDED RENTAL REIMBURSEMENT COVERAGE - COVERAGE J**

If a covered loss occurs involving *your insured auto* for which *you* have purchased coverage under RENTAL REIMBURSEMENT - COVERAGE J, and, for that loss, *you* elect to:

1. Allow *us* to arrange for *your* rental vehicle; and
2. have any repairs covered by this policy performed at a direct repair facility approved by *us*;

*we* will pay up to the amount of RENTAL REIMBURSEMENT coverage per day *you* have purchased until the repairs are completed. This will also increase the per day limit *you* have purchased by $5 per day. This does not apply to an *auto* that has been determined to be a total loss.

Nothing contained here varies, alters or extends any provision of *your auto* insurance policy except as printed in this endorsement.

**AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE CLUB EXCHANGE CORPORATION, Attorney-In-Fact**

Secretary                                                        President

**193 (11/2012)**

Kathleen Torrence                              A40208036  0



# Notice of Privacy Policy

**Automobile Club of Missouri
Automobile Club Inter-Insurance Exchange
Auto Club Family Insurance Company
Club Insurance Agency, Inc.**

AAA Missouri serves AAA members in Missouri, Arkansas, Louisiana, Mississippi, Eastern Kansas, Southern Illinois, Southern Indiana, Oklahoma and Alabama.

This notice will explain AAA's policies for collecting, using, securing and sharing nonpublic personal information ("customer information") that you have provided to us or that we have acquired from other sources. After you read this notice, if you have any questions or comments, please contact us by mail, telephone or e-mail.

**Our Privacy Principles**

- We do not sell customer information.

- We value you as a customer and take your personal privacy very seriously.

- We respect your right to privacy. If you notify us of your decision to opt out of receiving AAA solicitations and having your personal information shared with non-affiliated companies, we will gladly honor your request.

- We share customer information within our family of companies (including other affiliates of the American Automobile Association) to improve our service to you.

- We sometimes share customer information with other reputable organizations (non-affiliated companies) with whom AAA has a contractual relationship or joint marketing agreement and whose products and services we believe may suit your needs.

- We do not provide customer information directly to such organizations but to third party processors (service bureaus).

- We have a contractual agreement with third party processors that stipulates that they cannot use your personal information for any other purpose than to process solicitations approved by AAA.

- We afford prospective and former customers the same protections as existing customers with respect to use of personal information.

**Information we may collect**

We collect and use information we believe is necessary to administer our business, to advise you about our products and services and to provide you with customer service. We may collect and maintain several types of customer information needed for these purposes. The types of information we may collect and how we gather it include:

- From you, we gather such information as your address, telephone number and e-mail address (from applications for AAA membership, AAA insurance or on other forms, through telephone interviews, your AAA agent and our Customer Care Center).

- From your transactions with us, we gather such information as your payment history, underwriting and claim documents.

- From non-AAA companies, we gather such information as your age, vehicles you own, your driving record and claim history. And from consumer reporting agencies, we gather such information as your credit history.

**How we use the information**

We use customer information to provide your membership benefits, underwrite your policies, process your claims, ensure proper billing, service your accounts and offer you other AAA products.

**(over)**

Kathleen Torrence                    A40208036 0

**Information disclosure**

We share information about our transactions and experiences with you within our AAA family of companies and with AAA agents to better serve you and to assist in meeting your current product and service needs. We may also disclose customer information about you to persons or organizations inside or outside our family of companies as permitted or required by law, including companies that perform marketing services for us or with whom we have joint marketing agreements. These agreements allow us to provide a broader selection of insurance and financial products to you. We share customer information as necessary to provide service to you and to protect you against fraud and unauthorized transactions.

**Your choice to share information**

There are two types of information sharing—information sharing within AAA's family of companies and information sharing outside of AAA. The choice in the Special Notice, which follows, applies only to sharing your personal information outside AAA. If you request that your information not be shared, we will discontinue sharing your information with non-affiliated companies. We may continue to share your information within the AAA family of companies.

**Special notice regarding sharing your personal information**

This notice does not apply to sharing of information within AAA that involves your transactions or experiences with us.

What information we share: Unless you tell us not to, we may share information such as your name, address, phone number or date of birth that was obtained from your AAA membership or insurance application or other forms we use within our AAA family of companies; or information obtained from outside companies such as your driving records.

Why we share: We may share information about you within the AAA family of companies to enhance our service to you, to underwrite your policies, to measure your interest in our products and services, to improve existing products and develop new ones, and to monitor customer trends. We may share information outside AAA in order to offer AAA-endorsed products and services that we believe may suit your needs.

Who we share with: We may share information within the AAA family of companies and with AAA agents, as well as certain non-affiliated companies that process offers of AAA-endorsed products and services to you.

If you prefer that we not share information, please contact us by mail, telephone or e-mail at the address or phone number below. Your choice also will apply to your associate members and joint account and policy holders.

**How we protect customer information**

We maintain physical, electronic and organizational safeguards to protect customer information. We continually review our policies and practices, monitor our computer networks and test the strength of our security in order to help us ensure the safety of customer information.

If you have questions or comments about our Privacy Policy, please contact us at the following address or phone number:

- Write us at: Privacy Policy Inquiries, AAA Missouri, 12901 N. Forty Drive, St. Louis, MO 63141.
- Phone us at: 1-800-222-7623 ext. 7950.
- Send e-mail to: customercare@aaamissouri.com.

**151AR (05/2011)**



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED DRIVER EXCLUSION ENDORSEMENT**

*You* agree with *us* that by accepting this policy and this endorsement that *we* will not pay for any loss occurring while *your insured auto* or any other *auto* is being driven by

| Katherine Waits |
| --- |

This policy provides no coverage in any form while the *person(s)* named above as the excluded driver(s) is operating *your insured auto* or any other *auto*. Any such operation shall immediately make this policy null and void.

This agreement shall be binding and shall apply to all future renewals, reinstatements and changes to this policy unless otherwise mutually agreed to by the Automobile Club Inter-Insurance Exchange and the named insured(s).

**Automobile Club Inter-Insurance Exchange
Club Exchange Corporation, Attorney-In-Fact**

_____
Secretary

_____
President

**Named Insured:**                                **Policy #:**

Kathleen Torrence                                A40208036 0

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
C06D02 : 14 Pages

 **CCC ONE** MARKET VALUATION REPORT

*Prepared for AUTO CLUB ENTERPRISES*

 # REPORT SUMMARY

## CLAIM INFORMATION

| | |
|---|---|
| Owner | Torrence, Kathleen |
| | 5716 Meadowlark Dr |
| | Little Rock, AR 72209 |
| Loss Vehicle | 2001 Mercedes-Benz E-Class 4dr Sdn 4.3L |
| Loss Incident Date | 11/17/2015 |
| Claim Reported | 11/30/2015 |

 ## INSURANCE INFORMATION

| | |
|---|---|
| Report Reference Number | 80088252 |
| Claim Reference | PA0001349458-11809649 |
| Adjuster | Moore, Gabriell |
| Odometer | 172,264 |
| Last Updated | 12/22/2015 09:47 AM |

 ## VALUATION SUMMARY

| | |
|---|---|
| Base Vehicle Value | $ 3,408.00 |
| Condition Adjustment | + $ 30.00 |
| Adjusted Vehicle Value | $ 3,438.00 |
| **Total** | **$ 3,438.00** |

The total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account.

The CCC ONE® Market Valuation Report reflects CCC Information Services Inc.'s opinion as to the value of the loss vehicle, based on information provided to CCC by AUTO CLUB ENTERPRISES

### BASE VEHICLE VALUE
This is derived from comparable vehicle(s) available or recently available in the marketplace at the time of valuation, per our valuation methodology described on the next page.

### ADJUSTED VEHICLE VALUE
This is determined by adjusting the Base Vehicle Value to account for the actual condition of the loss vehicle and certain other reported attributes, if any, such as refurbishments and after factory equipment

### Inside the Report

| | |
|---|---|
| Valuation Methodology | 3 |
| Vehicle Information | 4 |
| Vehicle Condition | 7 |
| Comparable Vehicles | 8 |
| Valuation Notes | 10 |

 **EXHIBIT B**

© Copyright 2015 CCC Information Services Inc. All Rights Reserved.



# CCC ONE. MARKET VALUATION REPORT

Owner: Torrence, Kathleen
Claim: PA0001349458-11809649

# REPORT SUMMARY

Supplemental Information..................11

© Copyright 2015 CCC Information Services Inc. All Rights Reserved.

CCC⬛ONE. **MARKET VALUATION REPORT**

# VALUATION METHODOLOGY

### How was the valuation determined?



**CLAIM INSPECTION**

AUTO CLUB ENTERPRISES has provided CCC with the zip code where the loss vehicle is garaged, loss vehicle VIN, mileage, equipment, as well as loss vehicle condition, which is used to assist in determining the value of the loss vehicle.



**DATABASE REVIEW**

CCC maintains an extensive database of vehicles that currently are or recently were available for sale in the U.S. This database includes vehicles that CCC employees have physically inspected, as well as vehicles advertised for sale by dealerships or private parties. All of these sources are updated regularly.

**SEARCH FOR COMPARABLES**

When a valuation is created the database is searched and comparable vehicles in the area are selected. The zip code where the loss vehicle is garaged determines the starting point for the search. Comparable vehicles are similar to the loss vehicle based on relevant factors.



**CALCULATE BASE VEHICLE VALUE**

Adjustments to the price of the selected comparable vehicles are made to reflect differences in vehicle attributes, including mileage and options. Dollar adjustments are based upon market research.

Finally, the Base Vehicle Value is the straight average of the adjusted values of the comparable vehicles.



© Copyright 2015 CCC Information Services Inc. All Rights Reserved.

 **MARKET VALUATION REPORT**

# 🚗 VEHICLE INFORMATION

## VEHICLE DETAILS

| | |
|---|---|
| Location | LITTLE ROCK, AR 72209 |
| VIN | WDBJF70J91B383025 |
| Year | 2001 |
| Make | Mercedes-Benz |
| Model | E-Class |
| Body Style | 4dr Sdn 4.3L |
| Body Type | Sedan |
| Engine - | |
| Cylinders | 8 |
| Displacement | 4.3L |
| Fuel Type | Gasoline |
| Carburation | SMPI |
| Transmission | Automatic Transmission Overdrive |

Vehicles sold in the United States are required to have a manufacturer assigned Vehicle Identification Number(VIN). This number provides certain specifications of the vehicle.

Please review the information in the Vehicle Information Section to confirm the reported mileage and condition, and to verify that the information accurately reflects the options, additional equipment, refurbishments, or other aspects of the loss vehicle that may impact the value.

## VEHICLE HISTORY SUMMARY

| | |
|---|---|
| Experian AutoCheck | No Title Problem Found |

 **CCC ONE   MARKET VALUATION REPORT** | Owner: Torrence, Kathleen
| Claim: PA0001349458-11809649

# 🚐 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | | | |
|---|---|---|---|
| Package 1: | Sport | | To the left is the equipment of the loss vehicle that AUTO CLUB ENTERPRISES provided to CCC. |
| Odometer | 172,264 | | |
| Transmission | Automatic Transmission | ✔ | ✔ Standard This equipment is included in the base configuration of the vehicle at time of purchase. |
| | Overdrive | ✔ | |
| Power | Power Steering | ✔ | ☐ Additional Equipment that is not Standard but was noted to be on the loss vehicle. |
| | Power Brakes | ✔ | |
| | Power Windows | ✔ | |
| | Power Locks | ✔ | |
| | Power Mirrors | ✔ | |
| | Power Driver Seat | ✔ | |
| | Power Passenger Seat | ✔ | |
| | Power Trunk/Gate Release | ✔ | |
| Decor/Convenience | Air Conditioning | ✔ | |
| | Climate Control | ✔ | |
| | Tilt Wheel | ✔ | |
| | Cruise Control | ✔ | |
| | Rear Defogger | ✔ | |
| | Intermittent Wipers | ✔ | |
| | Console/Storage | ✔ | |
| | Memory Package | ✔ | |
| | Keyless Entry | ✔ | |
| | Telescopic Wheel | ✔ | |
| | Home Link | ✔ | |
| | Wood Interior Trim | ✔ | |
| Seating | Bucket Seats | ✔ | |
| | Leather Seats | ✔ | |
| Radio | AM Radio | ✔ | |
| | FM Radio | ✔ | |
| | Stereo | ✔ | |
| | Search/Seek | ✔ | |
| | Cassette | ✔ | |
| | Steering Wheel Touch Controls | ✔ | |

© Copyright 2015 CCC Information Services Inc. All Rights Reserved.

#  CCC♦ONE. MARKET VALUATION REPORT

Owner: Torrence, Kathleen
Claim: PA0001349458-1809649

# 🚐 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

| | | |
|---|---|---|
| | Premium Radio | ✔ |
| Wheels | Aluminum/Alloy Wheels | ✔ |
| Safety/Brakes | Air Bag (Driver Only) | ✔ |
| | Passenger Air Bag | ✔ |
| | Anti-lock Brakes (4) | ✔ |
| | 4-wheel Disc Brakes | ✔ |
| | Front Side Impact Air Bags | ✔ |
| | Alarm | ✔ |
| | Traction Control | ✔ |
| | Stability Control | ✔ |
| Exterior/Paint/Glass | Dual Mirrors | ✔ |
| | Heated Mirrors | ✔ |
| | Tinted Glass | 🗗 |
| | Fog Lamps | ✔ |
| | Clearcoat Paint | 🗗 |



© Copyright 2015 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE  MARKET VALUATION REPORT**

Owner: Torrence, Kathleen
Claim: PA0001349458-11809649

# VEHICLE CONDITION

## COMPONENT CONDITION

| | Condition | Inspection Notes | Value Impact |
|---|---|---|---|
| **INTERIOR** | | | |
| Seats | PRIVATE OWNER | | $0 |
| Carpets | PRIVATE OWNER | | $0 |
| Dashboard | PRIVATE OWNER | | $0 |
| Headliner | PRIVATE OWNER | | $0 |
| **EXTERIOR** | | | |
| Body | PRIVATE OWNER | | $0 |
| Glass | PRIVATE OWNER | | $0 |
| Paint | PRIVATE OWNER | | $0 |
| **MECHANICAL** | | | |
| Engine | PRIVATE OWNER | | $0 |
| Transmission | PRIVATE OWNER | | $0 |
| **TIRES** | | | |
| Front Tires | DEALER | LF 6/32 RF 7/32 | $15 |
| Rear Tires | DEALER | LR 7/32 RR 6/32 | $15 |
| **Total Condition Adjustments** | | | **$30** |

AUTO CLUB ENTERPRISES uses condition inspection guidelines to determine the condition of key components of the loss vehicle prior to the loss. The guidelines describe physical characteristics for these key components, for the condition selected based upon age. Inspection Notes reflect observations from the appraiser regarding the loss vehicle's condition.

CCC makes dollar adjustments that reflect the impact the reported condition has on the value of the loss vehicle as compared to Private Owner/Private Owner condition. These dollar adjustments are based upon interviews with dealerships across the United States.

© Copyright 2015 CCC Information Services Inc. All Rights Reserved.

# CCC ONE MARKET VALUATION REPORT

 COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 |
|---|---|---|---|
| Sport | ✔ | ✗ | ✗ |
| Odometer | 172,264 | 67,486 | 172,154 |
| Automatic Transmission | ✔ | ✔ | ✔ |
| Overdrive | ✔ | ✔ | ✔ |
| Power Steering | ✔ | ✔ | ✔ |
| Power Brakes | ✔ | ✔ | ✔ |
| Power Windows | ✔ | ✔ | ✔ |
| Power Locks | ✔ | ✔ | ✔ |
| Power Mirrors | ✔ | ✔ | ✔ |
| Power Driver Seat | ✔ | ✔ | ✔ |
| Power Passenger Seat | ✔ | ✔ | ✔ |
| Power Trunk/Gate Release | ✔ | ✔ | ✔ |
| Air Conditioning | ✔ | ✔ | ✔ |
| Climate Control | ✔ | ✔ | ✔ |
| Tilt Wheel | ✔ | ✔ | ✔ |
| Cruise Control | ✔ | ✔ | ✔ |
| Rear Defogger | ✔ | ✔ | ✔ |
| Intermittent Wipers | ✔ | ✔ | ✔ |
| Console/Storage | ✔ | ✔ | ✔ |
| Memory Package | ✔ | ✔ | ✔ |
| Keyless Entry | ✔ | ✔ | ✔ |
| Telescopic Wheel | ✔ | ✔ | ✔ |
| Message Center | ✗ | ✗ | ✔ |
| Home Link | ✔ | ✔ | ✔ |
| Wood Interior Trim | ✔ | ✔ | ✔ |
| Bucket Seats | ✔ | ✔ | ✔ |
| Leather Seats | ✔ | ✔ | ✔ |
| AM Radio | ✔ | ✔ | ✔ |
| FM Radio | ✔ | ✔ | ✔ |
| Stereo | ✔ | ✔ | ✔ |
| Search/Seek | ✔ | ✔ | ✔ |
| Cassette | ✔ | ✔ | ✔ |
| Steering Wheel Touch Controls | ✔ | ✔ | ✔ |
| Premium Radio | ✔ | ✔ | ✔ |
| Aluminum/Alloy Wheels | ✔ | ✔ | ✔ |
| Drivers Side Air Bag | ✔ | ✔ | ✔ |
| Passenger Air Bag | ✔ | ✔ | ✔ |
| Anti-lock Brakes (4) | ✔ | ✔ | ✔ |
| 4-wheel Disc Brakes | ✔ | ✔ | ✔ |
| Front Side Impact Air Bags | ✔ | ✔ | ✔ |

Comp 1    Updated Date: 10/29/2015
2001 Mercedes-benz E-class 4dr Sdn
4.3l 8 4.3l Gasoline 8mpl
VIN WDBJF70J91B231326
Dealership Autonation Ford Lincoln W
Telephone (877) 880-8966
Source Autotrader
Stock # 1B231326
Distance from Little Rock, AR
148 Miles - Memphis, TN

Comp 2    Updated Date: 10/10/2015
2002 Mercedes-benz E-class 4dr Sdn
4.3l 8 4.3l Gasoline 8mpl
VIN WDBJF70J925420513
Dealership Paducah Ford Lincoln Merc
Telephone (270) 444-0011
Source Autotrader
Stock # P9216A
Distance from Little Rock, AR
283 Miles - Paducah, KY

Comparable vehicles used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

List Price is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

Distance is based upon a straight line between loss and comparable vehicle locations.

The Condition Adjustment sets that comparable vehicle to Private Owner/Private Owner condition, which the loss vehicle is also compared to in the Vehicle Condition section.

© Copyright 2015 CCC Information Services Inc. All Rights Reserved.

 **CCC︎ONE. MARKET VALUATION REPORT**

Owner: Torrence, Kathleen
Claim: PA0001349458-11809649

## COMPARABLE VEHICLES

| Options | Loss Vehicle | Comp 1 | Comp 2 |
|---|---|---|---|
| Head/Curtain Air Bags | ✗ | ✗ | ✓ |
| Rear Side Impact Air Bags | ✗ | ✗ | ✓ |
| Communications System | ✗ | ✗ | ✓ |
| Alarm | ✓ | ✓ | ✓ |
| Traction Control | ✓ | ✓ | ✓ |
| Stability Control | ✓ | ✓ | ✓ |
| Dual Mirrors | ✓ | ✓ | ✓ |
| Heated Mirrors | ✓ | ✓ | ✓ |
| Tinted Glass | ✓ | ✗ | ✗ |
| Fog Lamps | ✓ | ✓ | ✓ |
| Clearcoat Paint | ✓ | ✗ | ✗ |
| | | | |
| **List Price** | | $ 6,486 | $ 4,995 |
| **Adjustments:** | | | |
| Package | | + $ 100 | + $ 100 |
| Make/Model/Trim | | | - $ 800 |
| Mileage | | - $ 2,584 | + $ 80 |
| Condition† | | - $ 781 | - $ 781 |
| **Adjusted Comparable Value** | | $ 3,221 | $ 3,594 |



© Copyright 2015 CCC Information Services Inc. All Rights Reserved.



# CCC⬛ONE. MARKET VALUATION REPORT

Owner: Torrence, Kathleen
Claim: PA0001349458-11809649

# VALUATION NOTES

12/22/2015 09:47 - Pre/Post Tax data modified after Valuation

12/22/2015 09:47 - Packages added : SPORT

12/22/2015 09:47 - Post Valuation Adjustment entered for:

12/22/2015 09:47 - Condition Ratings changed after Valuation

12/22/2015 09:47 - AppraiserId changed, Old : 71168 with New :

12/22/2015 09:47 - AppraiserLastName changed, Old : Branson with New :

12/22/2015 09:47 - AppraiserFirstName changed, Old : Christopher with New :

12/22/2015 09:47 - User has changed one or more of the below mentioned items:
Appraiser, Insured, Owner, Loss Type, Coverage, Third Party

This Market Valuation Report has been prepared exclusively for use by AUTO CLUB
ENTERPRISES, and no other person or entity is entitled to or should rely upon this Market
Valuation Report and/or any of its contents. CCC is one source of vehicle valuations, and
there are other valuation sources available.

Regulations concerning vehicle
value include Arkansas Insurance
Department Rule 43.

# CCC ONE. MARKET VALUATION REPORT

Owner: Torrence, Kathleen
Claim: PA0001349458-11809649

# SUPPLEMENTAL INFORMATION

 **EXPERIAN® AUTOCHECK® VEHICLE HISTORY REPORT**

## TITLE CHECK | RESULTS FOUND

| | |
|---|---|
| Abandoned | ✔ No Abandoned Record Found |
| Damaged | ✔ No Damaged Record Found |
| Fire Damage | ✔ No Fire Damage Record Found |
| Grey Market | ✔ No Grey Market Record Found |
| Hail Damage | ✔ No Hail Damage Record Found |
| Insurance Loss | ✔ No Insurance Loss Record Found |
| Junk | ✔ No Junk Record Found |
| Rebuilt | ✔ No Rebuilt Record Found |
| Salvage | ✔ No Salvage Record Found |

## EVENT CHECK | RESULTS FOUND

| | |
|---|---|
| NHTSA Crash Test Vehicle | ✔ No NHTSA Crash Test Vehicle Record Found |
| Frame Damage | ✔ No Frame Damage Record Found |
| Major Damage Incident | ✔ No Major Damage Incident Record Found |
| Manufacturer Buyback/Lemon | ✔ No Manufacturer Buyback/Lemon Record Found |
| Odometer Problem | ✔ No Odometer Problem Record Found |
| Recycled | ✔ No Recycled Record Found |
| Water Damage | ✔ No Water Damage Record Found |
| Salvage Auction | ✔ No Salvage Auction Record Found |

## VEHICLE INFORMATION | RESULTS FOUND

| | |
|---|---|
| Accident | ✔ No Accident Record Found |
| Corrected Title | 🖹 Corrected Title Record Found |
| Driver Education | ✔ No Driver Education Record Found |
| Fire Damage Incident | ✔ No Fire Damage Incident Record Found |
| Lease | 🖹 Lease Record Found |
| Lien | ✔ No Lien Record Found |
| Livery Use | ✔ No Livery Use Record Found |
| Government Use | ✔ No Government Use Record Found |
| Police Use | ✔ No Police Use Record Found |
| Fleet | ✔ No Fleet Record Found |
| Rental | ✔ No Rental Record Found |
| Fleet and/or Rental | ✔ No Fleet and/or Rental Record Found |
| Repossessed | ✔ No Repossessed Record Found |
| Taxi Use | ✔ No Taxi Use Record Found |
| Theft | ✔ No Theft Record Found |
| Fleet and/or Lease | 🖹 Fleet and/or Lease Record Found |
| Emissions Safety Inspection | ✔ No Emissions Safety Inspection Record Found |
| Duplicate Title | ✔ No Duplicate Title Record Found |

CCC provides AUTO CLUB ENTERPRISES information reported by Experian regarding the 2001 Mercedes-Benz E-Class 4dr Sdn 4.3L (WDBJF70J91B383025). This data is provided for informational purposes. Unless otherwise noted in this Valuation Detail, CCC does not adjust the value of the loss vehicle based upon this information.

**LEGEND**
✔ No Event Found
🡢 Event Found
🖹 Information Needed

**TITLE CHECK**
THIS VEHICLE CHECKS OUT
AutoCheck's result for this loss vehicle show no significant title events. When found, events often indicate automotive damage or warnings associated with the vehicle.

**EVENT CHECK**
THIS VEHICLE CHECKS OUT
AutoCheck's result for this loss vehicle show no historical events that indicate a significant automotive problem. These problems can indicate past previous car damage, theft, or other significant problems.

**VEHICLE INFORMATION**
INFORMATION FOUND
AutoCheck found additional information on this vehicle. These records will provide more history for this loss vehicle.

**ODOMETER CHECK**
THIS VEHICLE CHECKS OUT
AutoCheck's result for this loss vehicle show no indication of odometer rollback or tampering was found. AutoCheck determines odometer rollbacks by searching for records that indicate odometer readings less than a previously reported value. Other odometer events can report events of tampering, or possible odometer breakage.

© Copyright 2015 CCC Information Services Inc. All Rights Reserved.

# CCC ONE  MARKET VALUATION REPORT

Owner: Torrence, Kathleen
Claim: PA0001349458-11809649

# SUPPLEMENTAL INFORMATION

## FULL HISTORY REPORT RUN DATE: 12/22/2015

Below are the historical events for this vehicle listed in chronological order.

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 07/06/2001 | BOSSIER CITY, LA | 10 | Motor Vehicle Dept. | TITLE |
| 07/06/2001 | BOSSIER CITY, LA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 06/04/2003 | SOUTHEASTERN REGION, | 21538 | Auto Auction | REPORTED AT AUTO AUCTION |
| 06/04/2003 | SOUTHEASTERN REGION, | 21538 | Auto Auction | AUCTION ANNOUNCED AS FLEET/LEASE |
| 06/10/2003 | CA | 21545 | State Agency | PASSED EMISSION INSPECTION |
| 09/02/2003 | CA | 21734 | State Agency | PASSED EMISSION INSPECTION |
| 09/07/2003 | CA | 21740 | Motor Vehicle Dept. | ODOMETER READING FROM DMV |
| 12/16/2003 | SANTA ROSA, CA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 12/23/2003 | SANTA ROSA, CA | | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 11/18/2005 | SANTA ROSA, CA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 04/22/2006 | SANTA ROSA, CA | | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 09/20/2006 | SANTA ROSA, CA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 10/01/2006 | SANTA ROSA, CA | | Motor Vehicle Dept. | TITLE |
| 09/26/2007 | SANTA ROSA, CA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 09/26/2007 | CA | 67234 | State Agency | PASSED EMISSION INSPECTION |
| 10/07/2007 | SANTA ROSA, CA | | Motor Vehicle Dept. | TITLE |
| 10/07/2007 | SANTA ROSA, CA | | Motor Vehicle Dept. | CORRECTED TITLE |
| 08/18/2009 | CA | 74245 | State Agency | PASSED EMISSION INSPECTION |
| 07/21/2011 | CA | 93994 | State Agency | PASSED EMISSION INSPECTION |
| 12/06/2012 | CA | 109700 | State Agency | PASSED EMISSION INSPECTION |
| 12/15/2012 | SAN RAFAEL, CA | | Motor Vehicle Dept. | TITLE |
| 12/15/2012 | SAN RAFAEL, CA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 04/05/2013 | CA | 110004 | Motor Vehicle Dept. | ODOMETER READING FROM DMV |

© Copyright 2015 CCC Information Services Inc. All Rights Reserved.

# CCC ONE. MARKET VALUATION REPORT

Owner: Torrence, Kathleen
Claim: PA0001349458-11809649

## SUPPLEMENTAL INFORMATION

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 05/22/2013 | FAIRFIELD, CA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 05/31/2013 | FAIRFIELD, CA | | Motor Vehicle Dept. | TITLE |
| 06/21/2013 | CA | 114508 | State Agency | PASSED EMISSION INSPECTION |
| 08/26/2013 | PACIFIC SW REGION | 117579 | Auto Auction | REPORTED AT AUTO AUCTION AS DEALER VEHICLE |
| 08/30/2013 | CA | 117714 | State Agency | PASSED EMISSION INSPECTION |
| 11/18/2013 | OAKLAND, CA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 11/27/2013 | OAKLAND, CA | | Motor Vehicle Dept. | TITLE |
| 06/11/2014 | OAKLAND, CA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 07/23/2015 | CA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 09/14/2015 | STRONG, AR | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 09/14/2015 | STRONG, AR | | Motor Vehicle Dept. | EXCLUDED/EXEMPT |
| 10/01/2015 | STRONG, AR | | Motor Vehicle Dept. | TITLE |
| 10/01/2015 | STRONG, AR | | Motor Vehicle Dept. | EXCLUDED/EXEMPT |

### AUTOCHECK TERMS AND CONDITIONS:

Experian's Reports are compiled from multiple sources. It is not always possible for Experian to obtain complete discrepancy information on all vehicles; therefore, there may be other title brands, odometer readings or discrepancies that apply to a vehicle that are not reflected on that vehicle's Report. Experian searches data from additional sources where possible, but all discrepancies may not be reflected on the Report.

These Reports are based on information supplied to Experian by external sources believed to be reliable, BUT NO RESPONSIBILITY IS ASSUMED BY EXPERIAN OR ITS AGENTS FOR ERRORS, INACCURACIES OR OMISSIONS. THE REPORTS ARE PROVIDED STRICTLY ON AN "AS IS WHERE IS" BASIS, AND EXPERIAN FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE REGARDING THIS REPORT.

YOU AGREE TO INDEMNIFY EXPERIAN FOR ANY CLAIMS OR LOSSES, INCLUDING COSTS, EXPENSES AND ATTORNEYS FEES, INCURRED BY EXPERIAN ARISING DIRECTLY OR INDIRECTLY FROM YOUR IMPROPER OR UNAUTHORIZED USE OF AUTOCHECK VEHICLE HISTORY REPORTS.

Experian shall not be liable for any delay or failure to provide an accurate report if and to the extent which such delay or failure is caused by events beyond the reasonable control of Experian, including, without limitation, "acts of God", terrorism, or public enemies, labor disputes; equipment malfunctions, material or component shortages, supplier failures, embargoes, rationing, acts of local, state or national governments, or public agencies, utility or communication failures or delays, fire, earthquakes, flood, epidemics, riots and strikes.

These terms and the relationship between you and Experian shall be governed by the laws of the State of Illinois (USA) without regard to its conflict of law provisions. You and Experian agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Cook, Illinois.

© Copyright 2015 CCC Information Services Inc. All Rights Reserved.



## THE BRAD HENDRICKS
### LAW FIRM
A Professional Association

500 C Pleasant Valley Drive
Little Rock, Arkansas 72227
Telephone: (501) 221-0444
Fax: (501) 661-0196

**www.bradhendricks.com**

Brad Hendricks ††
Lamar Porter †
Christopher R. Heil
David Rawls †
George R. Wise, Jr.

All Licensed in Arkansas
† Also Licensed in Texas
†† Also Licensed in Texas & Missouri

Matthew E. Hartness †
Caroline C. Lewis
Lloyd W. "Tré" Kitchens
Sheldon D. Smith
Gary Davis *

* Of Counsel

August 28, 2018

Wendy Kight
AAA Insurance
Claims Department
P.O. Box 66502
St. Louis, MO 63166

RE:  Our Client:        Kathleen Torrence
     Your Insured:      Kathleen Torrence
     Claim #:           PA1349458
     Date of Incident:  11/17/2015

Dear Ms. Kight:

Our firm represents Kathleen Torrence. We need to know how your company valued the total loss claim our client made on their insurance policy. We also need any supporting documentation on how you arrived at that value.

Please produce the above referenced information as quickly as possible. Thank you in advance for your cooperation. Please feel free to contact me with any questions.

Sincerely,

Lloyd W. "Tre" Kitchens
*tkitchens@bradhendricks.com*

/alm



**ELECTRONICALLY FILED**
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2019-Mar-01  15:28:46
60CV-19-1251
C06D02 : 5 Pages

# Used Mercedes-Benz E-Class for Sale

Sort by:   Relevance; Best Match

## Filter Results            New Search

Get the latest listings by email        Email        Sign Up

**6 matches**                   Save Search

Clear All    ✕ Mercedes-Benz

✕ E-Class    ✕ 2001    ✕ Used

**Location**

**Search within**

| 500 miles | 72209 |

☐ Show me cars available for home delivery

include vehicles outside of my search
area as that can be delivered to my home.

**New/Used**

◯ All    ◯ New    ⦿ Used

◯ Certified Pre-Owned

**Year**

**FEATURED**

**GREAT DEAL** rcedes-Benz of Little Rock

★ ⯪ (4.7) 565 reviews
New and Used
4062 Mercedes-Benz in stock
Dealer Website

Currently in stock:
152 New   10 CPO   64 Used

2018 Mer...   2018 Mer...
$29,990   $4,365   3 mi/...



EXHIBIT

C

2001 to 2001

## Make

Mercedes-Benz

- [ ] Acura
- [ ] BMW
- [ ] Chevrolet
- [ ] Ford
- [ ] Honda

Show all Makes in A-Z

## Model

E-Class

- [ ] C-Class
- [ ] CL-Class
- [ ] CLK-Class
- [ ] M-Class
- [ ] S-Class

## Trim

USED   ♡ Save   ☐ Compare

**$4,800**   117,466 mi.

**2001 Mercedes-Benz 4dr Sdn 3.2L**

**GREAT** DEAL

**Selective Motors** - (317) 548-4835
★ 4.9 (112 reviews) |
492 mi. from 72209

**Ext. Color:** Gold
**Int. Color:** Beige
**Transmission:** Automatic
**Drivetrain:** RWD

Free CARFAX Report

Check Availability

USED   ♡ Save   Compare

**$4,991**   148,572 mi.

**2001 Mercedes-Benz E320**

**GOOD** DEAL

**Advantage BMW Midtown** - (866) 413-3488
★ 4.4 (97 reviews) |
382 mi. from 72209

**Ext. Color:** Other
**Int. Color:** Other
**Transmission:** Automatic
**Drivetrain:** RWD

Free CARFAX Report

Check Availability

Base or Unknown

E320

E320 4MATIC

## Price

Min Price        Max Price

## Mileage

○ 90,000 or less (1)

○ 100,000 or less (1)

○ 150,000 or less (4)

○ 200,000 or less (5)

○ 250,000 or less (5)

## Deal Rating

☐ **GREAT** DEAL    (2)

☐ **GOOD** DEAL    (2)

## Features

☐ Alloy Wheels (5)

☐ Brake Assist (6)

USED  ♡ Save       Compare

**$5,995**  89,102 mi.

**2001 Mercedes-Benz 4dr Sdn 3.2L**

**GOOD** DEAL

**Port City Auto Sales**
- (225) 442-3875
300 mi. from 72209

**Ext. Color:** White
**Int. Color:** Beige
**Transmission:** Automatic
**Drivetrain:** RWD

CARFAX Report

Check Availability

USED  ♡ Save     Compare

**$4,999**  132,935 mi.

**2001 Mercedes-Benz 4dr Wgn 3.2L**

**GREAT** DEAL

**Sundance Auto Sales L.L.C.**
- (214) 960-5246
★ 3.4 (5 reviews) |
283 mi. from 72209

**Ext. Color:** Green
**Int. Color:** Gray
**Transmission:** Automatic
**Drivetrain:** RWD

CARFAX Report

Check Availability

HomeLink (5)

Leather Seats (6)

Memory Seat (6)

Premium Sound System (1)

Stability Control (6)

Sunroof/Moonroof (1)

Third Row Seating (1)

Body Style >

Exterior Color >

Interior Color >

Drivetrain >

Transmission >

Cylinders >

Photos >

Fuel >

Door Count >

Dealer Ratings >

Listing Date >

Seller Type >

Keywords >

USED   ♡ Save   ☐ Compare

# Not Priced

171,051 mi.

**2001 Mercedes-Benz E320 4MATIC**

**Jack Ingram Motors**
- (334) 472-0122
★ 4.8 (581 reviews) |
386 mi. from 72209

**Ext. Color:** Silver
**Int. Color:** Other
**Transmission:** Automatic
**Drivetrain:** AWD

Free CARFAX 1-Owner Report

Check Availability

USED   ♡ Save   Compare

# Not Priced

294,567 mi.

**2001 Mercedes-Benz E320 4MATIC**

**Lujack's Northpark Autoplaza**
- (888) 472-0402
★ 2.2 (9 reviews) |
483 mi. from 72209

**Ext. Color:** Beige
**Int. Color:** Other
**Transmission:** Automatic
**Drivetrain:** AWD

Free AutoCheck Report

Check Availability

**Prev**                    **Next**

1

20 Per Page

\* Title, other fees, and incentives are not included in this calculation, which is an estimate only. Monthly payment estimates are for illustrative purposes only and do not represent a financing offer from the seller. Other taxes may apply. The information on vehicles provided in this service is supplied by the seller or other third parties; Cars.com is not responsible for the accuracy of such information. Cars.com provides this service and materials without representations or warranties of any kind, either expressed or implied. See our terms of service for more details.

## Our Company

Buying & Selling

Our Partners

About Cars.com

New & Used

Auto.com

Investor Relations

Certified Pre-Owned

NewCars.com

Contact Cars.com

Sell Your Car

RepairPal.com

Mobile App

Car Book Values

Site Map

Car Dealers

Careers

Compare Car Prices

Fraud Awareness

Listings by City

Licensing & Reprints

Terms of Service    Privacy Statement    Ad Choices



# IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS

KATHLEEN TORRENCE                                    PLAINTIFF

v.                    CASE NO. 60CV-19-1251

AUTOMOBILE CLUB INTER-INSURANCE
EXCHANGE                                             DEFENDANT

---

## PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE.

---

Comes now Plaintiff, and for her First Set of Interrogatories and Requests for Production of Documents to Defendant Automobile Club Inter-Insurance Exchange, states:

### INTERROGATORIES

**Interrogatory No. 1.** Identify each person who answers any of the following interrogatories, and for each person, state: (a) their name, address, and telephone number; (b) by whom employed and job title; (c) basis of the authority to answer; and (d) specific interrogatory by number and subject that person answered.

**Interrogatory No. 2.** Describe the relationship, if any, between Automobile Club Inter-Insurance Exchange and AAA Arkansas Insurance Agency, Inc.

**Interrogatory No. 3.** State the name and, if known, the address and telephone number of each individual likely to have discoverable information — along with the subjects of that information — that you may use to support your claims or defenses.

**Interrogatory No. 4.** State the number of total loss claims that you settled in Arkansas between March 1, 2014 and the present using the CCC One Report.

**Interrogatory No. 5.** Describe your policies and practices for adjusting total loss automobile claims.

**Interrogatory No. 6.** State the reason that you use the CCC One Report to determine the value of total loss vehicles.

**Interrogatory No. 7.** State the name, address, and telephone number of each person you expect to call as an expert witness at trial, and for each expert witness, separately state: (a) the subject matter on which the expert is expected to testify; (b) the substance of the facts and opinions to which the

expert is expected to testify; and (c) a summary of the grounds for each opinion.

**Interrogatory No. 8.** Does Defendant, or any of its agents or attorneys, have statements from any witnesses, including any plaintiff or putative class member, regarding the issues that are subjects of this lawsuit? If so, state the name, address, and telephone number of each such witness, the date of said statement, and whether said statement is written or oral.

**Interrogatory No. 9.** If you have withheld information or documents that would be responsive to any of these interrogatories or requests for production of documents, describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable us to assess the claim.

<div align="center">REQUESTS FOR PRODUCTION</div>

**Request for Production No. 1.** A copy of your complete claim file.

**Request for Production No. 2.** A copy of all written contracts with CCC One Information Services, Inc., or its affiliates or subsidiaries.

**Request for Production No. 3.** A copy of any marketing materials provided to you by CCC One, or its affiliates or subsidiaries.

**Request for Production No. 4.** Any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action, to indemnify or reimburse for payments made to satisfy the judgment, or to defend, indemnify, or reimburse you for the costs spent defending this action.

**Request for Production No. 5.** Any training materials provided to adjusters regarding the use of the CCC One Report, products to settle total loss claims.

**Request for Production No. 6.** Any document, electronically stored information, or other tangible thing that Defendant intends to use at a deposition of this case.

**Request for Production No. 7.** Any document, electronically stored information, or other tangible thing that Defendant intends to use at any hearing in this case.

**Request for Production No. 8.** Any document, electronically stored information, or other tangible thing that Defendant intends to use to support any motion filed in this case.

**Request for Production No. 9.** Any document, electronically stored information, or other tangible thing that Defendant intends to use at the trial of this case.

**Request for Production No. 10.** Any statements from Plaintiffs that Defendant or its attorneys have regarding this action or its subject matter.

**Request for Production No. 11.** Any statements that Defendant or its attorneys have regarding the issues that are the subject of this lawsuit.

Respectfully Submitted,

**HOLLEMAN & ASSOCIATES, P.A.**
1008 West Second Street
Little Rock, Arkansas 72201
Tel. 501.975.5040
Fax 501.975.5043

By: _____

John Holleman, ABN 91056
*jholleman@johnholleman.net*
Timothy A. Steadman, ABN 2009113
*tim@johnholleman.net*
Jerry Garner, ABN 2014134
*jerry@johnholleman.net*

&

Lloyd "Tre" Kitchens, ABN 99075
*tkitchens@bradhendricks.com*
**THE BRAD HENDRICKS LAW FIRM**
500 C Pleasant Valley Drive
Little Rock, AR 72227
Telephone (501) 221-0444

Page **5** of **6**

## CERTIFICATE OF SERVICE

I, John Holleman, do hereby certify that the foregoing was dispatched for service via hand delivery on April ___, 2019, along with a copy of the summons and complaint.


/s/ *John Holleman*
John Holleman